# EXHIBIT AA

| From: | Knipp, Greg |
|---|---|
| Sent: | Friday, January 23, 2004 4:58 PM |
| To: | Bill Davison |
| Subject: | Revenue/Margin/SKU Information |
| Attach: | 1203 Svc PL Prelim 012204.pdf; 1203 Eqpt Prelim 012204.pdf; SUPYTD1203.pdf; 1203 Supply Prelim 012204.pdf; ABD.Product.12.16 Revised 012304.xls |

Bill,

Per your request, attached are the following financial schedules:

- December 2003 YTD revenue/margin schedules for equipment, supplies & service/parts
- 2001, 2002 and 2003 revenue/margin digital vs. analog template updated for actual 2003 results
- December 2003 YTD supplies revenue/margin/SKU by product major

Also, A.B. Dick Company offers approximately 15,600 supply sku items for sale of which 7,965 were sold in 2003. Of the 7,965 sold in 2003, 1,054 sku items represented approximately 90% of the total supplies revenue and margin (see attached file). Equipment sku's total about 500 and parts sku's total about 58,000 of which 38,000 are in stock.

Please advise if you have any questions or require further information.

Regards, Greg

CONFIDENTIAL

# EXHIBIT BB

| From: | Ed Marino |
|---|---|
| Sent: | Wednesday, June 23, 2004 6:16 PM |
| To: | Steve Rappaport; Dan Ebenstein; Debbie Samataro; Don Waite; Ed Marino; John Dreyer; Larry Howard; Mike Moffitt; Moosa E. Moosa |
| Cc: | Michael McCarthy; Jim Scafide |
| Subject: | Silver Deal Status |

Dear Fellow Board Members,

Many of you are aware of the difficulties we encountered in securing Key Bank's consent to fund Silver through closing. However, let me provide a little background even though it is a bit redundant.

Following the signing of agreements by Paragon and MHR on Wednesday night, Presstek was asked to fly to Cleveland to meet with Silver's Bank (Key Bank). Presstek did not sign the actual contracts themselves, rather we executed an Escrow Document that assured our signature upon successful execution of a Consent and Agreement by the Bank and the completion of due diligence by us on behalf of our Bank Group. The Bank had 4 days to do this (that was Tuesday, yesterday).

Originally the meeting with the Bank was to "make sure we were real" and to confirm the certainty of the deal- at least that's what we thought. A couple of hours into the meeting, the Bank informed us that they were not willing to fund the deal through closing, and expected us to. They suggested that up to $2 million was needed to fund the business to closing. They were not prepared to infuse the cash, they were not prepared to sign the Consent and Agreement, and in fact were prepared to appoint a Receiver and begin a Secured Party asset sale. Clearly the business was in a different place than we were all led to believe.

I insisted that Moosa and Michael McCarthy fly to Chicago for a one day meeting with key Silver Management to get the lay of the land.

Their conclusion was that the conditions at Silver had eroded to the point where the funding required to carryon "normal operations" of the business was well in excess of the $2 million estimate. We believe the immediate need is more than $5 million. To give you a few reference points, more than half of the A/P was overdue, and $3.5 million was required to get caught up so that vendors would begin supplying product again. A second point was that inventory beyond this, to the tune of about $2 to $3 million was required by the Consumables Group alone to meet customer demands. I think you get the point. What in fact has happened is that the management has been extra-ordinarily resourceful in managing without cash resources, but the business reached that inflection point where vendors stopped supplying product, sales began to be impacted and the asset base (borrowing base) began to erode below the level of support for the loan balance. The Bank informed us that the May was the month where the borrowing base fell below the loan balance.

After assessing the situation, we then went back to the banks, informed them that we were not prepared to fund, and if they wanted a deal, then they had to sign the Consent and Agreement, as required by the contracts. Of course they would not do this. However, they did send us a letter indicating they supported the deal but would not comply with the fuller terms of the Consent and Agreement document. At that point we advised them that we could not proceed and that the Escrow Agreement had been broken. We sent a note to all parties last night informing them that because of the Bank's refusal to execute the Consent and Agreement as required by the Escrow Agreement, signatures were being returned to all parties and Presstek would not execute the full set of agreements. In other words, the Bank caused the deal to go bust.

Now, since that time, we have had some discussions with the Banks and the Paragon in an attempt to construct another deal. Our position on this deal is that the business is not as represented and we have clear evidence of that fact. The Banks inadvertently created the opportunity for us to discover the extent of the damage before final documents were signed by Presstek.

My hat goes off to Moosa, Michael McCarthy and Jim Scafide. We had the discipline and knowledge to follow good process here and see the real picture- the picture that was hidden from us by the Seller.

We will keep you posted on our further discussions.

Best regards,
Ed

Ed Marino
President and CEO          **CONFIDENTIAL**

A456

Presstek, Inc.
55 Executive Drive
Hudson, NH, 03051
Tel: 603-595-7000
Fax: 603-595-2602
email: emarino@presstek.com

CONFIDENTIAL

# EXHIBIT CC



# Discussion Materials

June 30, 2004

CONFIDENTIAL

The accompanying material was compiled on a confidential basis for use solely by the board of directors of Presstek, Inc. in evaluating a proposed transaction and not with a view to public disclosure or filing thereof under the United States Securities Act of 1933 or the United States Securities Exchange Act of 1934 (collectively, the "U.S. Securities Laws") or any dissemination thereof to the stockholders of the Company or any other purpose. This material was prepared for a specific use by specific persons and was not prepared to conform with any disclosure standards under the U.S. Securities Laws. Neither Hill Street Capital LLC ("HSC") nor any of its officers, managers, members, employees, affiliates, advisors, agents or representatives warrants or represents the accuracy or completeness of any of the material set forth herein.

It should be understood that any estimates, valuations and/or projections contained in the accompanying material were prepared or derived from information supplied by the Company and involve numerous and significant subjective determinations by the Company, which may or may not be correct. HSC has not assumed any responsibility for independent verification of any such estimates, valuations and/or projections. Accordingly, no representation or warranty can be or is made by HSC as to the accuracy of any such estimates, valuations and/or projections and nothing contained in the accompanying material is, or shall be relied upon as, a promise or representation as to the past or the future.

1

CONFIDENTIAL

# Transaction Structure

| ($MM) | Consideration | Previous Deal | Section 363 Deal |
|---|---|---|---|
| Purchase Price | Cash | $24.0 | $40.0 |
| Purchase Price | Stock | 23.6 | 0.0 |
| | | **$47.6** | **$40.0** |
| | | | |
| Enviromental | Cash | $13.5 | $0.0 |
| Restructuring | Cash | 15.0 | 5.0 |
| Working Capital Replenishment | Cash | 10.0 | 0.0 |
| Sub total | | $86.1 | $45.0 |
| | | | |
| Closing Costs | Cash | 3.0 | 3.0 |
| **Total Consideration** | | **$89.1** | **$48.0** |
| | | | |
| Cash Portion | | $65.5 | $48.0 |
| Stock Portion | | 23.6 | 0.0 |
| **Total** | | **$89.1** | **$48.0** |
| | | | |
| **Asset Base** | | | |
| PP&E | | $7.4 | $7.4 |
| Working Capital | | 4.8 | 20.8 |
| Hard Assets | | $12.2 | $28.2 |
| | | | |
| Intangibles | | 76.9 | 19.8 |
| **Total** | | **$89.1** | **$48.0** |

CONFIDENTIAL

A461

2

# ABD - 2004 Forecast

**CONFIDENTIAL**

A462

3

A.B. Dick - Consolidated Income Statement

| USD ('000s) | Jan-Dec 2003 | 2004 Run-Rate Financials Jan-March 2004 | Jan-May 2004 | Jan-Jun 2004 | June 2004 | Jun-Aug 2004 | Adjustments Equipment | Service | Repair Parts | Supplies | IMG & Other | Adjusted Jan-Dec 2004E |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Equipment | $51,316 | $45,272 | $43,867 | $41,594 | $30,228 | $31,152 | ($9,476) | | | | | $21,876 |
| Service | 42,221 | 40,712 | 40,500 | 40,298 | 39,288 | 39,992 | | $0 | | | | 39,992 |
| Repair Parts | 13,386 | 13,372 | 12,482 | 12,486 | 12,504 | 12,428 | | | ($1,243) | | | 11,185 |
| Supplies | 84,943 | 84,540 | 82,558 | 81,062 | 73,584 | 73,500 | | | | ($7,350) | | 66,150 |
| IMG & Other | 1,363 | 888 | 847 | 880 | 1,044 | 1,108 | | | | | ($111) | 997 |
| Net Sales | $193,229 | $184,784 | $180,254 | $176,320 | $156,648 | $158,180 | ($9,476) | $0 | ($1,243) | ($7,350) | ($111) | $140,000 |
| | | | | | | | | | | | | |
| Cost of Products Sold | (136,725) | (130,684) | (126,754) | (123,808) | (109,080) | (110,116) | 7,504 | 0 | 695 | 4,828 | 16 | ($97,073) |
| Std. Gross Profit | $56,504 | $54,100 | $53,501 | $52,512 | $47,568 | $48,064 | ($1,972) | $0 | ($548) | ($2,522) | ($94) | $42,927 |
| *% Margin* | *29.2%* | *29.3%* | *29.7%* | *29.8%* | *30.4%* | *30.4%* | | | | | | *30.7%* |
| | | | | | | | | | | | | |
| Freight | ($7,514) | ($7,624) | ($7,848) | ($7,624) | ($6,504) | ($6,776) | - | - | $518 | $518 | - | ($5,741) |
| Other[1] | (2,689) | (2,536) | (2,410) | (2,436) | (2,568) | (3,624) | - | - | | | - | ($3,624) |
| Adj. to Std. Gross Profit | ($10,203) | ($10,160) | ($10,258) | ($10,060) | ($9,072) | ($10,400) | - | - | $518 | $518 | - | ($9,365) |
| *% Sales* | *5.3%* | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Net Gross Margin | $46,301 | $43,940 | $43,243 | $42,452 | $38,496 | $37,664 | ($1,972) | $0 | ($31) | ($2,005) | ($94) | $33,562 |
| *% Margin* | *24.0%* | *23.8%* | *24.0%* | *24.1%* | *24.6%* | *23.8%* | | | | | | *24.0%* |
| | | | | | | | | | | | | |
| SG&A | ($42,880) | ($43,680) | ($42,958) | ($42,468) | ($40,020) | ($40,680) | $0 | $0 | $0 | $0 | $0 | ($40,680) |
| *% Sales* | *22.2%* | *23.6%* | *23.8%* | *24.1%* | *25.6%* | *25.7%* | | | | | | *29.1%* |
| Depreciation & Amortization | (2,854) | (2,432) | (2,381) | (2,382) | (2,388) | (2,396) | 0 | 0 | 0 | 0 | 0 | ($2,396) |
| Total SG&A | ($45,734) | ($46,112) | ($45,338) | ($44,850) | ($42,408) | ($43,076) | $0 | $0 | $0 | $0 | $0 | ($43,076) |
| *% Sales* | *23.7%* | *25.0%* | *25.2%* | *25.4%* | *27.1%* | *27.2%* | | | | | | *30.8%* |
| | | | | | | | | | | | | |
| EBIT | $567 | ($2,172) | ($2,095) | ($2,398) | ($3,912) | ($5,412) | ($1,972) | $0 | ($31) | ($2,005) | ($94) | ($9,514) |
| *% Margin* | *0.3%* | *(1.2%)* | *(1.2%)* | *(1.4%)* | *(2.5%)* | *(3.4%)* | | | | | | *(6.8%)* |
| | | | | | | | | | | | | |
| EBITDA | $3,421 | $260 | $286 | ($16) | ($1,524) | ($3,016) | ($1,972) | $0 | ($31) | ($2,005) | ($94) | ($7,118) |
| *% Margin* | *1.8%* | *0.1%* | *0.2%* | *0.0%* | *-1.0%* | *-1.9%* | | | | | | *-5.1%* |

# ABD – 2004-2008 Income Statement Forecast
## (Includes Annual Restructuring Benefits of $14.3MM)

### A.B. Dick - Consolidated Income Statement

| $ ('000s) | Run-Rate Jun-Aug 2004E | Adjustments | Adj. 2004E | Projections Fiscal Year 2005 | 2006 | 2007 | 2008 |
|---|---|---|---|---|---|---|---|
| Net Sales | $158,180 | ($18,180) | $140,000 | $140,000 | $146,300 | $152,884 | $159,763 |
| % Growth | | | | 0.0% | 4.5% | 4.5% | 4.5% |
| Net Gross Margin | $37,664 | ($4,102) | $33,562 | $34,952 | $36,525 | $38,168 | $39,886 |
| % Margin | 23.8% | 22.6% | 24.0% | 25.0% | 25.0% | 25.0% | 25.0% |
| R&D | ($1,867) | $0 | ($1,867) | ($1,867) | ($1,876) | ($1,886) | ($1,895) |
| % Sales | 1.2% | | 1.3% | 1.3% | 1.3% | 1.2% | 1.2% |
| SG&A | ($38,813) | $0 | ($38,813) | ($38,813) | ($39,007) | ($39,202) | ($39,398) |
| % Sales | 14.8% | | 27.7% | 27.7% | 26.7% | 25.6% | 24.7% |
| Depreciation & Amortization | (2,396) | $0 | (2,396) | (4,351) | (4,851) | (5,166) | (3,495) |
| Total SG&A | ($43,076) | $0 | ($43,076) | ($45,031) | ($45,734) | ($46,254) | ($44,789) |
| % Sales | 27.2% | | 30.8% | 32.2% | 31.3% | 30.3% | 28.0% |
| Restructuring Benefits (Net Trans. Costs) | | | - | $14,314 | $14,314 | $14,314 | $14,314 |
| % Sales | | | 0.0% | 10.2% | 9.8% | 9.4% | 9.0% |
| EBIT | ($5,412) | ($4,102) | ($9,514) | $4,235 | $5,104 | $6,228 | $9,411 |
| % Margin | (3.4%) | | (6.8%) | 3.0% | 3.5% | 4.1% | 5.9% |
| Interest Expense | ($72) | | ($72) | ($3,654) | ($3,347) | ($3,080) | ($2,730) |
| Other Income/(Expense) | ($51) | | ($51) | | | | |
| Earnings before Taxes | ($5,535) | ($4,102) | ($9,637) | $581 | $1,758 | $3,148 | $6,681 |
| Income Taxes | $0 | - | $0 | ($232) | ($703) | ($1,259) | ($2,672) |
| Net Income | ($5,535) | ($4,102) | ($9,637) | $349 | $1,055 | $1,889 | $4,009 |
| % Margin | -3.5% | | -6.9% | 0.2% | 0.7% | 1.2% | 2.5% |
| EBITDA | ($3,016) | ($4,102) | ($7,118) | $8,586 | $9,955 | $11,394 | $12,907 |
| % Margin | -1.9% | | -5.1% | 6.1% | 6.8% | 7.5% | 8.1% |

4

# ABD – 2005-2006 Quarterly Income Statement Forecast
## (Includes Annual Restructuring Benefits of $14.3MM)

**A.B. Dick - Consolidated Income Statement**

| $ ('000s) | 1Q05 | 2Q05 | 3Q05 | 4Q05 | FY 2005 | 1Q06 | 2Q06 | 3Q06 | 4Q06 | FY 2006 |
|---|---|---|---|---|---|---|---|---|---|---|
| Net Sales | $35,277 | $35,668 | $33,840 | $35,214 | $140,000 | $36,864 | $37,273 | $35,363 | $36,799 | $146,300 |
| % Q/Q Growth | | 1.1% | -5.1% | 4.1% | 0.0% | 4.7% | 1.1% | -5.1% | 4.1% | 4.5% |
| Net Gross Margin | $8,789 | $8,888 | $8,477 | $8,798 | $34,952 | $9,185 | $9,288 | $8,859 | $9,194 | $36,525 |
| % Margin | 24.9% | 24.9% | 25.1% | 25.0% | 25.0% | 24.9% | 24.9% | 25.1% | 25.0% | 25.0% |
| | | | | | | | | | | |
| R&D | ($467) | ($467) | ($467) | ($467) | ($1,867) | ($469) | ($469) | ($469) | ($469) | ($1,876) |
| % Sales | 1.3% | 1.3% | 1.4% | 1.3% | 1.3% | 1.3% | 1.3% | 1.3% | 1.3% | 1.3% |
| SG&A | ($9,703) | ($9,703) | ($9,703) | ($9,703) | ($38,813) | ($9,752) | ($9,752) | ($9,752) | ($9,752) | ($39,007) |
| % Sales | 27.5% | 27.2% | 28.7% | 27.6% | 27.7% | 26.5% | 26.2% | 27.6% | 26.5% | 26.7% |
| Depreciation & Amortization | (1,088) | (1,088) | (1,088) | (1,088) | (4,351) | (1,213) | (1,213) | (1,213) | (1,213) | (4,851) |
| Total SG&A | ($11,258) | ($11,258) | ($11,258) | ($11,258) | ($45,031) | ($11,434) | ($11,434) | ($11,434) | ($11,434) | ($45,734) |
| % Sales | 31.9% | 31.6% | 33.3% | 32.0% | 32.2% | 31.0% | 30.7% | 32.3% | 31.1% | 31.3% |
| | | | | | | | | | | |
| Restructuring Benefits (Net Trans. Costs) | $3,579 | $3,579 | $3,579 | $3,579 | $14,314 | $3,579 | $3,579 | $3,579 | $3,579 | $14,314 |
| % Sales | 10.1% | 10.0% | 10.6% | 10.2% | 10.2% | 9.7% | 9.6% | 10.1% | 9.7% | 9.8% |
| EBIT | $1,119 | $1,208 | $798 | $1,119 | $4,235 | $1,330 | $1,432 | $1,003 | $1,339 | $5,104 |
| % Margin | 3.1% | 3.4% | 2.4% | 3.2% | 3.0% | 3.6% | 3.8% | 2.8% | 3.6% | 3.5% |
| | | | | | | | | | | |
| Interest Expense | ($949) | ($924) | ($902) | ($879) | ($3,654) | ($857) | ($841) | ($830) | ($819) | ($3,347) |
| | | | | | | | | | | |
| Earnings before Taxes | $161 | $284 | ($104) | $240 | $581 | $473 | $591 | $174 | $520 | $1,758 |
| | | | | | | | | | | |
| Income Taxes | ($65) | ($114) | $0 | ($54) | ($232) | ($189) | ($237) | ($69) | ($208) | ($703) |
| | | | | | | | | | | |
| Net Income | $97 | $170 | ($104) | $185 | $349 | $284 | $355 | $104 | $312 | $1,055 |
| % Margin | 0.3% | 0.5% | (0.3%) | 0.5% | 0.2% | 0.8% | 1.0% | 0.3% | 0.8% | 0.7% |
| | | | | | | | | | | |
| EBITDA | $2,198 | $2,296 | $1,886 | $2,206 | $8,586 | $2,542 | $2,645 | $2,216 | $2,551 | $9,955 |
| % Margin | 6.2% | 6.4% | 5.6% | 6.3% | 6.1% | 6.9% | 7.1% | 6.3% | 6.9% | 6.8% |

CONFIDENTIAL

A464

5

# EXHIBIT DD

| | |
|---|---|
| **From:** | Jane Miller |
| **Sent:** | Thursday, July 8, 2004 11:38 AM |
| **To:** | Moosa E. Moosa; Jim Scafide |
| **Subject:** | releases |

## FIRST:

### PRESSTEK TERMINATES AGREEMENT WITH A.B.DICK COMPANY

Hudson, NH-_____, 2004-Presstek, Inc. (Nasdaq: PRST), a leading a leading manufacturer and marketer of environmentally responsible high tech digital imaging solutions for the graphic arts and laser imaging markets, today announced that in order to protect its business interests it has terminated its development, supply and distribution agreement with A.B.Dick Company. Presstek will continue to supply A.B.Dick with products to meet the needs of its current customers on terms mutually agreeable to both parties. The products associated with this agreement included the Vector and Vector TX52 platesetters, as well as the chemistry-free Freedom plate.

Presstek's Chief Financial Officer Moosa E. Moosa said, "Based on recent events at A.B.Dick we believe it is not in Presstek's best financial interests to continue with our agreement at this time. We are hopeful that A.B.Dick will work through its current financial difficulties and be able to continue its role as a leading worldwide supplier to the graphic arts and printing industries."

INSERT ABOUT PRESSTEK LANGUAGE...

*"Safe Harbor" Statement under the Private Securities Litigation Reform Act of 1995:* Certain statements contained in this News Release constitute "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995, including statements regarding the ability of A.B.Dick to continue as a supplier to the graphic arts and printing industries; and the ability of the Companies to come to mutually agreeable terms regarding Presstek's supply of products to A.B.Dick. Such forward-looking statements involve a number of known and unknown risks, uncertainties and other factors which may cause the actual results, performance or achievements of the Company to be materially different from any future results, performance or achievements expressed or implied by such forward-looking statements. Such factors include, but are not limited to, negative reactions to the termination from customers and partners, the Companies' dependency on their strategic partners (both on manufacturing and distribution), the introduction of competitive products into the marketplace, shortages of critical or sole-source component supplies, manufacturing constraints or difficulties, the impact of general market factors in the print industry generally and the economy as a whole, market acceptance of and demand for the Companies' products and resulting revenues and other risks detailed in Presstek's Annual Report on Form 10-K and Presstek's other reports on file with the Securities and Exchange Commission. The words "looking forward," "hopeful", "believe(s)," "should," "may," "expect(s)," "anticipate(s)," "likely," "opportunity," and similar expressions, among others, identify forward-looking statements. Readers are cautioned not to place undue reliance on these forward-looking statements, which speak only as of the date the statement was made. Presstek undertakes no obligation to update any forward-looking statements contained in this news release.

####

CONFIDENTIAL                                                A466

## SECOND:

### PRESSTEK CONTINUES TO REVIEW STRATEGIC ALTERNATIVES FOR GROWTH

#### Strong Financial Performance Positions Presstek for Future Investments

**Hudson, NH-_____, 2004-Presstek ( ),** _____,in response to recent inquiries and press reports, today announced that while it has been in discussions with A.B.Dick regarding a

possible acquisition, the parties have been unable to come to mutually agreeable terms and Presstek has terminated its efforts to acquire A.B.Dick.

"Today Presstek is a fundamentally different company than it was two years ago," said Presstek's President and CEO Edward J. Marino. "We have improved the company's financial performance, broadened our distribution channels and introduced many important new products. As part of our ongoing growth strategy, we have been pursuing opportunities which we believe will allow us to gain market and technological advantage, and grow revenues. While we are disappointed that we were not able to finalize an agreement with A.B.Dick, we will continue to pursue other opportunities that fit our growth strategy."

SAFE HARBOR.....

####

CONFIDENTIAL

# EXHIBIT EE



The Boards of Directors
Paragon Corporate Holdings, Inc.
7400 Caldwell Avenue
Niles, Illinois   60714-3806

The Boards of Directors
A.B. Dick Company
7400 Caldwell Avenue
Niles, Illinois   60714-3806

Mark H. Rachesky, MD
President
MHR Fund Management, LLC
40 West 57th Street, Thirty-Third Floor
New York, New York   10019

DELIVERED VIA EMAIL AND FAX

April 12, 2004

Gentlemen:

Please find enclosed with this letter two documents: (1) the final version of the
Stock Purchase Agreement (this "*Agreement*"), between Presstek, Inc., ("*Presstek*"),
Paragon Corporate Holdings, Inc., a Delaware corporation ("*Paragon*"), and A.B. Dick
Company, ("*A.B. Dick*"); as well as (2) a deal outline, which summarizes the material
terms of the Agreement.

As you are aware, over the last month, we have been negotiating in good faith with
representatives from MHR Fund Management, LLC ("*MHR*"), who have acted on your
behalf, regarding the proposed purchase by Presstek of all of the outstanding stock of A.B.
Dick. Presstek is most appreciative of Paragon's willingness to allow us to work directly
with MHR as this has allowed us to make substantial progress toward finalizing our
agreement for the proposed acquisition. We have reached the point in the process where
we have provided MHR with this copy of the Agreement for their final approval. As
outlined in my letter of April 6, last week, the process now calls for Paragon to approve the
Agreement on or before Friday, April 16. To that end, I am enclosing the Agreement and
deal outline for your review and approval.

In order to complete this transaction in a timely manner, I am requesting that, by
the end of the day tomorrow, you provide to John Egan of McDermott, Will and Emery,
our counsel in this matter, the disclosure schedules for the Agreement.

ABD/P000281


PRESSTEK
A SMARTER WAY TO PRINT

Please be aware that if we do not receive from you a signed agreement on or before Friday, April 16, 2004, we will in all likelihood cease negotiations and move on.

I look forward to hearing from you by the end of today.

Sincerely,

Moosa E. Moosa
Vice President-Chief Financial Officer

cc:     Hal Goldstein, MHR Fund Management, LLC
        James F. Scafide, Presstek
        John Brim, Hill Street Capital
        John Egan, McDermott, Will and Emery

A470

# EXHIBIT FF

## Confidential Restricted Distribution

### INTEROFFICE MEMORANDUM
#### BUSINESS CONFIDENTIAL

TO:       FRANK ZAFFINO

FROM:     BILL DAVISON                PRESSTEK

SUBJECT:  DUE DILIGENCE SPECIFICS FOR THE WEEK OF 24 MAY

DATE:     5/20/2004

CC:       MICHAEL MCCARTHY

Hi Frank,

This note may sound familiar; it is only revised given the new schedule. Here are several details that you should be aware of and a few items you can include in your meeting with ABD managers. Assuming that the due diligence occurs next week, this is the latest set of material for your managers. Thanks in advance for your help:

1) Sent with this memo, please find the latest *contact list* with all contact specifics;
2) Sent with this memo, please find the revised *ABD senior management letter* suggested to be sent out over your signature.
3) Sent with this memo, please find the revised *schedule* with timeslots for meetings with appropriate AB Dick managers. Adjustments to schedules and room numbers for the meetings will be communicated by the appropriate Presstek person to the AB Dick manager once the meeting rooms are finalized. ABD managers should not hesitate to contact Presstek contacts directly to get any clarifications and additional information they feel they need.
4) The list of due diligence questions that you have previously received is still current. Please distribute them to the appropriate managers as necessary.
5) We will be staying at the Sofitel in Rosemont:

    **Sofitel**
    5550 North River Road
    60018
    ROSEMONT
    USA
    Tel :(+1)847/6784488
    Fax :(+1)847/6784244

6) Please communicate this schedule to the management team. They can identify their timeslots subject to revision.

Please call me with any questions: 508.517.3500.



A472

**Week 1**

**ALL CHICAGO MEETINGS WILL BE AT THE SOFITEL HOTEL**

| Presstek Team | Representatives from Hill Street Capital May also join the teams as needed | Business B. Davison | Finance Diane Bourque | HR/Benefits C.Cavanna | Legal J.Scalfide | Manufacturing Steve Degon | UK Moosa Moosa plus Team #2 | Canada Michael McCarthy/Bill Davison |
|---|---|---|---|---|---|---|---|---|
| | | M. McCarthy | James Aldidge-KPMG | J.Boger | Davis Menard | | KPMG | Moosa Moosa |
| | | Diane Bourque | Jay Tala-KPMG | WM Mercer Representative | McDermott, Will, & Emory (MWE) | | | Jim Scalfide |
| | | Jim Boger | Marsh Rep: phone conference only | | | | | KPMG |
| | | Location: Chicago | Location: Chicago | Location: Chicago | Location: Chicago | Location: Rochester | Location: Brentford, Middlesex | Location: Rexdale, Ontario |
| **Date** | **Meetings/ Deliverables** | **Team #1** | **Team #2** | **Team #3** | **Team #4** | **Team #5** | **Team #6** | **Team #7** |
| Sun 23 May | | | | | | | | |
| Late PM | | Arrive: Davison, McCarthy | Arrive: Bourque | | Arrive: Scalfide, MWE, Menard | | | |
| M 24 May | Frank Zaffino clears Leadership (Assist Financial kick-off) | | Greg Knipp | | Jeff Harden & paralegal | | Arrive: KPMG | Arrive: KPMG |
| | NDAs executed; PBA list distributed | M.McC; FZ mtg | Mark Szfranowski | | | | KPMG & UK designees | KPMG & Wood (others) |
| 2 PM | | Christine Budziak | | | | | | |
| 4 PM | | All other arrivals | All other arrivals | All other arrivals | | | | |
| Late afternoon | | | | | Arrive: Scalfide, MWE; Menard | | | |
| 7PM | PRST Team Dinner (Presstek Staff Only) | PRST Team Dinner (Presstek Staff Only) | PRST Team Dinner (Presstek Staff Only) | PRST Team Dinner (Presstek Staff Only) | PRST Team Dinner (Presstek Staff Only) | | | |
| T 25 May | | | | | | | | |
| 8:30AM | Interviews/Working Sessions | Larry Mascia | Greg Knipp & Mark Szfranowski | Joyce Huston | Jeff Harden & paralegal | | | KPMG & Wood (others) |
| 12PM | Interviews/Working Session | Scott MacKenzie | | | | Arrive: Degon (TBD) | | |
| 3:30PM | Info Analysis | | | | | | | |
| 4:30 | Wrap-Up | | | | | | | |
| By Late PM | FZ clears Mock/Stricker | | | | | | | |

A473

**Week 1 (cont)**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **W 28 May** | | | | | | | | |
| 7AM | Breakfast | | | | | | | |
| 8AM | Team Pre-Meeting | Ken Newton | | | | | | |
| 8:30AM | Interviews/Working Session | David Vandewall (Inside Sales, Supplies) | Greg Knipp & Mark Szfranowski | Joyce Huston | Jeff Harden & paralegal | Jeff Mock / Steve Stricker | KPMG & UK designees | KPMG & Wood (others) |
| 1PM | Interviews/Working Session | -- --> | -- --> | -- --> | -- --> | -- --> | -- --> | -- --> |
| 3:30PM | Info Analysis | | | | | | | |
| 4:30PM | Wrap-Up | | | | | | | |
| **Th 27 May** | | | | | | | | |
| 7AM | Breakfast | | | | | | | |
| 8:30AM | Interviews/Working Sessions | Jim Yerkes | Greg Knipp / Mark Szfranowski | Joyce Huston | Zagale? (Indemnifications) | Jeff Mock / Steve Stricker | KPMG & UK designees | KPMG & Wood (others) |
| 1PM | | ----> | ----> | ----> | ----> | ----> | ----> | ----> |
| 3:30PM | Info Analysis | | | | | | | |
| 4:30PM | Wrap-Up | | | | | | | |
| **F 28 May** | | | | | | | | |
| | Add'l Interviews & Working Sessions or Wrap-Up | (If needed) | (If needed) | (If needed) | (If needed) | | (If needed) | (If needed) |

**Week 2**

| | |
|---|---|
| Memorial Day | This week is reserved for clarifications, and additional analysis if needed. Schedule TBD |

A474

| T 1 June | Arrive Chicago; Davison; McCarthy | Clean-Up & Wrap-Up | Clean-Up & Wrap-Up | Clean-Up & Wrap-Up | Clean-Up & Wrap-Up | Clean-Up & Wrap-Up | Clean-Up & Wrap-Up | Arrive |
| W 2 June | Follow-Up and Announcement Activities | | | | | | | Michael McCarthy/Bill Davison |
| | Follow-Up and Announcement Activities | | | | | | | Moosa Moosa Jim Scafide |
| | | | | | | | | Depart |

# EXHIBIT GG

**INET**

| | |
|---|---|
| **From:** | Michael McCarthy [mmccarthy@presstek.com] |
| **Sent:** | Thursday, May 27, 2004 10:15 AM |
| **To:** | FDZaffino@aol.com; DZagore@ssd.com; jfountain@worldnet.att.net |
| **Cc:** | Ed Marino; Moosa E. Moosa; Jim Scafide |
| **Subject:** | Today's update call |

Frank: Here is the call in number for a 5pm call today May 27th
1-800-501-8979
access code; #3369275

On this call we will discuss status of the items below and other items you feel relevant to further this deal.

As we have stated we do not want to clear any additional personal nor schedule the remainder of the Due Diligence until:

1. Nesco and MHR reach written agreement as to the allocation of costs and proceeds of the proposed transaction; and
2. Nesco and MHR provide written commitment of agreement to the terms of the proposed transaction as are reflected in our most
   recent version of the agreement.

I continue to appreciate your diligence in keeping us in the loop as things develop.

Regards,

Michael


Michael McCarthy
Mobile: 978-808-8822
mmccarthy@presstek.com



# EXHIBIT HH

**INET**

| | |
|---|---|
| From: | Zagore, David A. |
| Sent: | Saturday, June 05, 2004 10:58 AM |
| To: | 'Jim Scafide ' |
| Subject: | RE: Available? |

We are discussing with Key what their preference is secured party sale or 363 sale through a bankruptcy.  Either way, we want to move forward.  Obviously, we would prefer to move forward with the agreements that we've worked on.  However, there is no faith on our side that MHR is ever going to stop trying to get more money out of this.

-----Original Message-----
From: Jim Scafide
To: DZagore@ssd.com
Sent: 6/4/2004 10:30 PM
Subject: Re: Available?

Thanks. Have sent also to MHR. Care to share your boars' conclusions tonight?

Jim
-------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Zagore, David A. <DZagore@ssd.com>
To: Jim Scafide <jscafide@presstek.com>
Sent: Fri Jun 04 22:16:23 2004
Subject: RE: Available?

Yes.  I will review and approve.  We should still send to MHR.  For the good of all, I hope their latest stance is all bluster.

-----Original Message-----
From: Jim Scafide
To: DZagore@ssd.com
Sent: 6/4/2004 5:33 PM
Subject: Re: Available?

David,

We are about to send to you amended docs that reflect the notes as we discussed today. I'm assuming that you will be approving this set to be forwarded to MHR.

Thanks.

Jim

-------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Zagore, David A. <DZagore@ssd.com>
To: Jim Scafide <jscafide@presstek.com>
Sent: Fri Jun 04 16:51:54 2004
Subject: RE: Available?

yes


David A. Zagore, Esq.
Partner

1

A479

Squire, Sanders & Dempsey L.L.P.
4900 Key Tower
127 Public Square
Cleveland, OH 44114-1304
Bus.: 216.479.8610
Fax:  216.479.8780
Cell: 216.374.8730
Home: 440.937.5318
dzagore@ssd.com
www.ssd.com


This e-mail is confidential and is intended only for the named
recipient(s)
and may contain information that is privileged, attorney work product or exempt from
disclosure under applicable law. If you have received this message in error, or are not
the named recipient(s), please immediately notify the sender and delete this e-mail
message from your computer.
Thank
you.


-----Original Message-----
From: Jim Scafide [mailto:jscafide@presstek.com]
Sent: Friday, June 04, 2004 4:51 PM
To: Zagore, David A.
Subject: Available?


Are you available?

-----Original Message-----
From: Zagore, David A. [mailto:DZagore@ssd.com]
Sent: Friday, June 04, 2004 4:03 PM
To: 'Richard.Pritz@CliffordChance.com'
Cc: hgoldstein@mhrfund.com; John Fountain (jfountain@worldnet.att.net);
PDZaffino@aol.com; jameswert@hotmail.com; Haffke, Christopher W.; Jim
Scafide
Subject: RE: transaction agreement


Richard:

I conveyed your proposal that all expenses plus from the transaction be
scheduled and funded in advance of signing and that $1 million be added
to
that estimated expense amount and that all the money be put in an
escrow.  I
have consulted with Paragon and AB Dick's boards and the proposal has
been
unconditionally rejected.  There is no money available to prefund
expenses
and there is no outside funding source willing to undertake that
obligation.


David A. Zagore, Esq.
Partner
Squire, Sanders & Dempsey L.L.P.
4900 Key Tower
127 Public Square
Cleveland, OH 44114-1304
Bus.: 216.479.8610
Fax:  216.479.8780
Cell: 216.374.8730
Home: 440.937.5318

2

dzagore@ssd.com
www.ssd.com

This e-mail is confidential and is intended only for the named
recipient(s)
and may contain information that is privileged, attorney work product or
exempt from disclosure under applicable law. If you have received this
message in error, or are not the named recipient(s), please immediately
notify the sender and delete this e-mail message from your computer.
Thank
you.

3

A481

# EXHIBIT II

INET

| From: | Zagore, David A. |
|---|---|
| Sent: | Tuesday, June 08, 2004 12:56 PM |
| To: | 'Jim Scafide' |
| Subject: | RE: Key |

Key has indicated that they want to meet with NES/Paragon Thursday at noon prior to any meeting with other parties. I am still hoping we don't need a secured party transaction. This is the most ridiculous deal I have ever seen. By MHR trying to grab just a little more money, they are losing 70% of any working capital deterioration. That fact seems to elude them.

David A. Zagore, Esq.
Partner
Squire, Sanders & Dempsey L.L.P.
4900 Key Tower
127 Public Square
Cleveland, OH 44114-1304
Bus.: 216.479.8610
Fax: 216.479.8780
Cell: 216.374.8730
Home: 440.937.5318
dzagore@ssd.com
www.ssd.com

This e-mail is confidential and is intended only for the named recipient(s) and may contain information that is privileged, attorney work product or exempt from disclosure under applicable law. If you have received this message in error, or are not the named recipient(s), please immediately notify the sender and delete this e-mail message from your computer. Thank you.

-----Original Message-----
From: Jim Scafide [mailto:jscafide@presstek.com]
Sent: Monday, June 07, 2004 2:22 PM
To: DZagore@ssd.com
Subject: Key

David,

Have you had any luck making inroads for us at Key Bank, per our discussion this morning?

Thanks,

Jim

-------------------------
Sent from my BlackBerry Wireless Handheld

-----Original Message-----
From: Zagore, David A. <DZagore@ssd.com>
To: 'Richard.Pritz@CliffordChance.com' <Richard.Pritz@CliffordChance.com>;
hgoldstein@mhrfund.com <hgoldstein@mhrfund.com>
CC: Jim Scafide <jscafide@presstek.com>; 'James Wert' <jameswert@hotmail.com>;
jfountain@worldnet.att.net <jfountain@worldnet.att.net>; FDZaffino@aol.com
<FDZaffino@aol.com>
Sent: Mon Jun 07 14:04:28 2004
Subject: Communications on behalf of Paragon with MHR

1

A483

Richard:

Paragon has worked diligently over this past weekend with its vendors and with Presstek to overcome the stated concerns of MHR regarding Paragon's ability to fund its obligations under the Purchase Agreement. In our most recent discussions, the "unfunded" potential liabilities that were raised as an objection to moving forward under the existing agreement with Presstek were (a) the cost of severance and obtaining releases from specified officers and directors, (b) the cost of d&o liability tail insurance, and (c ) the transaction costs with investment banks and advisors that exceed $500,000.

In that regard, Presstek has agreed to fund the severance for those officers identified for termination prior to closing (as it has previously indicated it would) and has agreed to remove as a condition precedent the requirement in Section 9.7 that directors and officers execute releases as a condition precedent to closing. Second, d&o tail coverage financing has been arranged from sources other than Paragon and AB Dick. Lastly, Candlewood has agreed to waive its investment banking fee in return for reimbursement of its out of pocket expenses in the amount of $8,000. E&Y's transaction expenses will be approximately $250,000. Squire Sanders has agreed that it will not look to Paragon or AB Dick for any legal fees and expenses that, together with the fees of Candlewood and E&Y, exceed the $500,000 amount set forth in the Transaction Agreement. As a result, there are no longer unfunded expenses of Paragon. In addition, NES' counsel has informed me that NES remains willing to waive any rights it has to receive sales proceeds and that it has agreed to consent as majority shareholder of Paragon to the Presstek transaction.

Presstek has indicated it is prepared to move forward with this transaction on the terms outlined in the last distributed draft. Paragon is also willing to proceed. We urge MHR to immediately consent to the transaction outlined in the purchase agreement. Time is of the essence and Paragon firmly believes that this transaction clearly represents the best opportunity for noteholders to maximize their return from a sale of A.B. Dick. Without your consent, Paragon will have no choice but to proceed with Presstek in a transaction that does not require noteholder consent and that will almost certainly return less value to the MHR and the Majority Noteholders.

If there are specific concerns of MHR that are not addressed above, please let me know as soon as possible.

David A. Zagore, Esq.
Partner
Squire, Sanders & Dempsey L.L.P.
4900 Key Tower
127 Public Square
Cleveland, OH 44114-1304
Bus.: 216.479.8610
Fax:  216.479.8780
Cell: 216.374.8730
Home: 440.937.5318
dzagore@ssd.com
www.ssd.com

This e-mail is confidential and is intended only for the named recipient(s) and may contain information that is privileged, attorney work product or exempt from disclosure under applicable law. If you have received this message in error, or are not the named recipient(s), please immediately notify the sender and delete this e-mail message from your computer. Thank you.

2

A484

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS
ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM
DISCLOSURE UNDER APPLICABLE LAW. If the reader of this message is not the intended
recipient, or the employee or agent responsible for delivering the message to the intended
recipient, you are hereby notified that any dissemination, distribution, forwarding, or
copying of this communication is strictly prohibited. If you have received this
communication in error, please notify the sender immediately by e-mail or telephone, and
delete the original message immediately. For more information, please visit
<http://www.bakerlaw.com/> http://www.bakerlaw.com . Thank you.

3

A485

# EXHIBIT JJ

Message                                                                    Page 1 of 2

## INET

| | |
|---|---|
| From: | Zagore, David A. |
| Sent: | Wednesday, June 16, 2004 2:40 PM |
| To: | 'Richard.Pritz@CliffordChance.com'; jscafide@presstek.com |
| Subject: | FW: Receivership Discussions |

FYI. Rec'd from Key's counsel.


David A. Zagore, Esq.
Partner
Squire, Sanders & Dempsey L.L.P.
4900 Key Tower
127 Public Square
Cleveland, OH 44114-1304
Bus.: 216.479.8610
Fax: 216.479.8780
Cell: 216.374.8730
Home: 440.937.5318
dzagore@ssd.com
www.ssd.com


This e-mail is confidential and is intended only for the named recipient(s) and may
contain information that is privileged, attorney work product or exempt from
disclosure under applicable law. If you have received this message in error, or are
not the named recipient(s), please immediately notify the sender and delete this e-
mail message from your computer. Thank you.

-----Original Message-----
From: Guinn, Guy [mailto:GGuinn@Calfee.com]
Sent: Wednesday, June 16, 2004 2:02 PM
To: Zagore, David A.
Cc: Michael_V_Lugli@KeyBank.com; Lawniczak, James
Subject: RE: Receivership Discussions

David:

    To confirm what we discussed earlier today, KeyBank has considered Paragon's request for additional out of
formula funding to meet Paragon's additional requirements. At this point in time, it was anticipated that
the purchase transaction documentation would have been executed. There also appears to be continuing issues
which may produce additional delays.

    As we discussed, KeyBank is currently willing to consider any additional funding only in conjunction with the
appointment of a receiver or similar process for A.B. Dick. and\or Paragon and A.B. Dick which is acceptable to
KeyBank. We are willing to discuss with you and the other persons involved in this transaction how you see
this transaction's completion

    KeyBank is continuing to work toward a receivership or similar process pending such discussions.

Regards,

Guy Guinn


Guy F. Guinn
Calfee, Halter & Griswold LLP
1400 McDonald Investment Center
800 Superior Avenue
Cleveland, Ohio  44114-2688
(216) 622-8453
gguinn@calfee.com

This electronic mail transmission contains confidential and/or legally privileged
information from the law firm of Calfee, Halter & Griswold LLP intended only for
the use of the individual(s) identified as addressee(s).  If you are not the
intended recipient, you are herby notified that any disclosure, copying,
distribution or the taking of any action in reliance on the contents of this
electronic mail transmission is strictly prohibited.  If you have received this
transmission in error, please notify me by telephone immediately.

# EXHIBIT KK

INET

From:        Jim Scafide [jscafide@presstek.com]
Sent:        Thursday, June 24, 2004 4:03 PM
To:          David Zagore (E-mail)
Subject:     Term Sheet



Silver Term
et Revision 1.
            David,

This is latest version of the proposed term sheet.  I believe this to be in its final
form.

Thanks,

Jim
 <<Silver Term Sheet Revision 1.DOC>>
*********************************************************
  This email message and any attachment hereto is subject to attorney-client privilege and
contains confidential information intended only for the person(s) to whom this message is
addressed.  If you have received this message in error, please notify the sender
immediately by telephone or email and destroy the original message without making a copy.
Thank you.

JAMES F. SCAFIDE, ESQ.  (603) 594-8585 ext. 3505
*********************************************************

1

A490

June 23, 2004
Term Sheet
By and between
Presstek, Inc. and the A.B. Dick Company

This Term Sheet sets down in writing certain terms and conditions related to a proposed purchase and sale of assets by and between Presstek, Inc of Hudson, New Hampshire ("*Presstek*") and A.B. Dick Company of Chicago, Illinois ("*A.B. Dick*").

The terms and conditions set forth herein will become binding only upon the negotiation and execution of definitive documentation with respect thereto.

1. <u>Term</u>. This term sheet contemplates that the parties hereto will negotiate and execute a Definitive Agreement (the "*Definitive Agreement*" for the purchase and sale of the assets of A.B. Dick described in the following paragraph on terms and conditions consistent with the terms herein. The purchase and sale of the A.B. Dick assets is expressly conditioned upon the approval of the appropriate United States Bankruptcy Court (the "*Court*"). The parties anticipate that the Definitive Agreement will be executed prior to 8:00 a.m., June 28, 2004.

2. <u>Acquisition</u>. The Definitive Agreement will include terms as follows:
    a. Presstek will purchase from A.B. Dick substantially all assets, tangible or intangible, as identified by Presstek (the "*Assets*") for the payment by Presstek to A.B. Dick of Forty Million Dollars ($40,000,000), cash. Included within these assets are various assets as so identified by Presstek and located at A.B. Dick, Canada and Interactive Media Group, Inc. ("*IMG*") as well as shares of A.B. Dick's United Kingdom subsidiary ("*A.B. Dick UK*"). Specifically excluded from the Assets is the real property owned by A.B. Dick, Canada, which will be leased to Presstek for one dollar ($1) for six months following the acquisition of the Assets.
    b. Presstek will provide up to ten million dollars ($10,000,000) on terms and conditions as approved by the Court, as debtor in possession ("*DIP*") financing. The Presstek DIP financing will be secured by a first priority senior lien on substantially all of A.B. Dick's assets under Section 364(d)(1) of the Bankruptcy Code, and by a superpriority administrative claim under Section 364 (c) of the Bankruptcy Code. The form of any order approving the DIP financing shall be acceptable to Presstek in its sole discretion.
    c. Presstek will assume all property or site leases of A.B. Dick sites currently occupied, with the specific exception of Rochester, which will be leased to Presstek for one dollar ($1) for six months following the acquisition of the Assets.
    d. Title to the Assets shall be transferred free and clear of all liens, encumbrances, claims and interests of every kind, whether of record or otherwise.
    e. Under no circumstances shall Presstek acquire or become responsible for any liabilities of IMG, A.B. Dick, or A.B. Dick, Canada now existing or

hereafter arising, unless specifically provided herein. Further, Presstek will not assume any liabilities of A.B. Dick Canada, IMG or A.B. Dick UK related to inter-company transfers or payments.

f.  Notwithstanding anything stated herein to the contrary, Presstek will assume those customer advances obligations related to customer service obligations as currently listed on the A.B. Dick Balance Sheet that are identified by Presstek.

g.  Presstek may elect to hire employees of A.B. Dick, A.B. Dick, Canada, A.B. Dick UK, and/or IMG (the "*Employees*") but will make no promise to do so. In the event that Presstek elects to hire the Employees, A.B. Dick agrees that it will not seek to enforce its restrictive covenants against the employee/s or Presstek, nor will it assign the employment contracts to any party.

h.  Under no circumstances will Presstek assume employment obligations of A.B. Dick. Presstek shall not be a successor in law to any of the A.B. Dick' employee obligations. Should Presstek decide to hire certain employees, Presstek will assume and continue their employee benefit and vacation plans, provided such plans are current and fully funded.

3.  **Due Diligence**. A.B. Dick will make available to Presstek or its designees any and all records and assets for review and photocopying, beginning on the date hereof until the consummation of the transaction that will be contemplated in the Definitive Agreement, at reasonable times and manner, with due consideration to the potential inconvenience of parties affected.

4.  **Exclusivity**. So long as this letter of intent shall be in effect, A.B Dick shall not (and shall cause the officers, representatives, agents and advisors of A.B. Dick not to) discuss, solicit, encourage or negotiate any proposal from or with, or supply information to, persons other than Presstek or its representatives with respect to, or in connection with, any sale, merger, consolidation, lease, joint venture, strategic alliance, transfer or other acquisition or similar transaction involving the A.B. Dick, its business or the Assets or any material portion thereof and A.B. Dick shall promptly advise Presstek of any such proposal or inquiry that the A.B. Dick receives. Promptly after execution of this letter of intent, A.B. Dick shall seek an order (the "Bid Order") of the Bankruptcy Court providing that (i) Presstek shall be entitled to a break up fee of in the event of a successful overbid by another Presstek; (ii) any competing bids must exceed Presstek's offer by an amount to be considered and must otherwise be on terms no less favorable to A..B. Dick than those proposed herein and (iii) competing overbids subject to financing will not be considered.

5.  **Expenses**. Each party shall be responsible for paying its own expenses relating to the proposed transaction; provided however, that if for any reason (i) the Bankruptcy Court does not approve the break up fee referenced above, (ii) Presstek elects to proceed with the transaction and (iii) Presstek is subject to an overbid, then Presstek's reasonable costs and expenses in connection with the investigation and review of the business and the negotiation, drafting and execution of the letter agreement or otherwise related to this transaction shall be

PRST-ABD363 Rev. 1                              2

A492