deemed administrative expenses of the bankruptcy estate of A.B. Dick pursuant to Sections 503 and 507 of the Bankruptcy Code.

6. **Conditions.** The parties understand that this letter agreement merely represents their understanding with respect to the contemplated transaction, does not contain all matters upon which agreements must be reached, creates no legal obligation on the part of any party hereto and that any transaction will be subject, among other things, to the satisfaction of each of the following conditions:

   a. the execution of the Definitive Agreement drafted by counsel to Presstek which shall contain the terms and conditions set forth herein and other provisions customarily contained in agreements of this nature;

   b. the completion by Presstek of its business, accounting, environmental, information systems and legal review of the Business and the Purchased Assets to the satisfaction of Presstek, in its sole discretion;

   c. the entry of the Bid Order;

   d. The entry of the Order, authorizing the purchase and sale of the Assets under the Definitive Agreement, upon the terms and conditions set forth herein and therein, and otherwise free and clear of (i) all security interests, liens, claims, charges and encumbrances of any kind whatsoever, and (ii) all liabilities and obligations (including liability for products manufactured or sold prior to Closing) except for the assumed liabilities. The Order shall include findings or legal conclusions to the effect that (i) the A.B. Dick is the owner of the Purchased Assets; (ii) Presstek is a good faith purchaser for value within the meaning of Section 363(m) of the Code; and (iii) the interest of any third party asserting an interest in the Assets can be satisfied by money and any such interest will attach to the proceeds of the sale and will not be assertable against Presstek or attach to the Assets. The Order shall also provide that Presstek shall not be liable to any of third party as a successor in interest to A.B. Dick, nor to any other bidders who made bids or offers for the assets of A.B. Dick. No stay of the Order shall have been issued by any court. As of the closing date, the Order shall not have been modified, amended, dissolved, revoked or rescinded.

   e. the key employees of A.B. Dick identified by Presstek shall have entered into employment and/or confidentiality and noncompetition agreements in form reasonably acceptable to Presstek; and

   f. there shall have occurred no material adverse change after _____, 2004 in the A.B. Dick, its financial condition, assets, liabilities or prospects or in the Purchased Assets.

| Presstek, Inc.: | The A.B. Dick, Company |
|---|---|
| By:_____ | By:_____ |
| Name:_____ | Name:_____ |
| Its:_____ | Its:_____ |
| Duly Authorized | Duly Authorized |

A493

# EXHIBIT LL

# MULTIPLE
# FAX TRANSMISSION



DICKSTEIN
SHAPIRO
MORIN &
OSHINSKY

*Legal Innovators*

| DATE: | October 27, 2004 | SENDER: | Jeffrey Rhodes, Esq. |
|---|---|---|---|
| CLIENT #: | N5050.0000 | SENDER #: | (202) 861-9150 |

| **RECIPIENT:** | **FIRM:** | **FAX NO.:** | **PHONE NO.:** |
|---|---|---|---|
| H. Jeffrey Schwartz, Esq. | Benesch, Friedlander, Coplan & Aronoff LLP | (216) 363-4588 | (216) 363-4500 |
| Mr. Stephen Gray | A.B.Dick Company | (847) 647-0634 | |

> Additional recipients (if any) on following page.

PAGES (Including Cover Sheet): ___7___      HARD COPY TO FOLLOW: _____ YES      __X__ NO

MESSAGE:

If your receipt of this transmission is in error, please notify this firm immediately by collect call to our Facsimile Department at 202-861-9106, and send the original transmission to us by return mail at the address below.

This transmission is intended for the sole use of the individual and entity to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. You are hereby notified that any dissemination, distribution or duplication of this transmission by someone other than the intended addressee or its designated agent is strictly prohibited.

2101 L Street NW   Washington, DC  20037-1526   Tel 202-785-9700   Fax 202-887-0689

PAGE 1/7 * RCVD AT 10/27/2004 4:52:34 PM [Eastern Daylight Time] * SVR:RFAX1/0 * DNIS:2 * CSID:202 887 0689 * DURATION (mm-ss):03-48

A496

DICKSTEIN  SHAPIRO  MORIN  &  OSHINSKY  LLP

*2101 L Street NW • Washington, DC 20037-1526*
*Tel (202) 785-9700 • Fax (202) 887-0689*
*Writer's Direct Dial: (202) 861-9150*
*E-Mail Address: RhodesJ@dsmo.com*

October 27, 2004

**BY FACSIMILE**

H. Jeffrey Schwartz, Esq.
Benesch, Friedlander, Coplan & Aronoff LLP
2300 BP Tower
200 Public Square
Cleveland, OH 44114-2378

Stephen Gray
Chief Restructuring Officer
A.B. Dick Company
7400 Caldwell Avenue
Niles, ILL. 60714

Re:     In re A.B. Dick Company, et al., Chapter 11 Case No. 04-12002 (CGC) in the
        United States Bankruptcy Court for the District of Delaware

Dear Gentlemen:

        Attached please find a restructuring proposal from Harbor Partners. Should
you have any questions or wish to discuss the proposal further, please feel free to call
me at the number set forth above, George Pitts at 202-861-9150, Dave Dullum at 703-
237-6371, or Bob Hanks at 617-624-8411.

        Thank you for your attention to this matter. We look forward to hearing from
you.

                                        Very truly yours,

                                        Jeffrey Rhodes

JR/pc
cc:     George R. Pitts, Esq. (w/ encl.)
        Ira Polon, Esq. (w/encl.)

*1177 Avenue of the Americas • New York, NY 10036-2714*
*Tel (212) 835-1400 • Fax (212) 997-9880*
*www.DicksteinShapiro.com*

DSMDB.1840791.1

PAGE 2/7 * RCVD AT 10/27/2004 4:52:34 PM [Eastern Daylight Time] * SVR:RFAX1/0 * DNIS:2 * CSID:202 887 0689 * DURATION (mm-ss):03-48

A497

# TERM SHEET
## (HARBOR PARTNERS REORGANIZATION PROPOSAL)

1.   **General:**  This term sheet provides a brief summary of a proposed restructuring of AB Dick Company (the "Company"), the debtor and debtor-in-possession in Case No. 04-12002 (CGC), now pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and jointly administered with the bankruptcy cases of Paragon Corporate Holdings, Inc., Interactive Media Group, Inc. and Multigraphics LLC (collectively, the "Bankruptcy Case"). What follows is a summary of a proposed restructuring by Harbor Partners ("Harbor").

2.   **Capital Structure Proposed by Harbor:**

   (i) Senior Secured Debt – revolving line of credit secured by first lien in all of the Company's assets and in the stock of the Company's Canadian and UK subsidiaries;

   (ii)     Subordinated Debt – up to $7,000,000 – secured by subordinate lien in all of the Company's assets and in stock of the Company's Canadian and UK subsidiaries;

   (iii)     Redeemable preferred stock with a face value of $7,500,000 and redeemable starting in year 3 from excess cash flow; and

   (iv)     new common stock.

3.   **Sources and Uses of Cash in Restructuring Proposed by Harbor:**

   (i)     Existing senior debt is refinanced by new senior lender;

   (ii)     Up to $7,000,000 provided through subordinated secured debt/cash contribution is used to pay the DIP financing and administrative expenses;

   (iii)     Redeemable preferred stock is issued to unsecured creditors holding allowed claims in consideration of their relinquishment of their respective claims, and providing the company with commercially acceptable credit terms on a going forward basis; and

   (iv)     New voting common stock is issued to Harbor, Company management, and others to be determined by Harbor.

4.   **Preservation of Rights and Claims Against Presstek, Inc.:**  This proposal contemplates that all claims and rights of the Company, its subsidiaries and trade and other creditors against, and with respect to, Presstek, Inc., are fully preserved and maintained.

5.     **Means of Implementation of Harbor Proposal:** The restructuring proposed by Harbor must be implemented through a Chapter 11 plan of reorganization for the Company, in form and substance acceptable to Harbor, that has been confirmed by an order of the Bankruptcy Court in the Bankruptcy Case that has become final and nonappealable. Harbor's willingness to pursue any proposed restructuring of the Company is conditioned upon Harbor's satisfaction, in its sole discretion, with the results of its review and investigation of the Company's financial affairs and the status of the Bankruptcy Case, which review and investigation will be completed by Harbor no later than November 15, 2004.

6.     **Other Conditions:** Harbor must be satisfied in its sole discretion with respect to the following:

(i)     the status of all dealer, supplier and franchise agreements;

(ii)    the status of all executory contracts and leases Harbor deems necessary to the operation of the Company's business, including without limitation, all cure obligations with respect thereto;

(iii)   the status of all actual and prospective environmental claims against the Company and any of its subsidiaries;

(iv)    the status of any actual or prospective litigation against, or with respect to, the Company and any of its subsidiaries, including without limitation the litigation now pending in the Bankruptcy Court seeking recharacterization of the claims of MHR Capital Partners LP, MHR Institutional Partners, LP, MHR Fund Management LLC and MHRM LP;

(v)     the status of the obligations of the Company and its subsidiaries with respect to any employee or retiree claims, benefits and plans, including without limitation all employee and retiree health and pension plans;

(vi)    the status of any actual or prospective WARN Act claims against the Company;

(vii)   the status of the obligations of the Company and its subsidiaries to any national, regional or local taxing authority;

(viii)  the status of all patents, trademarks, copyrights and service marks of the Company and its subsidiaries;

(ix)    the status of commitments by a lender or lenders to provide replacement senior secured debt and subordinated secured debt on terms and conditions acceptable to such lender(s) and Harbor, including without limitation financing to replace, prior to any "Termination Event" as defined in that final postpetition financing order entered by the Bankruptcy Court on or about September 2, 2004

DSMDB.1840679.1

PAGE 4/7 * RCVD AT 10/27/2004 4:52:34 PM [Eastern Daylight Time] * SVR:RFAX1/0 * DNIS:2 * CSID:202 887 0689 * DURATION (mm-ss):03-48      A499

(Docket No. 277) and in any event prior to November 15, 2004, the current DIP financing in the Bankruptcy Case; and

(x)    the ability of the Company to secure access to cash collateral, to provide adequate protection to secured prepetition lenders for use of cash collateral and other pre- and postpetition assets and to operate its business in Chapter 11 until confirmation of a Chapter 11 plan.

7.    <u>Attachment to Term Sheet:</u>  Letter dated October 27, 2004 from Sovereign Credit Management Limited.

DSMDB.1840679.1

PAGE 5/7 * RCVD AT 10/27/2004 4:52:34 PM [Eastern Daylight Time] * SVR:RFAX1/0 * DNIS:2 * CSID:202 887 0689 * DURATION (mm-ss):03-48

A500

ID:NEW ENGLAND PARTNERS          PAGE:003 R=76%                    OCT-27-2004 09:58AM    FAX:

SOVEREIGN
CREDIT MANAGEMENT

27 October 2004

D. Dullum
The Harbor Group
One Boston Place
Suite 3630
Boston
MA 02108

Dear Sirs,

### AB DICK INC

Sovereign Credit Management Limited has secured funding to replace the existing $7M DIP/Bridge Funding and also to provide further funding post Chapter 11, up to a maximum of $30M.

### OUTLINE TERM SHEET

| | |
|---|---|
| **Facility:** | $7,000,000 DIP/Bridge. Up to further $23,000,000 post Chapter 11 financing. |
| **Offering:** | Receivables Funding of maximum 90% of pre 90 day receivables 60% of finished goods/materials (UK) 30% of WIP (UK) 50% of finished goods/materials (USA) 25% of WIP (USA) |
| **Closing:** | 15 business days from signed approval for DIP/Bridge. 14 business days from confirmation of Chapter 11 exit for the balance of $23M. |
| **Maturity:** | Rolling facility, subject to meeting the Offering requirements. |
| **Rate:** | UK Bank Base Rate + 2.5% to 4.5% depending on security provided or UK facilities. US prime rate + 2.5% to 4.5% depending on security provided on US facilities |

3 THE COURTYARD
LONDON ROAD
HORSHAM
WEST SUSSEX
RH12 1AT

TEL 01403 755133
FAX 01403 753736
info@sovcredit.co.uk
www.sovcredit.co.uk

CSM

A501

10/27/2004 16:44 FAX 202 887 0689    D S M & O    ☐ 007

OCT-27-2004 13:15 FROM:NEW ENGLAND PARTNERS 617 624 8416    TO: 202 887 0689    P.3

OCT-27-2004 09:59AM    FAX:    ID:NEW ENGLAND PARTNERS    PAGE:004    R=76%

**SOVEREIGN**
CREDIT MANAGEMENT

Fees:    4% of facilities provided.

Security:    Common stock of UK and Canadian subsidiaries
Post petition A/R (less than 90 days)
Inventory as specified.
UK Credit Management of Receivables to be undertaken by
Sovereign Credit Management Limited on a Confidential basis

Overall facility post Chapter 11 secured by-

A/R of all companies
Inventory of all companies
Fixed plant, machinery and commercial property

Repayment:    Rolling facility, subject to meeting the Offering requirements.

Currency:    Unless otherwise stated, all figures are in United States Dollars

The above facilities will be provided by a combination of major providers in the
UK and North America and are subject to standard due diligence and formal
Board approval, which would include the following:

- Review of A/R and provision of financing on al. A/R 90 days or less
  old.
- Provision of detailed inventory listings review and physical
  inspection of major items.
- Review and valuation of plant, machinery and commercial
  property.
- Formal approval by the company (Board Resolution required).
- Completion of security stated above.

We trust the above is sufficient for your purposes, but please feel free to
contact us if you have any further queries.

Yours sincerely,

Trevor Deacon ACIB
Sales & Marketing Director

A502

# EXHIBIT MM



# Greenberg Traurig

Transmittal Cover Sheet

To:

Name:     H. Jeffrey Schwartz
Company:  Benesch, Friedlander, Coplan &
          Aronoff LLP
Fax No.:  216-363-6118 or 4588
Phone No.: 216-363-4635

Name:     James P. Ricciardi
Company:  McGuire Woods LLP
Fax No.:  212-548-2150
Phone No.: 212-548-2137

Name:     Michael M. Fay
Company:  Kasowitz, Benson, Torress &
          Friedman LLP
Fax No.:  212-506-1800
Phone No.: 212-506-1706

Name:     Michael J. Sage
Company:  Stroock & Stroock & Lavan
Fax No.:  212-806-9024
Phone No.: 212-806-6460

Name:     Glenn C. Pollack
Company:  Candlewood Partners, LLC

Fax No.:  440-247-3060
Phone No.: 440-264-8004

Name:     Robert C. Folland
Company:  Thompson Hine LLP
Fax No.:  216-566-5800
Phone No.: 216-566-5813

Name:     Stephen S. Gray
Company:  A.B. Dick Company, *et al.*

Fax No.:  847-647-0634
Phone No.: 847-779-2650

FROM        Allen G. Kadish

File Number   67627.010400

Comments

Date        October 26, 2004

Time

No. Pages   Including this cover sheet    8

Please notify us immediately if not received properly at 212.801.9297.

The information contained in this transmission is attorney privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone collect and return the original message to us at the address below via the U.S. Postal Service. We will reimburse you for your postage. Thank you.

# Greenberg
# Traurig

Allen G. Kadish
(212) 801-6846
kadisha@gtlaw.com

October 26, 2004

Benesch, Friedlander, Coplan & Aronoff, LLP
Attn: H. Jeffrey Schwartz, Esq.
2300 BP Tower
200 Public Square
Cleveland, Ohio  44114

Candlewood Partners, LP
Attn: Glenn Pollack, Managing Director
10½ East Washington Street
Cleveland, Ohio  44022

Re:  In re A.B. Dick Company, *et al.*, Debtors
     Chapter 11 Case No. 04-12002 (CGC) (Jointly Administered)
     <u>In the United States Bankruptcy Court for the District of Delaware</u>

Gentlemen:

This firm is counsel to ComVest Investment Partners II, LLC ("ComVest") in connection with the referenced matter.  We write to you in your capacity as counsel and financial advisor, respectively, to A.B. Dick Company, *et al.*, debtors (the "Debtors") in their referenced Chapter 11 cases (the "Case") pending in the United States Bankruptcy Case for the District of Delaware (the "Court").

ComVest has received that certain *Amended Order:  (A) Approving Bidding Procedures for the Sale of Substantially All of the Assets of A.B. Dick Company and its Wholly Owned Subsidiaries; (B) Authorizing Payment of an Expense Reimbursement and Termination Fee; (C) Setting Sale Hearing Date; and (D) Approving Form of Notice* (the "Bidding Procedures"), as issued by the Court on September 15, 2004.

ComVest submits this letter as its indication of interest to pursue a transaction as outlined herein.  This letter reflects our initial indication of interest, subject to diligence, negotiation and refinement.

ComVest submits that the terms set forth herein are more favorable than the Sale (as defined in the Bidding Procedures) proposed by Silver Acquisitions Corp. and/or Presstek, Inc. and/or its or their affiliates ("Presstek"), and are likely to yield value greater

\\ny-srv01\kadisha\1001086v05    Greenberg Traurig, LLP | Attorneys at Law | Met Life Building | 200 Park Avenue | New York, NY 10
Tel 212.801.9200 | Fax 212.801.6400 | www.gtlaw.com

A505

Benesch, Friedlander, Coplan & Aronoff, LLP
Candlewood Partners, LP
October 26, 2004
Page 2

than the Sale value, as stated, and at least in the amount of the Initial Minimum Overbid Amount
(as defined in the Bidding Procedures).

In order for ComVest to complete its diligence, and provide an unconditional offer, we
respectfully suggest a short postponement of the auction process including the bid deadline as
set forth below. We look forward to the response of the Debtors and the official creditors'
committee (the "Committee") on the timing issue very quickly.

ComVest would present a proposal to restructure the business of the Debtors by a plan of
reorganization transaction in accordance with the following, and other, consistent, terms:

| | |
|---|---|
| Basic Transaction: | ComVest would serve as plan funder in respect of a plan of reorganization to be proposed jointly by the Debtors and ComVest, as plan co-proponents, with the support of the Committee. |
| Treatment of Secured D-I-P Facility: | Upon approval of the Court with respect to terms, ComVest will repay in full the current debtor-in-possession facility (the "D-I-P Facility") and serve as replacement debtor-in-possession lender through the Effective Date of the plan. |
| Treatment of Secured Debt of KeyBank: | KeyBank secured facility would be replaced or reinstated; facility otherwise would be on financial terms acceptable to KeyBank and the Reorganized Debtor. Treatment of KeyBank secured facility pending the Effective Date on terms currently in place. |
| Treatment of Other Secured Claims: | Reinstated, or satisfied in full, or collateral returned to lender. |
| Treatment of Priority Claims: | Allowed priority claims to be settled in cash, paid over time according to the maximum allowed by the Bankruptcy Code, or otherwise as the Debtor, ComVest and the creditor shall agree. |

Benesch, Friedlander, Coplan & Aronoff, LLP
Candlewood Partners, LP
October 26, 2004
Page 3

| | | |
|---|---|---|
| Treatment of General, Unsecured Claims: | (i) | **Establishment of Trust:**<br><br>Establishment of litigation trust to pursue causes of action for the sole, ratable benefit of general, unsecured creditors, including the pending MHR and Kirwan adversary proceedings. The Debtors would also contribute to the litigation trust all their legal and equitable claims and causes of action under the "avoiding powers" of the Bankruptcy Code and other applicable law.<br><br>The governance and operation of the litigation trust would be determined by agreement of the Debtors, the Committee and ComVest. ComVest would cause the Reorganized Debtors to advance funds on behalf of the liquidation trust to fund the expenses thereof. The first proceeds of the liquidation trust would repay such expenses advanced and provide a reserve. |
| | (ii) | **Participation-in-Profits Instrument:**<br><br>$8 million note (the "Note") designed to allow general, unsecured creditors to share in the profits of the business (as calculated after giving effect to debt payments, working capital, capital expenditures and taxes) from and after the Effective Date (the "Profits"). The Note would be repaid solely from a 15% participation in the Profits subject to a minimum distribution of no less than $1 million over the first three years following the Effective Date of the plan. In the event of a sale of the business to a third party, in the event that the Note has not been paid off in full, then after ComVest's investment is repaid in full, 15% of the proceeds of such sale shall be used to pay the balance of the Note. |
| Treatment of MHR and other Subordinated Note Claims: | | Current adversary proceedings to be prosecuted to completion or otherwise settled by negotiation between committee and MHR. |
| Treatment of Current Equity: | | To be cancelled. |
| New Equity: | | To be issued to ComVest on the Effective Date. |

Benesch, Friedlander, Coplan & Aronoff, LLP
Candlewood Partners, LP
October 26, 2004
Page 4

| | |
|---|---|
| Maintenance of Operations: | Under a plan, Debtors to be operated as going concerns, including Canadian and UK operations, subject to consolidation, reductions and operational reorganization. |
| Environmental Liabilities: | To be identified, quantified and treated among the general, unsecured creditors' pool to the extent possible under a plan. |
| Management: | Generally to be maintained and supplemented by ComVest team, subject to diligence. |
| Releases: | To former equity, as may be negotiated. |
| Leases: | Generally to be assumed, but finally determined by particular determinations and subject to diligence. |
| N.O.L.: | If possible, to be preserved and exploited as may be beneficial to the reorganized Debtors, based upon a structure to be acceptable to ComVest. |
| ComVest Exit Facility and Commitment Fee: | Upon the Effective Date of the plan, ComVest would arrange for or establish a secured exit facility to provide working capital, in an amount and under terms to be negotiated. |
| Replacement D-I-P Facility Commitment Fee: | ComVest would be entitled to a commitment fee for payment of the existing D-I-P Facility and replacement thereof by ComVest, in an amount to be negotiated. |
| Expense Reimbursement: | ComVest would be entitled to reimbursement of its actual and reasonable out-of-pocket expenses incurred in its activity in support of a plan of reorganization and otherwise in the Case, from and after October 15, 2004, and through the Effective Date of the plan. Expense reimbursement would be advanced to ComVest on the first business day of each month in the amount of (a) $50,000.00 against such month's expenses, and (b) in such amount as would make ComVest whole with respect to prior-incurred actual and reasonable expenses. |

Benesch, Friedlander, Coplan & Aronoff, LLP
Candlewood Partners, LP
October 26, 2004
Page 5

| | |
|---|---|
| Termination Fee: | If the Court approves a transaction, sale or plan other than in favor of and with the consent of ComVest, ComVest would be entitled to be paid (notwithstanding any commitment fee and expense reimbursement) the sum of $500,000.00 by the Debtors upon Court-approval of such transaction, sale or plan. |
| Value of Transaction: | The nominal value of the transactions set forth herein is approximately $47 - $51 million. The structure set forth herein also preserves value for unsecured creditors; maintains operations and jobs at an enhanced value over an immediate sale; leaves the Debtors with experienced and supplemented management; and provides sufficient capital for a successful reorganization. |
| Financial Ability: | ComVest has the financial ability to consummate the transactions described. ComVest is a private equity fund with $165 million of capital. |
| Joint Development Agreement: | Transaction contingent upon Presstek's participation in joint development agreement with Debtors or on alternative arrangements acceptable to ComVest. Mutual releases among ComVest, Presstek, and the Committee for all activity through the petition date. |
| Definitive Documentation: | The terms of the transactions described herein are not final or binding, shall establish no cause for reliance, and are subject to (a) acceptance by the Debtors and support of the Committee to be evidenced by a stipulation submitted for Court-approval, to be followed by (b) definitive documentation including the filing and prosecution of a plan of reorganization upon the consent of ComVest to such plan, and (c) effectiveness of such plan. |
| Fiduciary "Out": | The Debtors and the Committee will not actively solicit offers for a sale or other plan or non-plan transaction and will not compete with the transactions set forth herein. However, nothing shall preclude the Debtors and the Committee from fully acting in accordance with their respective fiduciary duties, including considering unsolicited offers, all of which would promptly be shared with ComVest upon receipt. |

Benesch, Friedlander, Coplan & Aronoff, LLP
Candlewood Partners, LP
October 26, 2004
Page 6

Court-Approval:

Promptly upon acceptance of the terms hereof, the Debtors to (a) file with the Court a Motion to abandon the Sale process and for approval of the ComVest expense reimbursement, facility fee and termination fee provisions hereof, and (b) together with the Committee, file a stipulation setting forth their joint support of the transactions set forth herein. Court-approval to be obtained no later than a date certain to be agreed.

Carve-Outs:

Reasonable carve-outs to senior secured and D-I-P Facility for actual and reasonable Debtors' and Committee's professionals and United States Trustee fees and expenses.

Material Adverse Change:

No material adverse change of conditions and circumstances through the Effective Date of the plan.

Termination Events:

(a) Failure to meet any material term or condition hereof, or deadline, or any term or condition established in definitive documentation; (b) appointment of a trustee, examiner, or other fiduciary in any Case; (c) dismissal of any Case, and/or (d) conversion of any Case to Chapter 7.

Press Releases:

Upon consent of both ComVest and the Debtors.

Access:

ComVest to be entitled to all financial, operational, organizational and other information of the Debtors in whatever form in order to complete diligence, and pending the Effective Date.

Further Diligence:

ComVest has performed substantial diligence. However, given the compressed timetable, the expression set forth in this letter is subject to further diligence, to be completed on or about November 15, 2004.

We are prepared to provide a 5% deposit, or $2,350,000.00 upon return of this letter countersigned, with appropriate wire instructions, and an Order of the Court rescheduling the auction hearing and process as set forth herein. Such deposit is to be maintained in escrow on terms substantially similar to those set forth in the Bidding Procedures, but shall be refunded immediately in full if the Debtors do not vigorously prosecute a transaction consistent herewith or in the event that ComVest elects not to proceed with a transaction based upon its due diligence review.

Benesch, Friedlander, Coplan & Aronoff, LLP
Candlewood Partners, LP
October 26, 2004
Page 7

We would look forward to advancing a transaction with the Debtors as set forth above.

Very truly yours,

Allen G. Kadish

COMVEST INVESTMENT PARTNERS II, LLC

By: _____
Carl Kleidman
Managing Director

AGREED AND ACCEPTED SUBJECT TO THE
TERMS SET FORTH ABOVE:

A. B. Dick Company,
    Debtor and Debtor-in-Possession
For itself and its affiliated debtors and debtors-in-
    possession

By: _____
    Name:
    Title:

<u>cc via facsimile</u>:

    James Ricciardi, Esq., Counsel for Committee
    Robert C. Folland, Esq., Counsel for KeyBank
    Michael M. Fay, Esq., Counsel for MHR Capital Partners
    Michael J. Sage, Counsel for MHR Capital Partners
    Stephen S. Gray, CRO
    Alan I. Annex, Esq.

# EXHIBIT NN

SEP-14-2004  22:43        ABDICK                          847 647 6940    P.02/36



**A SMARTER WAY TO PRINT**

July 8, 2004

A.B. Dick Company
7400 Caldwell Avenue
Niles, IL  60714
Attn: Vice President – Procurement

DELIVERED VIA FACSMILE AND FIRST CLASS MAIL

To Whom It May Concern:

Please direct your attention to the Joint Development and Exclusive Supply and Distribution Agreement by and between the A.B. Dick Company and Presstek, Inc., entered into the 16th day of October, 2003 (the "Agreement"). Item IV D 3 of the Agreement states in relevant part that Presstek may terminate the Agreement should the A.B. Dick Company become insolvent. In accordance with the terms of the Agreement, Presstek hereby notifies you that it is exercising its rights thereunder to hereby terminate the Agreement. Kindly direct your attention to Item IV E of the Agreement, which addresses the course of action of the parties related to termination of the Agreement.

Notwithstanding our termination of the Agreement, in an effort to meet the needs of your customers, we will be prepared to supply you with products, on terms mutually agreeable, to meet the needs of your current customers.

Sincerely,

James F. Scafide

Cc: Jeff Herden, General Counsel

55 Executive Drive, Hι
Tel: (603) 59    A513

# EXHIBIT OO

 **Michael V Lugli**
05/13/2004 03:17 PM

To: Patrick Auletta/GL/KB/KeyCorp
CC:
Subject: Paragon

Pat:

I still have not heard from Citizens but did see Scott Foye in the hall and he confirms a new commitment was issued last Friday. Commitment was subject to environmental- Citizen is engaging counsel to review. Presstek has conveyed to the Banks that liquidity is an issue with Paragon indicating they understand the urgency of getting a deal done

Michael V. Lugli
Senior Vice President
Key Bank National Association
127 Public Square
Cleveland, OH 44114
216-689-0851(P)
216-689-8468 (F)
----- Forwarded by Michael V Lugli/NE/KB/KeyCorp on 09/01/2004 03:52 PM -----

# EXHIBIT PP

JUN-22-2004  00:20                                                    P.01/02

# *PRESSTEK, INC.*

55 Executive Drive
Hudson, NH 03051
Phone: 603-595-7000
Fax:    603-595-2602

Date:

To: *Michael Lugli*

From: *Moose E. Moose*

Subject: *Silver*

Fax:

Fax:

YOU SHOULD RECEIVE _____ PAGE(S), INCLUDING THIS COVER SHEET.

Note: The contents of this fax are confidential and may be legally privileged. Unauthorized use or distribution of this material is strictly prohibited. Nothing contained in this fax or accompanying documents creates an obligation on the part of Presstek or its employees unless such obligation is specifically provided for and signed by an authorized official of the company.

410. 449 3111 (JOHN)

A517



June 22, 2004

CONFIDENTIAL

Key Corporate Capital, Inc.
7400 Coldwell Avenue
Niles, Illinois 60714
Attention: Michael Lugli

Re:    A.B. Dick Company (the "Company")

Dear Sirs:

Reference is made to the proposed transaction (the "Proposed Transaction") involving the purchase by Presstek of the capital stock of the Company from Paragon Corporate Holdings, Inc. ("Paragon"), and to the Credit and Security Agreement ("Credit Agreement") dated as of April 1, 1998, as amended, among Paragon and Key Corporate Capital, Inc. ("Key") and related agreements, including the Subsidiary Guaranty Agreement and Security Agreement of the Company dated as of April 1, 1998, as amended.

As you know, pursuant to the terms of the relevant documents related to the Proposed Transaction, Presstek cannot consider proceeding with the Proposed Transaction unless Key (i) approves the Proposed Transaction and (ii) continues to fund the Company's working capital and operating deficits, as it has in the past. Recently, you have stated Key's unwillingness to provide further funding and have indicated that Key will not approve the Proposed Transaction unless Presstek provides a commitment for the necessary financing for the working capital and operating deficits of the Company through the closing of, the Proposed Transaction (the "Interim Period"). Key has further indicated that such a commitment must be provided by today. Presstek has considered this request and hereby informs Key that Presstek is unwilling to provide such financing.

Because Key has indicated that it would not grant approval of the Proposed Transaction unless Presstek provided the commitment to fund the working capital and operating deficits of the Company during the Interim Period, and because Presstek will not provide such a commitment, we conclude that Key has denied approval of the Proposed Transaction.

Sincerely,

Moosa E. Moosa
Vice President-Finance and CFO

cc:    Paragon Corporate Holdings, Inc.
       MHR Fund Management LLC

A518

55 Executive Drive, Hudson, NH 0305
Tel: (603) 595-7000 Fax: (60)
www.pre

# EXHIBIT QQ

06/23/2004 16:03 FAX 518 257 8539     KEY ASSET RECVY ALANY     ☒001
JUN-23-2004 15:02     AB DICK     P.01

## PARAGON corporate holdings inc.

June 23, 2004

*To: Mike Cuzzi*

*From: Sara*
*216-689-8468*
*1 of 5*

Ms. Sara Brodany
Asset Recovery Group
Key Structured Finance
127 Public Square
Cleveland, OH 44114

## FAX TRANSMITTAL

Dear Sara:

Enclosed is A.B. Dick Company's borrowing base certificate for the week ended, June 18, 2004. The certificate has been prepared in accordance with the current credit agreement that includes the revised method of calculating availability.

If you have any questions regarding the enclosed information, please do not hesitate to telephone.

Sincerely,

Gregory T. Knipp
Vice President and CFO



**Key Corporate Capital Inc.**

| (000 Eliminated) | | | | | |
|---|---|---|---|---|---|
| Borrowing Base Certificate  BC# | | | | | June 18, 2004 |
| **A/R & Inventory** | | | | | |
| Non-Service A/R | Exhibit A | $ | | | |
| Less Ineligibles | Exhibit B | $ | | | |
| Eligible/Available Accounts Receivable | | $ | | 80% | $   10,534,386 |
| Service Contract A/R | Exhibit A | $ | | | |
| Less Ineligibles | Exhibit B | $ | | | |
| Eligible/Available Accounts Receivable | | $   4,523,658 | | 50% | $   2,281,929 |
| Gross Total WIP & Finished Goods | Exhibit C | $ | | | |
| Less Ineligibles | Exhibit C | $ | | | |
| Eligible/Available WIP Inventory | | $   14,045,764 | | 60% | $   8,427,458 |
| WIP Cap | | | | | $ |
| Gross Total House Demo Equipment | Exhibit C | $ | | | |
| Less Ineligibles | Exhibit C | $ | | | |
| Eligible/Available Finished Goods Inventory | | $   694,572 | | 60% | $   416,743 |
| Gross Total Field Demo Equipment | Exhibit C | $   300,559 | | | |
| Less Ineligibles | Exhibit C | $ | | | |
| Eligible/Available Finished Goods Inventory | | $   300,559 | | 10% | $   30,056 |
| FG Cap | | | | | $ |
| Total Available Inventory | | | | | $   8,874,257 |
| Total Available Cap | | | | | $   15,000,000 |
| **Other Collateral** | | | | | |
| | | $ | | | $ |
| | | $ | | | $ |
| **Availability Calculation** | | | | | |
| Available Collateral to Borrow Against | | | | | $   21,670,572 |
| Less: Reserve Requirement | | | | | $   0 |
| Total Available Collateral to Borrow Against | | | | | $   21,670,572 |
| Line of Credit Cap | | | | | $   28,500,000 |
| Less Reserve for Letters of Credit | | | | | $   (54,103) |
| Total Available (Lesser of Available Collateral or Line Cap minus reserve) | | | | | $   21,616,470 |
| **Loan Balance Calculation (actual)** | | | | | |
| Beginning Loan Balance Per Prior BC# | | | | | $   24,057,700 |
| Less: Collections: | | | | | |
| | | Date: | | | $ |
| | | Date: | | | $ |
| | | Date: | | | $ |
| | | Date: | | | $ |
| | | Total Collections | | | $   0 |
| Plus:  Loan Advance Requested This Certificate | | | | | $   0 |
| New Loan Balance | | | | | $   24,057,700 |
| **Ending Availability** | | | | | |
| Availability (Overadvance) (New Loan Balance less Available Collateral) | | | | | $   (2,441,230) |

For the purpose of inducing Key Corporate Capital Inc. to grant loans to the undersigned pursuant
to the Credit and Security Agreement between the parties dated _____.
I hereby certify that the following Borrowing Base Certificate and attached Exhibits A through D are
true and correct in all respects and the collateral available for such loans represents acceptable accounts
and inventory in accordance with said Credit and Security Agreement.

Company Name:   Paragon Corporate Holdings, Inc.

Authorized Signature: _____          Date: 6/23/04

A521

A. B. Dick Company
KeyBank Borrowing Base Certificate
~ Summary of Eligible Accounts

|  | ABDC & Multi 6/18/2004 |
|---|---|
| **EXHIBIT B** | |
| **Accounts Receivable Section:** | |
| | |
| NON-SERVICE A/R | 14,314,508 |
| | |
| Less A/R > 90 days from invoice date: | |
| 61 - 90 Overdue | (606,876) |
| 91 - 120 Overdue | (119,284) |
| 121 - 150 Overdue | (37,212) |
| Sub-Total | (763,384) |
| | |
| Less Foreign A/R Exclusion: | |
| Current | (477,187) |
| 30 days past due | (212,194) |
| 60 days past due | (142,736) |
| Total | (832,117) |
| Amount Not Covered by Letter of Credit | 20.0% |
| Sub-Total | (166,423) |
| | |
| Less: 50% Taint | (40,660) |
| Less: Change in Foreign Exclusion | 37,000 |
| Less: Foreign Credit Insurance Deductible | (15,000) |
| Less: Affiliates | 0 |
| Less: Contra Accounts | (99,810) |
| Less: Sales Tax Adjustment | (98,048) |
| Less: Other | 0 |
| TOTAL Ineligibles | (1,146,525) |
| | |
| Eligible A/R | 13,167,983 |
| Advance Rate | 80.0% |
| AVAILABLE NON-SERVICE A/R | 10,534,386 |
| | |
| SERVICE CONTRACT A/R | 4,922,571 |
| | |
| Less A/R > 90 days from invoice date: | |
| 61 - 90 Overdue | (114,400) |
| 91 - 120 Overdue | (33,329) |
| 121 - 150 Overdue | (24,970) |
| Sub-Total | (172,700) |
| | |
| Less: 50% Taint | (3,504) |
| Less: Sales Tax Adjustment | (44,548) |
| Less: Government A/R | (7,720) |
| Less: Credit Past Due | (150,340) |
| Less: Other | 0 |
| TOTAL Ineligibles | (398,812) |
| | |
| Eligible A/R | 4,523,858 |
| Advance Rate | 50.0% |
| AVAILABLE SERVICE CONTRACT A/R | 2,261,929 |
| | |
| TOTAL A/R | 18,237,178 |
| | |
| **EXHIBIT C** | |
| **Inventory Section:** | April-2004 |
| | |
| Total Raw Materials & WIP | 5,846,234 |
| Less Raw Materials (mfg 068 & 068R) | (2,854,056) |
| Total WIP | 2,992,178 |
| Less Ineligibles (mfg 068 & 068R) | (200,450) |
| Eligible WIP | 2,791,728 |
| Allowance Percentage | 60.00% |
| Available WIP | 1,675,037 |
| | |
| Total Finished Goods | 19,977,535 |
| Add LIFO & Depreciation Reserve | 0 |
| FIFO Finished Goods | 19,977,535 |
| Less Reserves | (7,260,243) |
| Total Eligible Finished Goods | 12,717,292 |

A522

A. B. Dick Company
KeyBank Borrowing Base Certificate
 - Summary of Eligible Accounts

|  | ABDC & Multi 6/18/2004 |
|---|---|
| Less Audit Adjusted Depr | (405,000) |
| Less House Demo | (684,571) |
| Less Field Demo | (300,559) |
| Less Ineligible Consigned | (49,864) |
| Less Ineligible Defect | (11,635) |
| Less Ineligible Other | (1,627) |
| Total Ineligible Adjustments | (1,463,256) |
|  |  |
| Net Eligible Finished Goods | 11,254,038 |
| Allowance Percentage | 60.00% |
| Available Finished Goods | 6,752,422 |
|  |  |
| 60% of House Demo | 416,743 |
| 10% of Field Inventory | 30,056 |
| Total Available Finished Goods | 7,199,220 |
|  |  |
| TOTAL BORROWING BASE INVENTORY | 6,874,257 |

Beginning Loan Balance:

| Carry-forward Balance 6-16-04 | 23,440,691.06 |
|---|---|
| 6/07/04 - Lockbox Collections | (XXXXXXXXXX) |
| 6/07/04 - Borrowing Request | 508,867.90 |
| 6/08/04 - Lockbox Collections | (349,966.72) |
| 6/08/04 - Borrowing Request | 222,152.77 |
| 6/09/04 - Lockbox Collections | (361,174.94) |
| 6/09/04 - Borrowing Request | 338,911.44 |
| 6/10/04 - Lockbox Collections | (350,557.78) |
| 6/10/04 - Borrowing Request | 233,418.13 |
| 6/11/04 - Lockbox Collections | (305,300.02) |
| 6/11/04 - Borrowing Request | 293,110.35 |
| 6/14/04 - Lockbox Collections | (394,011.78) |
| 6/14/04 - Borrowing Request | 291,680.56 |
| 6/15/04 - Lockbox Collections | (723,285.05) |
| 6/15/04 - Borrowing Request | 216,730.67 |
| 6/16/04 - Lockbox Collections | (697,349.13) |
| 6/16/04 - Borrowing Request | 317,612.71 |
| 6/17/04 - Lockbox Collections | (375,185.65) |
| 6/17/04 - Borrowing Request | 1,459,360.55 |
| 6/18/04 - Lockbox Collections | (310,985.76) |
| 6/18/04 - Borrowing Request | 1,111,878.58 |
|  |  |
| Total | 24,057,699.53 |

Reserve For Letters of Credit

| Konica Corporation |  | 0 |
|---|---|---|
| Ryobi Limited |  | 0 |
| Watkiss Automation Limited |  | 0 |
| Iwatsu Electric Company |  | 54,103 |
|  |  |  |
| Bertram Coltman | (02/12/xx) | 0 |
| Liberty Mutual |  | 0 |
| Agfa |  | 0 |
| Manufacturers Bank |  | 0 |
| Total |  | 54,103 |

| Available Collateral to Borrow Against | 21,670,573 |
|---|---|
| Line of Credit Cap | 28,500,000 |
|  |  |
| Less:  Reserve for Letters of Credit | (54,103) |
| Total Available (Lesser of Avail Collat, Cap - Reserve | 21,616,470 |
| Loan Balance | (24,057,700) |
| Net Availability | (2,441,230) |

## A B DICK COMPANY
## AGING WITH SERVICE CONTRACTS BROKEN OUT
### AGING AS OF 6/19/04

**Sales**

| TOTAL | CURRENT | 1 – 30 | 31 – 60 | 61 – 90 | 91 – 120 | 121 + |
|---|---|---|---|---|---|---|
| 11,102,937.88 | 8,475,916.19 | 3,571,381.45 | 996,540.32 | 153,573.39 | (238,387.67) | (1,856,085.80) |
| 3,211,570.17 | (331,049.24) | 552,571.61 | 285,763.60 | 453,304.71 | 357,681.85 | 1,893,297.64 |
| 14,314,508.05 | 8,144,866.95 | 4,123,953.06 | 1,282,303.92 | 606,878.10 | 119,294.18 | 37,211.84 |

**Service**

| TOTAL | CURRENT | 1 – 30 | 31 – 60 | 61 – 90 | 91 – 120 | 121 + |
|---|---|---|---|---|---|---|
| 4,736,786.01 | 2,131,440.17 | 2,476,353.41 | 77,314.25 | 92,695.96 | 38,015.32 | (81,041.10) |
| 185,884.49 | (10,814.85) | 20,804.39 | 31,865.58 | 22,704.30 | 15,313.55 | 106,011.52 |
| 4,922,670.50 | 2,120,633.32 | 2,499,157.80 | 109,179.83 | 115,400.26 | 53,328.87 | 24,970.42 |

**Total**

| TOTAL | CURRENT | 1 – 30 | 31 – 60 | 61 – 90 | 91 – 120 | 121 + |
|---|---|---|---|---|---|---|
| 15,839,723.89 | 10,607,364.36 | 6,048,734.86 | 1,073,854.57 | 246,269.35 | (200,372.35) | (1,937,126.90) |
| 3,397,454.66 | (341,864.09) | 573,376.00 | 317,629.18 | 476,009.01 | 372,995.40 | 1,999,309.16 |
| 19,237,178.55 | 10,265,500.27 | 6,623,110.86 | 1,391,483.75 | 722,278.36 | 172,628.05 | 62,182.26 |

KEY01813

A524

# EXHIBIT RR

06/18/2004 09:06 FAX 518 257 8539    KEY ASSET RECVY ALANY    ☒001
JUN-17-2004 12:31    AB DICK    P.01

# PARAGON corporate holdings inc.

June 17, 2004

Ms. Sara Brodany
Asset Recovery Group
Key Structured Finance
127 Public Square
Cleveland, OH  44114

**FAX TRANSMITTAL**

Dear Sara:

*To: Mike Lagli*
*From: Sara Brodany*

*Their loan balance doesn't match ours. Off by ~ 200.00. Joe is aware. Waiting for a call back from him.*
*— Sara*

Enclosed is A.B. Dick Company's borrowing base certificate for the period ended, June 16, 2004. The certificate has been prepared in accordance with the current credit agreement that includes the revised method of calculating availability.

If you have any questions regarding the enclosed information, please do not hesitate to telephone.

Sincerely,

Gregory T. Knipp
Vice President and CFO

06/18/2004 09:06 FAX 518 257 8530     KEY ASSET RECVY ALANY     ☒002
JUN-17-2004  12:31     RB DICK                                P.02



**Key Corporate Capital Inc.**

| (000 Eliminated) | | | | | |
|---|---|---|---|---|---|
| **Borrowing Base Certificate  BC#** | | | | | **June 16, 2004** |
| **A/R & Inventory** | | | | | |
| Non-Service A/R | Exhibit A | $ | 14,172,494 | | |
| Less Ineligibles | Exhibit B | $ | (1,001,323) | | |
| Eligible/Available Accounts Receivable | | $ | 13,171,171 | 80% | $  10,536,937 |
| | | | | | |
| Service Contract A/R | Exhibit A | $ | 5,056,607 | | |
| Less Ineligibles | Exhibit B | $ | (427,077) | | |
| Eligible/Available Accounts Receivable | | $ | 4,629,529 | 50% | $  2,314,765 |
| | | | | | |
| Gross Total WIP & Finished Goods | Exhibit C | $ | 22,969,713 | | |
| Less Ineligibles | Exhibit C | $ | (8,923,949) | | |
| Eligible/Available WIP Inventory | | $ | 14,045,764 | 60% | $  8,427,458 |
| WIP Cap | | | | | $ |
| | | | | | |
| Gross Total House Demo Equipment | Exhibit C | $ | 694,571 | | |
| Less Ineligibles | Exhibit C | $ | 0 | | |
| Eligible/Available Finished Goods Inventory | | $ | 694,571 | 60% | $  416,743 |
| | | | | | |
| Gross Total Field Demo Equipment | Exhibit C | $ | 300,559 | | |
| Less Ineligibles | Exhibit C | $ | 0 | | |
| Eligible/Available Finished Goods Inventory | | $ | 300,559 | 10% | $  30,056 |
| FG Cap | | | | | $ |
| | | | | | |
| Total Available Inventory | | | | | $  8,874,257 |
| Total Available Cap | | | | | $  15,000,000 |
| **Other Collateral** | | | | | |
| | | $ | | | $ |
| | | $ | | | $ |
| **Availability Calculation** | | | | | |
| Available Collateral to Borrow Against | | | | | $  21,725,959 |
| Less: Reserve Requirement | | | | | $  0 |
| Total Available Collateral to Borrow Against | | | | | $  21,725,959 |
| Line of Credit Cap | | | | | $  26,500,000 |
| Less Reserve for Letters of Credit | | | | | $  (54,103) |
| Total Available (Lesser of Available Collateral or Line Cap minus reserve) | | | | | $  21,671,856 |
| **Loan Balance Calculation (actual)** | | | | | |
| Beginning Loan Balance Per Prior BC# | | @ | | | $  22,172,315 |
| Less Collections: | | | | | |
| | Date: | | | | $ |
| | Date: | | | | $ |
| | Date: | | | | $ |
| | Date: | | | | $ |
| | Total Collections | | | | $  0 |
| Plus:  Loan Advance Requested This Certificate | | | | | $  0 |
| New Loan Balance | | | | | $  22,172,315 |
| **Ending Availability** | | | | | |
| Availability (Overadvance) (New Loan Balance less Available Collateral) | | | | | $  (500,459) |

For the purpose of inducing Key Corporate Capital Inc. to grant loans to the undersigned pursuant
to the Credit and Security Agreement between the parties dated _____.
I hereby certify that the following Borrowing Base Certificate and attached Exhibits A through D are
true and correct in all respects and the collateral available for such loans represents acceptable accounts
and inventory in accordance with said Credit and Security Agreement.

Company Name:  Paragon Corporate Holdings, Inc.

Authorized Signature: _____     Date: 6/17/04

A. B. Dick Company
KeyBank Borrowing Base Certificate
- Summary of Eligible Accounts

|  | ABDC & Multi 6/18/2004 |
|---|---|
| **EXHIBIT B** | |
| **Accounts Receivable Section:** | |
| | |
| NON-SERVICE A/R | 14,172,494 |
| | |
| Less A/R > 90 days from invoice date: | |
| 61 - 90 Overdue | (463,737) |
| 91 - 120 Overdue | (112,894) |
| 121 - 150 Overdue | (39,963) |
| Sub-Total | (616,593) |
| | |
| Less Foreign A/R Exclusion: | |
| Current | (456,700) |
| 30 days past due | (225,749) |
| 60 days past due | (157,613) |
| Total | (840,063) |
| Amount Not Covered by Letter of Credit | 20.0% |
| Sub-Total | (168,013) |
| | |
| Less: 50% Taint | (40,860) |
| Less: Change in Foreign Exclusion | 37,000 |
| Less: Foreign Credit Insurance Deductible | (15,000) |
| Less: Affiliates | 0 |
| Less: Contra Accounts | (89,610) |
| Less: Sales Tax Adjustment | (98,048) |
| Less: Other | 0 |
| TOTAL Ineligibles | (1,001,323) |
| | |
| Eligible A/R | 13,171,171 |
| Advance Rate | 80.0% |
| AVAILABLE NON-SERVICE A/R | 10,536,937 |
| | |
| SERVICE CONTRACT A/R | 5,056,607 |
| | |
| Less A/R > 90 days from invoice date: | |
| 61 - 90 Overdue | (181,562) |
| 91 - 120 Overdue | (13,636) |
| 121 - 150 Overdue | (25,767) |
| Sub-Total | (220,966) |
| | |
| Less: 50% Taint | (3,604) |
| Less: Sales Tax Adjustment | (44,548) |
| Less: Government A/R | (7,720) |
| Less: Credit Past Due | (150,340) |
| Less: Other | 0 |
| TOTAL Ineligibles | (427,077) |
| | |
| Eligible A/R | 4,629,529 |
| Advance Rate | 50.0% |
| AVAILABLE SERVICE CONTRACT A/R | 2,314,765 |
| | |
| TOTAL A/R | 15,229,101 |

| | |
|---|---|
| **EXHIBIT C** | |
| **Inventory Section:** | April-2004 |
| | |
| Total Raw Materials & WIP | 5,646,234 |
| Less Raw Materials (mfg 068 & 068R) | (2,654,056) |
| Total WIP | 2,992,178 |
| Less Ineligibles (mfg 068 & 068R) | (200,450) |
| Eligible WIP | 2,791,728 |
| Allowance Percentage | 60.00% |
| Available WIP | 1,675,037 |
| | |
| Total Finished Goods | 18,977,535 |

A528

08/18/2004 09:06 FAX 518 257 8539          KEY ASSET RECVY ALANY                    ☒004
     JUN-17-2004  12:32        AB DICK                                                    P.04

A. B. Dick Company
KeyBank Borrowing Base Certificate
- Summary of Eligible Accounts

| | ABDC & Multi 6/16/2004 |
|---|---|
| Add LIFO & Depreciation Reserve | 0 |
| FIFO Finished Goods | 19,977,535 |
| Less Reserves | (7,260,243) |
| Total Eligible Finished Goods | 12,717,292 |
| Less Audit Adjusted Depr | (405,000) |
| Less House Demo | (694,571) |
| Less Field Demo | (300,559) |
| Less Ineligible Consigned | (49,864) |
| Less Ineligible Defect | (11,835) |
| Less Ineligible Other | (1,627) |
| Total Ineligible Adjustments | (1,463,256) |
| | |
| Net Eligible Finished Goods | 11,254,036 |
| Allowance Percentage | 60.00% |
| Available Finished Goods | 6,752,422 |
| | |
| 60% of House Demo | 416,743 |
| 10% of Field Inventory | 30,056 |
| Total Available Finished Goods | 7,199,220 |
| | |
| TOTAL BORROWING BASE INVENTORY | 8,874,257 |

**Beginning Loan Balance:**

| | |
|---|---|
| Carry-forward Balance 6-11-04 | 23,440,691.06 |
| | |
| 6/07/04 - Lockbox Collections | (509,335.35) |
| 6/07/04 - Borrowing Request | 509,967.90 |
| 6/08/04 - Lockbox Collections | (349,986.72) |
| 6/08/04 - Borrowing Request | 222,152.77 |
| 6/09/04 - Lockbox Collections | (361,174.94) |
| 6/09/04 - Borrowing Request | 338,911.44 |
| 6/10/04 - Lockbox Collections | (350,557.76) |
| 6/10/04 - Borrowing Request | 233,418.13 |
| 6/11/04 - Lockbox Collections | (306,300.02) |
| 6/11/04 - Borrowing Request | 293,110.35 |
| 6/14/04 - Lockbox Collections | (394,011.78) |
| 6/14/04 - Borrowing Request | 291,680.58 |
| 6/15/04 - Lockbox Collections | (723,265.08) |
| 6/15/04 - Borrowing Request | 215,730.67 |
| 6/16/04 - Lockbox Collections | (697,349.13) |
| 6/16/04 - Borrowing Request | 317,612.71 |
| | |
| Total | 22,172,314.83 |

**Reserve For Letters of Credit:**

| | |
|---|---|
| Konica Corporation | 0 |
| Ryobi Limited | 0 |
| Watkiss Automation Limited | 0 |
| Iwatsu Electric Company | 54,103 |
| | |
| Bartram Coltman    (02/12/xx) | 0 |
| Liberty Mutual | 0 |
| Agfa | 0 |
| Manufacturers Bank | 0 |
| Total | 54,103 |

| | |
|---|---|
| Available Collateral to Borrow Against | 21,725,959 |
| Line of Credit Cap | 26,500,000 |
| | |
| Less:  Reserve for Letters of Credit | (54,103) |
| Total Available (Lesser of Avail Collat. Cap - Reserve) | 21,671,856 |
| Loan Balance | (22,172,315) |
| Net Availability | (500,459) |

### A B DICK COMPANY
### AGING WITH SERVICE CONTRACTS BROKEN OUT
### AGING AS OF 6/16/04

**Sales**

| TOTAL | CURRENT | 1 - 30 | 31 - 60 | 61 - 90 | 91 - 120 | 121 + |
|---|---|---|---|---|---|---|
| 10,964,582.56 | 8,631,086.08 | 3,182,893.28 | 1,192,708.50 | 59,245.44 | (245,566.76) | (1,855,794.98) |
| 3,207,911.86 | (250,511.58) | 549,697.00 | 250,026.96 | 404,491.15 | 358,450.52 | 1,895,757.81 |
| 14,172,494.42 | 8,380,574.50 | 3,732,590.28 | 1,442,735.46 | 463,736.59 | 112,893.76 | 39,962.83 |

**Service**

| TOTAL | CURRENT | 1 - 30 | 31 - 60 | 61 - 90 | 91 - 120 | 121 + |
|---|---|---|---|---|---|---|
| 4,872,207.90 | 2,155,315.20 | 2,547,039.73 | 92,917.83 | 158,857.42 | (11,715.11) | (70,207.17) |
| 184,398.76 | (9,244.58) | 22,320.10 | 27,293.87 | 22,704.30 | 25,350.70 | 95,974.37 |
| 5,056,606.66 | 2,146,070.62 | 2,569,359.83 | 120,211.70 | 181,561.72 | 13,635.59 | 25,767.20 |

**Total**

| TOTAL | CURRENT | 1 - 30 | 31 - 60 | 61 - 90 | 91 - 120 | 121 + |
|---|---|---|---|---|---|---|
| 15,836,790.46 | 10,786,401.28 | 5,729,933.01 | 1,285,627.33 | 218,102.86 | (257,271.87) | (1,926,002.15) |
| 3,392,310.62 | (259,756.16) | 572,017.10 | 277,320.83 | 427,195.45 | 383,801.22 | 1,991,732.18 |
| 19,229,101.08 | 10,526,645.12 | 6,301,950.11 | 1,562,948.16 | 645,298.31 | 126,529.35 | 65,730.03 |

# EXHIBIT SS

115

1    Goldstein.

2            MS. KOWALCZYK:  I have no further

3        questions.  Thank you.

4            EXAMINATION OF JAMES W. WERT

5    BY MR. CROUCH:

6        Q    Mr. Wert, my name is Ron Crouch.  I'm a

7    lawyer representing the Official Committee of

8    Unsecured Creditors and I've got some questions for

9    you.

10            Prior to today the parties have taken

11   the depositions of several PressTek representatives,

12   and they have testified that prior to the June 17th

13   meeting with KeyBank, that they had no knowledge of

14   the dire cash and liquidity situation of AB Dick.

15   My question for you is:  Do you have any personal

16   knowledge as to whether or not on June 16th or

17   earlier AB Dick or Paragon had provided information

18   to PressTek regarding AB Dick's liquidity and cash

19   position

20       A    I have knowledge that that was provided,

21   but I did not directly see any of the information

22   that was provided.

23       Q    Can you tell me how you know that that

24   information was provided?

25       A    Because basically our books were open