IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------x
In re                                               :   Chapter 11
                                                    :
A.B. DICK COMPANY, *et al.*,                        :   Case Nos. 04-12002 (CGC)
                                                    :
        Debtors.                                    :   Jointly Administered
                                                    :
----------------------------------------------------x

**MOTION FOR ORDER: (A) AUTHORIZING SALE OF SUBSTANTIALLY ALL OF
THE ASSETS OF A.B. DICK COMPANY AND ITS WHOLLY OWNED
SUBSIDIARIES, FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; (B)
AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED
LEASES AND EXECUTORY CONTRACTS; AND (C) GRANTING RELATED RELIEF**

A.B. Dick Company ("A.B. Dick"), Paragon Corporate Holdings, Inc. ("Paragon"), Multigraphics LLC, and Interactive Media Group, Inc., the debtors and debtors in possession in the above-captioned jointly administered chapter 11 cases (collectively, the "Debtors"), hereby move (the "Motion") this Court, pursuant to sections 105(a), 363(b) and (f), and 365(f) of Title 11 (the "Bankruptcy Code") of the United States Code and Rules 2002(a)(2), (c)(1), (k), and (m), 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an Order: (A) authorizing the sale of substantially all of the assets of A.B. Dick and its wholly owned subsidiaries, free and clear of all liens, claims and encumbrances, to Silver Acquisitions Corp. ("Silver"), or to any other party that submits a higher and better offer (the "Sale"); (B) authorizing the Debtors to assume and assign to Silver certain executory contracts and unexpired leases; and (C) granting related relief. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 provide the statutory bases for the relief sought herein.

## BACKGROUND

2. On July 13, 2004 (the "Petition Date"), the Debtors each filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their businesses and manage their property and assets as debtors in possession. No trustee, examiner or committee of creditors has yet been appointed in these chapter 11 cases.

### Description of the Debtors' Businesses

3. In 1884, Albert Blake Dick, the founder of A.B. Dick, revolutionized document reproduction when he partnered with Thomas Edison to invent the world's first mimeograph. Throughout the 20th century, A.B. Dick continued to grow its printing equipment business by pioneering a series of technological advances, including the development of printers that could reproduce photographs without negatives in the 1960's. In March 2000, A.B. Dick took on its present corporate form and significantly increased its market share when it integrated with Multigraphics Inc., another printing company.

4. A.B. Dick is presently a leading global supplier to the graphic arts and printing industry, manufacturing and marketing equipment and supplies for the global quick print and small commercial printing markets. Its business has three product lines: (a) pre-press, press and other related equipment; (b) supplies; and (c) after-market repair service and replacement parts. A.B. Dick manufactures its own products – sold under the A.B. Dick®, Multigraphics® and Itek Graphix® brand names – and distributes certain products manufactured by third parties. A.B. Dick sells its products and services through a network of branches and independent distributors

in the United States, its subsidiaries in Canada and the United Kingdom, and independent distributors in other countries. Its customers include commercial, in-house and convenience printers, publishing companies, educational institutions and graphic design firms.

5.  A.B. Dick and Interactive Media Group, Inc., corporations organized under the laws of the states of Delaware and Ohio respectively, are wholly owned, direct subsidiaries of Paragon, a privately held holding company incorporated under the laws of the state of Delaware and headquartered in Niles, Illinois. A.B. Dick is the sole member of Multigraphics LLC, a limited liability company organized under the laws of the state of Delaware, and the owner of A.B. Dick Company of Canada, Ltd. and A.B. Dick UK Limited (collectively, the "Foreign Subsidiaries"). Together with the Foreign Subsidiaries, the Debtors – who employ approximately 700 employees in their operations – collectively provide a full range of high quality prepress, press and post-press equipment, supplies and technical services to a broad national and international customer base.

### Events Leading to the Chapter 11 Filing

6.  In recent years, the Debtors began to experience weakened sales reflecting, in part, the impact of changing technologies in their industry that reduced demand for Debtors' products. This decline in sales was exacerbated by the effects of September 11, 2001 and the subsequent worldwide economic recession.

7.  In the months preceding the commencement of the Debtors' chapter 11 cases, Debtors' management evaluated the Debtors' financial situation and determined that the value of the Debtors' businesses would be maximized if certain of the Debtors' businesses were sold on a going concern basis. In late 2003, the Debtors entered into negotiations for a going concern sale of certain of their businesses with Presstek, Inc. ("Presstek"), another manufacturer of printing equipment. During the course of these negotiations, the Debtors' financial condition continued to deteriorate such that immediately prior to the Petition Date the Debtors found themselves struggling to pay suppliers and meet payroll.

8.  Shortly before the Petition Date, Presstek, Silver Acquisitions Corp. ("Silver") and the Debtors entered into an Asset Purchase Agreement, pursuant to which the Debtors agreed, among other things, to the commencement of cases under chapter 11 of the Bankruptcy Code to effectuate a sale to Silver of substantially all of the assets of A.B. Dick and its wholly owned subsidiaries on a going concern basis, free and clear of liens, claims and encumbrances pursuant to section 363 of the Bankruptcy Code.

### Summary of the Terms of the Proposed Sale

9.  The Debtors have determined that, in light of existing limitations on available funding for the Debtors' operations and the probable value that would be attained were the Debtors' assets to be liquidated on a piecemeal basis, that the best interests of the Debtors' creditors, customers and employees will be served by the expedient marketing and sale of the businesses and assets of A.B. Dick and its wholly owned subsidiaries (the "Assets") on a going concern basis to the purchaser making the highest and best offer.

10. Silver (an entity owned by Presstek) and the Debtors have negotiated the terms of an Asset Purchase Agreement (the "APA," a copy of which is annexed hereto, without attachments, as Exhibit A), pursuant to which the Debtors propose to sell the Assets to Silver for $40 million (the "Purchase Price") pursuant to sections 363(b) and (f) of the Bankruptcy Code, free and clear of any interest, lien, claim, encumbrance or security interest of any other party, including but not limited to any administrative expense or priority claim asserted in the Debtors' chapter 11 cases. In addition, the Debtors will also assume and assign to Silver certain of their unexpired leases and executory contracts in accordance with section 365 of the Bankruptcy Code (collectively, the "Assigned Contracts and Leases," and, individually, an "Assigned Contract" or an "Assigned Lease").

11. The APA also provides for the sale of substantial assets of A.B. Dick's Canadian subsidiary, as well as A.B. Dick's stock in its British subsidiary, A.B. Dick UK Limited. Neither of those Foreign Subsidiaries are debtors in possession in these chapter 11 cases. Thus, the

Debtors do not seek any bankruptcy protections from the Court (*e.g.*, a sale free and clear of liens) with respect to the sale of the Foreign Subsidiaries' assets or stock, as applicable.

12.   Contemporaneously herewith, the Debtors have filed a motion (the "Sales Procedures Motion") for entry of an order approving auction bidding and other procedures with respect to the proposed sale of the Assets (the "Bidding Procedures"). Among other things, the Bidding Procedures require potential bidders for the Assets to demonstrate the financial wherewithal to consummate the Sale and make a 10% cash deposit (such bidders, as defined more fully in the Bidding Procedures, being "Qualified Bidders"). If any Qualified Bidder(s) emerge, the Debtors would conduct an auction of the Assets, thereafter seeking Court approval of the highest and best bid, if any.

13.   As an incentive to Silver to undertake the costly due diligence necessary to pursue a $40 million transaction, the Bidding Procedures also require the Debtors (or Key, if it successfully credit bids for the Assets) to pay Silver a $1,200,000 break-up fee (the "Break-Up Fee")[1] and reimburse Silver's expenses up to $500,000 if Silver is outbid (or if the Debtors opt to withdraw this Motion and prosecute a plan of reorganization).

### RELIEF REQUESTED AND REASONS THEREFOR

#### Authorization of the Sale Out of the Ordinary Course of the Debtors' Businesses Pursuant to Bankruptcy Code Section 363(b)

14.   Pursuant to Bankruptcy Code sections 363(b) and (f), the Debtors seek authority to sell the Assets to Silver (or the highest and best bidder), free and clear of all liens, claims and encumbrances. Although section 363 of the Bankruptcy Code does not provide an express standard for determining whether the court should approve any particular proposed use, sale, or lease of estate property, case law consistently applies an "articulated business judgment" standard.[2]

---

[1]   Denominated a "Termination Fee" in the APA.

[2]   *See, e.g., Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986); accord *Stephens Indus., Inc. v. McClung (In re McClung)*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir.

15. Additionally, under section 363 of the Bankruptcy Code, a court is not allowed to substitute its business judgment for that of the debtor.[3] Rather, the court is required to ascertain whether the debtor itself has articulated a valid business justification for the proposed transaction.[4] This is consistent with the "broad authority to operate the business of a debtor . . . [which] indicates congressional intent to limit court involvement in business decisions by a trustee . . . . [so that] a court may not interfere with a reasonable business decision made in good faith by a trustee."[5]

16. The Court's power to authorize a sale under section 363(b) of the Bankruptcy Code is to be exercised at its discretion, utilizing a flexible, case-by-case approach.[6] The key consideration is the Court's finding that a good business reason exists for the sale.[7]

> [T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business . . . . Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in *Lionel*, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the assets of the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value.

---

1983); *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991); *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Channel One Communications, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D.Utah 1981).

[3] *See, e.g., In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 678 (Bankr. S.D.N.Y. 1989); *In re Highway Equip. Co.*, 61 B.R. 58, 60 (Bankr. S.D. Ohio 1986).

[4] *See, e.g., Lewis v. Anderson*, 615 F.2d 778, 781 (9th Cir. 1979).

[5] *In re Airlift Int'l, Inc.*, 18 B.R. 787, 789 (Bankr. S.D. Fla. 1982).

[6] *See In re Baldwin United Corp.*, 43 B.R. 905 (Bankr. S.D. Ohio 1984).

[7] *See Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986).

> This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.[8]

17. Here, sound business justifications support this Court's approval of the proposed sale of the Assets. The Debtors believe the proposed Sale will maximize the value of the Assets for the benefit of their estates. Moreover, the Debtors believe that a going concern sale of the Assets will generate greater value to their estates than will be received in a piecemeal liquidation. Significantly, the $40 million Purchase Price exceeds the approximately $25 million of senior debt secured by the Assets. Maximization of asset value is a sound business purpose, warranting authorization of the sale of the Assets.

18. Generally, to obtain approval of a proposed sale of assets, a debtor must demonstrate that the "proffered purchase price is the highest and best offer" under the circumstances of the case.[9] In this instance, the Bidding Procedures contemplate that following the Debtors' marketing efforts, the Assets will be submitted to an auction process to ensure that the best possible price is obtained. An auction is sufficient to establish that one has paid "value" for assets of a bankruptcy estate, where the auction sale has itself been conducted in good faith.[10] Moreover, the opportunity for competitive bidding provides assurance that the Debtors are receiving the highest and best offer for the Assets under the circumstances of their chapter 11 cases.

---

[8] *In re Walter*, 83 B.R. 14, 19-20 (9th Cir. BAP 1988), citing *In re Lionel Corporation*, 722 F.2d 1063, 1070-71 (2nd Cir. 1983).

[9] *In re Integrated Resources Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y.), aff'd 147 B.R. 650 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2nd Cir. 1993); *In re Atlanta Packaging Products, Inc.* 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988) (debtor's duty with respect to sales is to obtain the highest price or greatest overall benefit for the estate); *In re Wilson Freight Co.*, 30 B.R. 971, 975 (Bankr. S.D.N.Y. 1983) (debtor's paramount duty in connection with a sale is to obtain the best price).

[10] See *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986). Moreover, the Sixth Circuit has indicated that a party would need to show fraud or collusion between the Purchaser, the other bidders and the debtor in order to demonstrate a lack of good faith. *Richards v. Swinebroad and Denton Auctioneers*, No. 84-5896, 1985 WL 13526, at *3 n.2 (6th Cir. July 3, 1985). The Debtors submit that any asset purchase agreement entered into as a result of the Bidding procedures will be an arms-length, negotiated transaction and thus entitled to the protections of section 363(m) of the Bankruptcy Code.

### Authorization of the Sale Free and Clear of Liens, Claims and Encumbrances Pursuant to Bankruptcy Code Section 363(f)

19. The Debtors seek an Order authorizing the Sale free and clear of all liens, claims and encumbrances in accordance with section 363(f) of the Bankruptcy Code. Under section 363(f), a debtor may sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if any of the following conditions are satisfied:

> i. applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> ii. such entity consents;
>
> iii. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> iv. such interest is in bona fide dispute; or
>
> v. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.[11]

20. Here, sections 363(f)(2) is satisfied with respect to the liens of KeyBank National Association ("Key"), the Debtors' senior prepetition secured lender, because Key has consented to the Sale free and clear. Section 363(f)(5) is satisfied with respect to any other liens, claims, encumbrances or security interests asserted against the Assets because they are capable of being satisfied by money, and will attach to the proceeds of the Sale in the same order of priority as existed on the Petition Date. Further, the Debtors believe that the Bidding Procedures will generate proceeds in excess of the aggregate value of all liens on the Assets, thus satisfying section 363(f)(3) with respect to all such liens. Accordingly, as at least one of the disjunctive provisions of Bankruptcy Code section 363(f) is satisfied with respect to the various interests in the Assets, the Assets can be sold free and clear of liens, claims, encumbrances and interests under section 363(f) of the Bankruptcy Code, with the liens and claims of any entity claiming an

---

[11] *See* 11 U.S.C. §363(f).

interest therein attaching to the Sale proceeds with the same validity and priority as existed on the Petition Date pursuant to section 363(e) of the Bankruptcy Code.

### Determination of Purchaser as Good Faith Purchaser
### Pursuant to Bankruptcy Code Section 363(m)

21. When a bankruptcy court authorizes a sale of assets pursuant to section 363(b), it is required to make a finding with respect to the "good faith" of the purchaser.[12] The purpose of that requirement is to facilitate the operation of section 363(m) of the Bankruptcy Code, which provides a safe harbor for purchasers of a debtor's property when the purchase is made in "good faith."

22. The Debtors submit that Silver constitutes a good faith purchaser under section 363(m). The negotiations between the Debtors and Silver were at all times conducted at arms-length and in good faith. Silver is not an insider or affiliate of the Debtors (although the APA permits Silver to continue to employ some or all of the Debtors' management at Silver's discretion). Moreover, throughout the negotiations, the Debtors have worked diligently to maximize value to the estates. Accordingly, the Debtors respectfully request that the Court enter a finding that Silver is a good faith purchaser within the purview of Bankruptcy Code section 363(m).

23. Additionally, the process of marketing and selling the Assets is designed to ensure a good faith sale thereof to any purchaser other than Silver. The Assets will be extensively marketed by the Debtors and Candlewood in accordance with the Bidding Procedures. Among other things, the Bidding Procedures provide for a fair auction process (if a bidder other than Silver meets certain financial and other qualifications) that will ensure an arms-length, good faith sale. The Bidding Procedures, moreover, are designed with the intent of encouraging competitive bidding, thereby maximizing value. Accordingly, the Debtors respectfully request that, if the Court approves the sale of the Assets as requested, it make a determination that the

---

[12] *See Abbots Dairies*, 788 F.2d at 149-50.

purchaser is a good faith purchaser within the purview of section 363(m) of the Bankruptcy Code.

### Authorization of the Assumption and Assignment of the Assigned Leases and Contracts pursuant to Bankruptcy Code Section 365

24. The Debtors seek authorization to assume and assign the Assigned Contracts and Leases to Silver (or the highest and best offeror) pursuant to section 365(a) of the Bankruptcy Code.

25. Under section 365(a), a debtor may assume and assign executory contracts or unexpired leases if assumption and assignment reflects the debtor's sound business judgment.[13] The Bankruptcy Code, however, provides little guidance as to the standards to be applied by a court in approving an assumption or rejection. Drawing on law predating the enactment of the Bankruptcy Code, the predominant test is described as the business judgment rule or business judgment test.[14] The business judgment test is the same test applied to judicial review of corporate decisions outside bankruptcy.[15] This test analyzes the impact that continued performance under the executory contract or unexpired lease will have on the estate. Assumption or rejection of the contract or lease will be approved upon a mere showing that the action will benefit the estate.[16]

26. In addition to the business judgment test, section 365(b)(1) of the Bankruptcy Code further provides that a debtor may not assume an executory contract or unexpired lease unless, at the time of assumption, the debtor: (a) cures defaults; (b) compensates the non-debtor

---

[13] *See Sharon Steel Corp. v. National Fuel Gas Dist. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989); *see also In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (standard for assuming or rejecting leases is the business judgment test).

[14] *See In re Kong*, 162 B.R. 86, 94 (Bankr. E.D.N.Y. 1993); *In re Minges*, 602 F.2d 38 (2nd Cir. 1979); *In re Child World*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992); *In re Stable Mews Assocs.*, 41 B.R. 594 (Bankr. S.D.N.Y. 1984).

[15] *See Johnson v. Fairco Corp.*, 61 B.R. 317 (N.D. Ill. 1986).

[16] *See In re Chestnut Ridge Plaza Assocs., L.P.*, 156 B.R. 477 (Bankr. W.D. Pa. 1993) (test is best interest of the estate); *Bezanson v. Metropolitan Ins. & Annuity Co.*, 952 F.2d 1 (1st Cir. Me. 1991), *reh'g, en banc, denied*, 1992 U.S. App. LEXIS 14625 (1st Cir. Jan. 7, 1992), *cert. denied*, 120 L. Ed. 2d 871, 112 S. Ct. 2994 (U.S. 1992); *but see In re Klein Sleep Products, Inc.*, 78 F.3d 18 (2nd Cir. 1996) (assumption should not permitted until confirmation in chapter 11 reorganization context).

AA 10

party to the lease or contract for any actual pecuniary loss resulting from defaults; and (c) provides adequate assurance of future performance.[17]

27. In the present case, the Debtors seek not only to assume the Assigned Contracts and Leases, but also to assign the Assigned Contracts and Leases to Silver or the highest and best bidder. Section 365(f) of the Bankruptcy Code addresses assumption of executory contracts and unexpired leases and provides, in pertinent part:

> (1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection . . . .
>
> (2) The trustee may assign an executory contract or unexpired lease of the debtor only if—
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.[18]

28. As set forth in section 365(f) of the Bankruptcy Code, the assignment of a properly assumed contract or lease is to be permitted by the Court only if the debtor has assumed the contract or lease in compliance with all of the terms of section 365 of the Bankruptcy Code and if the debtor provides the other party to the contract or lease with adequate assurance of future performance by the assignee of the contract or lease.[19]

29. Here, in accordance with the Bidding Procedures, the Debtors will have filed and served a schedule of the Assigned Contracts and Leases on all parties to such agreements as soon as is practicable, and in no event later than ten (10) days prior to the hearing on this Motion (the "Sale Hearing"), which schedule will include the Debtors' calculation of the amount they believe

---

[17] See 11 U.S.C § 365(b)(1).
[18] 11 U.S.C. § 365(f)(1)-(2).
[19] See 11 U.S.C. § 365(f)(2).

must be paid to cure all defaults under each of the Assigned Contracts and Leases (collectively, the "Cure Amounts"). As set forth more specifically in the Bidding Procedures, parties to the Assigned Leases and Contracts who do not object to the Debtors' calculation of Cure Amounts will be bound to accept those calculations.

30. The Debtors have not completed their calculation of the Cure Amounts. However, the Cure Amounts will be calculated and scheduled to include what the Debtors believe are any actual or pecuniary losses from an existing defaults, if any, under the Assigned Contracts and Leases. Consequently, the amounts necessary to pay the Cure Amounts as scheduled or determined by the Court will compensate or provide adequate assurance that the Debtors will compensate the appropriate party for any such actual or pecuniary loss.

31. Any assumption and assignment of an Assigned Contract or Assigned Lease will be subject to any applicable provisions of the Bankruptcy Code. The proposed terms and conditions set forth herein are designed to ensure that the assignees, if any, are financially able and prepared to undertake all of the obligations of the Assigned Contracts or Leases. In addition, the availability of the Sale Hearing gives the Court and other parties in interest an appropriate opportunity to evaluate any assignment issues.

32. The Debtors assert that under the circumstances, the Assigned Contracts and Leases can be properly assumed in compliance with section 365 of the Bankruptcy Code. First, as set forth above, the assumption of the Assigned Contracts and Leases by the Debtors complies with the requirements of section 365 because assumption clearly satisfies the "business judgment test." The Debtors' satisfaction of the business judgment test is demonstrated by the benefit to the Debtors' estates which will accrue as a result of the Debtors' ability to close the Sale on the terms and in the manner provided in the Bidding Procedures and from the savings realized as a result of: (a) the purchaser's assumption of the Debtors' obligations under the Assigned Contracts and Leases; and (b) the avoidance of a potential rejection damages claims and possible administrative expense claims.

33.   Second, all monetary defaults under the Assigned Contracts and Leases will be cured because, at the time of assumption, the Debtors anticipate that funds will be available from the Purchase Price to pay all Cure Amounts owing on the Assigned Contracts and Leases.

34.   Third, given the primary purpose of section 365(f)(2) of the Bankruptcy Code, the Debtors believe that the requirement of adequate assurance of future performance will be easily satisfied.  Adequate assurance of future performance is to be determined on a case by case basis to insure that the other party to the contact or lease gets the benefit of the bargain for which he has contracted.[20]  A landlord or a party to a contract, however, is not entitled to greater rights than are given by the lease or contract.[21]  Specifically, the Bidding Procedures are designed to produce a Sale to a purchaser that will have sufficient financial wherewithal not only to close the Sale, but also to perform all of the Debtors' obligations under each of the Assigned Contracts and Leases.[22]  Under these circumstances, the Debtors submit that the requisite adequate assurances of future performance pursuant to section 365 of the Bankruptcy Code with respect to the potential assumption and assignment of the Assigned Contracts or Leases will be demonstrated at the Sale Hearing.  Accordingly, the Court should authorize the assumption and assignment of the Assigned Contracts and Leases to Silver or the highest and best bidder.

### Waiver of 10-Day Stays of Bankruptcy Rules 6004(g) and 6006(d)

35.   The Debtors request that the Court enter an Order waiving the 10-day stays of Bankruptcy Rules 6004(g) and 6006(d).  In light of the structure afforded by the Bidding Procedures and the opportunity for objections to this Motion prior to the hearing thereon, such waiver is appropriate under the circumstances.

---

[20] See Chera v. 991 Blvd. Realty Corp. (In re National Shoes, Inc.), 20 B.R. 55, 59 (Bankr. S.D.N.Y. 1982).
[21] See In re Lafayette Radio Electronics Corp., 9 B.R. 993 (Bankr. E.D.N.Y. 1981).
[22] See In re Bygaph, 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986) (Congress intended that the words "adequate assurance" be given a practical, pragmatic construction, and is to be determined under the facts of each particular case").

## NOTICE

36. No trustee, examiner, or creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been given to: (a) the United States Trustee for this region; (b) the Debtors' thirty largest unsecured creditors; and (c) KeyBank National Association, agent for the proposed postpetition lenders and prepetition lender. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

37. No prior request for the relief sought in this Motion has been made to this or to any other court.

WHEREFORE, the Debtors respectfully request entry of an Order: (A) authorizing the sale of substantially all of the assets of the Debtors, free and clear of all liens, claims and encumbrances, to Silver, or to any other party that submits a higher and better offer; (B) authorizing the Debtors to assume and assign to Silver the Assigned Leases and Contracts; and (C) granting such other and further relief as the Court deems just and proper.

Dated: Cleveland, Ohio  
July 22, 2004

Respectfully submitted,

/s/ H. Jeffrey Schwartz  
H. Jeffrey Schwartz (OBR #0014307)  
John A. Gleason (OBR #0039150)  
Michael D. Zaverton (OBR #0038597)  
BENESCH, FRIEDLANDER,  
 COPLAN & ARONOFF LLP  
2300 BP Tower  
200 Public Square  
Cleveland, OH 44114-2378  
(216) 363-4500  
(216) 363-4588 (Facsimile)  
jschwartz@bfca.com  
jgleason@bfca.com  
mzaverton@bfca.com  

Proposed Attorneys for A.B. Dick Company, et al.,  
Debtors and Debtors in Possession

and

/s/ Frederick B. Rosner  
Frederick B. Rosner, Esq. (No. 3995)  
JASPAN SCHLESINGER HOFFMAN LLP  
1201 North Orange Street, Suite 1001  
Wilmington, DE 19801  
Telephone: 302-351-8000/8005  
Facsimile: 302-351-8010  
frosner@jshllp-de.com  

Proposed Local Counsel for A.B. Dick Company,  
et al., Debtors and Debtors in Possession

15

AA 15