UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------x
In re                                  :    Chapter 11
                                       :
A.B.DICK COMPANY, et al.,              :    Case No. 04-12002 (CGC)
                                       :
       Debtors.                        :    Jointly Administered
---------------------------------------x    Re: Docket No. 22

## AMENDED ORDER: (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF A.B.DICK COMPANY AND ITS WHOLLY OWNED SUBSIDIARIES; (B) AUTHORIZING PAYMENT OF AN EXPENSE REIMBURSEMENT AND TERMINATION FEE; (C) SETTING SALE HEARING DATE; AND (D) APPROVING FORM OF NOTICE

Upon the Motion (the "Motion") of A.B.Dick Company ("A.B.Dick"), Paragon Corporate Holdings, Inc. ("Paragon"), Multigraphics LLC, and Interactive Media Group, Inc., the debtors and debtors in possession in the above-captioned jointly administered chapter 11 cases (collectively, the "Debtors") for entry of an order (the "Sale Procedures Order"), pursuant to sections 105(a) and 363 of Title 11 (the "Bankruptcy Code") of the United States Code and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (A) approving bidding and other procedures respecting the sale of substantially all of the assets of A.B.Dick and its wholly owned subsidiaries (the "Sale"); (B) authorizing the Debtors to pay Silver Acquisitions Corp. ("Silver") an expense reimbursement and termination fee under certain terms and conditions set forth more particularly below; (C) scheduling a date for the hearing on approval of the proposed Sale (the "Sale Hearing"); and (D) approving the form of notice fixing the manner and extent of the Sale (the "Sale Hearing Notice")[1]; and upon the Objections and Supplemental Objections filed by the Official Committee of Unsecured Creditors (the

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

"Committee") and MHR Capital Partners LP, et al. ("MHR"), and the Brief of KeyBank and the Response of Presstek, Inc. in support of the Motion; and having heard the evidence adduced at the hearing and statements of counsel for the Debtor and the statements of other parties in interest who appeared, the Court finds:

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue of the Debtors' Chapter 11 cases and this Motion are proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  Notice of the Motion was sufficient under applicable law and rules of the Court and appropriate under the circumstances.

3.  Approval of the Bidding Procedures as requested in the Motion and as modified herein is in the best interest of the Debtors' estates because, among other reasons, the Bidding Procedures will facilitate orderly marketing and bidding for the Assets and will thereby maximize the value of the Assets and recoveries to the Debtors' creditors.

4.  Counsel for the Debtors has represented that the Termination Fee and Expense Reimbursement are the products of extended good faith, arm's-length negotiations between the Debtors and Silver. Counsel for the Debtors has further represented that the Termination Fee and the Expense Reimbursement are fair and reasonable in their respective amounts, and counsel for Silver and Presstek, Inc. has represented that Presstek will guarantee Silver's obligations under the APA. Accordingly, the Court finds that the Termination Fee and the Expense Reimbursement are in the best interests of the estates and may and should be approved as set forth below.

5.  The form of Sale Hearing Notice annexed to the Motion as <u>Exhibit B</u> provides adequate and sufficient notice of the Sale Hearing and the Bidding Procedures and complies with

AA 17

Bankruptcy Rule 2002(a)(2) and other applicable law and Rules of the Court. Accordingly, the Debtors may and should be authorized to distribute the Sale Hearing Notice to all creditors and parties in interest in these chapter 11 cases, the United States Trustee, counsel to any statutory committee(s) appointed in these cases, counsel to the Agent, and all parties the Debtors and/or Candlewood have determined, in their reasonable discretion after consultation with the Committee, MHR and KeyBank, demonstrate an interest in acquiring the Assets and evidence financial capability sufficient to consummate the Sale.

Accordingly, it is hereby **ORDERED THAT**:

1. The Motion is granted;

2. The following bidding and other procedures respecting the Sale, including the terms of the Termination Fee and the Expense Reimbursement (the "Bidding Procedures"), are hereby authorized and approved:

   a. <u>Eligibility of Bidders to Participate in Auction</u>. In order to be eligible to bid for the Assets or otherwise participate in the Auction (defined below), each bidder (other than (i) Silver and (ii) KeyBank who is deemed to be a Qualifying Bidder (defined below) for the purposes of making a credit bid or otherwise) must be determined by the Debtors, in their reasonable discretion after consultation with the Committee, MHR and KeyBank to be a "Qualifying Bidder" (defined below). The Debtors shall have the right, in their reasonable discretion after consultation with the Committee, MHR and KeyBank, to determine whether a bidder is a Qualifying Bidder (a bid being submitted by a bidder determined by the Debtors to be a Qualifying Bidder and to have otherwise satisfied the requirements of paragraph (b) below being a "Qualifying Bid").

   b. <u>Qualification of Bidders</u>. To be considered for status as a Qualifying Bidder, a bidder (other than Silver and KeyBank) must:

      i. Deliver to counsel for the Debtors, H. Jeffrey Schwartz, Benesch Friedlander Coplan & Aronoff LLP, 2300 BP Tower, 200 Public Square, Cleveland, Ohio 44114, so as to be received by the Debtors' counsel before 5:00 p.m. (Eastern Time) on October 27, 2004 (the "Bid Deadline"), all of the following:

a) A written competing offer to purchase all or a portion of the Assets that (i) states that the bidder offers to purchase all or a portion of the Assets upon the terms and conditions no less favorable than those set forth in the APA or through a merger or alternative structure on such different or additional terms as appropriate and desirable, for such transaction structure (which terms and conditions shall be no less favorable to the Debtors than the terms and conditions contained in the APA); (ii) states that the bidder is prepared to enter into a legally binding purchase and sale agreement for the acquisition of all or a portion of the Assets on terms and conditions no less favorable to the Debtors than the terms and conditions contained in the APA; (iii) states that the bidder is financially capable of consummating a transaction on terms and conditions no less favorable to the Debtors than the terms and conditions contained in the APA; (iv) states that the bidder's offer is irrevocable until the earlier of the closing of the sale of all or a portion of the Assets or thirty days following the conclusion of the Auction; and (v) is likely to result in a value to the Debtors that is at least $41,200,000 (the "Initial Minimum Overbid Amount"); and

b) Evidence that the bidder has received debt and/or equity funding commitments sufficient in the aggregate to finance the purchase of the assets proposed to be acquired, which evidence may include, without limitation, evidence of sources of equity or debt financing for payment of the purchase price, copies of commitment letters, and the identity of contact persons at the financing institutions issuing such commitment letters; and

ii. Before the Bid Deadline (with the exception of credit bids), pay an earnest money deposit in the amount of 5% of the gross amount of the purchase price set forth in the bid (a "Qualified Bidder Deposit") by cashier's or certified check (made payable to the Debtors) or wire transfer of immediately available funds, which deposit shall be held by an escrow agent selected by the Debtors in accordance with the terms of an escrow agreement to be provided by the Debtors. A Qualified Bidder Deposit will be refunded only if the bid corresponding with the Qualified Bidder Deposit is not approved by the Court. The Debtors reserve the right to hold each Qualified Bidder Deposit (including Silver's Deposit) until five days after the closing of the Sale of the Assets.

AA 19

c. <u>Access to Debtors' Books and Records; Execution of Confidentiality Agreement</u>. All potential bidders shall be required to submit any requests for information with respect to the Debtors' businesses or Assets or requests for access to the Debtors' employees, management or officers and directors to discuss the Debtors' businesses or Assets directly to Candlewood, and in no event shall any bidders be granted any such access other than by means of access through Candlewood. From the date of the approval of the Bidding Procedures Order, (i) if the Debtors supply any information regarding the Debtors' business to a potential bidder not previously given to Silver, the Debtors shall further provide Silver, the Committee, MHR and KeyBank, and all other Qualifying Bidders, with a copy of such information within 24 hours of providing that information to any other potential bidder; and (ii) with respect to any bid, term sheet, or expression of interest by any other party for any of the Assets, or any other reorganization proposal, submitted prior to the Bid Deadline, the Debtors shall provide Silver, the Committee, MHR, KeyBank and all Qualifying Bidders with prompt notice of such proposal and a copy of such proposal within 24 hours of the Debtors' receipt thereof. Further, as a condition precedent to being provided access to the Debtors' books, records and executives, all bidders must (a) be determined by the Debtors to have satisfied the requirements of paragraph (b)(i)(b) above and (b) execute a confidentiality agreement in form reasonably acceptable to the Debtors. Bidders who satisfy the foregoing requirements will be given reasonable access to the Debtors' books, records and executives before the Auction.

d. <u>Terms of Auction</u>. In the event that one or more Qualifying Bids are submitted in accordance with paragraph (b) above, the Debtors will conduct an auction sale of the Assets (the "Auction") on the following terms:

   i. <u>Time, Date and Location of Auction; Adjournment of Auction; Appearance of Qualifying Bidders at Auction</u>. The Auction will be held at the offices of Benesch Friedlander Coplan & Aronoff LLP, 2300 BP Tower, 200 Public Square, Cleveland, Ohio 44114, or such other location as may be designated by the Debtors, on **Friday, October 29, 2004 at 10:00 a.m. (prevailing time)** or such later date as the Debtors may determine. The Debtors may continue or adjourn the Auction from time to time without further notice in their reasonable discretion, after consultation with the Committee, MHR and KeyBank. For a Qualifying Bid to be considered, the corresponding Qualifying Bidder must appear in person at the Auction unless alternative arrangements are agreed upon in advance with the Debtors. The Debtors, the Committee, MHR, KeyBank, all Qualifying Bidders and such other parties authorized by the Debtors, after consultation with the Committee, MHR and KeyBank, shall be entitled to attend the Auction.

5

    ii. <u>Auction Bid Submission Procedures</u>. If one or more Qualifying Bids are received by the Debtors, each such Qualifying Bidder, Silver and KeyBank shall have the right to improve their respective bids at the Auction. Bidding will commence with the announcement of the highest Qualifying Bid and will continue in bidding increments of not less than $200,000.

    iii. <u>Irrevocability of Bids; Rejection of Bids</u>. All Qualifying Bids, including the Silver APA (notwithstanding any contrary provision therein), and successive bids at the Auction shall be irrevocable until the earlier of the closing of the Sale of the Assets or thirty days following the conclusion of the Auction. Formal rejection by the Debtors of a Qualifying Bid or any successive bid thereto will not be deemed to have occurred unless and until (a) the Debtors expressly reject such bid or (b) the Sale of the Assets to the bidder submitting the Prevailing Bid (defined below) is finally consummated.

    iv. <u>Selection of Prevailing Bid</u>. At the conclusion of the Auction, the Debtors, after consultation with the Committee, MHR and KeyBank, will determine and announce the highest and best bid submitted at the Auction (the "Prevailing Bid," and the entity submitting such Prevailing Bid being the "Prevailing Bidder"). Within one (1) day following the conclusion of the Auction, unless and to the extent otherwise agreed by the Debtors after consultation with the Committee, MHR and KeyBank, the Prevailing Bidder shall complete and execute an asset purchase agreement upon terms and conditions no less favorable than those set forth in the APA, and in form and substance reasonably acceptable to the Debtors after consultation with the Committee, MHR and KeyBank, memorializing, among other things, the amount of the Prevailing Bid (a "Prevailing Bidder APA").

e. <u>Terms of Termination Fee</u>. In the event that (i) the APA terminates because the Debtors have accepted or selected, and the Bankruptcy Court has approved, the bid or bids (including a credit bid) of any bidder(s) other than Silver or any of its affiliates to purchase all or any portion of the Debtors' businesses or Assets, and such transaction or transactions contemplated by any such bid or bids has been consummated, or (ii) the Debtors withdraw their support for the transactions contemplated by the APA and seek to have a stand-alone plan of reorganization confirmed by the Court, the Debtors will be obliged to pay Silver $1,000,000, inclusive of the Expense Reimbursement (the "Termination Fee"), in accordance with the terms of the APA, provided, however, that Silver shall not be entitled to the Termination Fee if Silver is in default of the APA or if a

AA 21

Sale or Plan is consummated more than six (6) months after the termination of the APA. The Debtors' obligation to pay the Termination Fee shall be given administrative expense priority pursuant to Bankruptcy Code section 507(a)(1).

f.  **Inclusion of Termination Fee in Initial Minimum Overbid Amount.** The Termination Fee shall be deemed to be included in the stated amount of any bid equal to or greater than the Initial Minimum Overbid Amount.

g.  **Sale Hearing.** The Sale Hearing will be held on **November 2, 2004, or at such other date and time scheduled by the Court**, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Third Floor, Wilmington, Delaware. At the Sale Hearing, the Debtors will seek the entry of an order (the "Sale Order") approving and authorizing the proposed Sale to Silver or the Prevailing Bidder, if any. The Sale Hearing may be adjourned or rescheduled without notice other than by announcement of the adjourned date at the Sale Hearing.

h.  **Closing.** The closing of the Sale of the Assets will occur in accordance with the terms of the APA, the Prevailing Bidder APA, or the asset purchase agreement of the entity otherwise authorized by the Court to purchase the Assets, as applicable.

i.  **Failure of Prevailing Bidder to Consummate Purchase; Designation of Backup Bidder.** If for any reason the Prevailing Bidder fails to consummate its purchase of the Assets, the Debtors may deem the bidder of the second highest and best bid for the Assets (such bidder being the "Backup Bidder," with such bid being the "Backup Bid") to have submitted the Prevailing Bid. If the Debtors so designate a bidder as a Backup Bidder, such Backup Bidder shall be required to complete and execute an asset purchase agreement with terms and conditions no less favorable than those set forth in the APA, and in form and substance reasonably acceptable to the Debtors memorializing, among other things, the amount of the Backup Bid (a "Backup Bidder APA"). If the failure by the Prevailing Bidder to consummate the purchase is the result of such Prevailing Bidder's breach of, or default or failure to perform under, the Prevailing Bidder APA or the terms of these Bidding Procedures (such bidder being a "Defaulting Bidder"), such Defaulting Bidder's Qualified Bidder Deposit shall be forfeited to the Debtors.

j.  **Determination of Cure Amounts under Assigned Leases and Contracts.** Within fifteen (15) days after the Debtors have provided Silver certain requested information with respect to their Leases and Contracts, Silver shall advise the Debtors which Leases and Contracts it will request the Debtors to assume and assign pursuant to the APA. The Debtors shall file and serve a schedule of such Assigned Leases and Contracts on all parties

to such agreements as soon as is practicable, and in no event later than October 1, 2004, which schedule shall include the Debtors' calculation of the amount they believe must be paid to cure all defaults under each of the Assigned Leases and Contracts (collectively, the "Cure Amounts"). ANY NON-DEBTOR PARTY TO AN ASSIGNED LEASE OR ASSIGNED CONTRACT WHO DISPUTES SUCH CALCULATION MUST (i) FILE WITH THE COURT A WRITTEN CLAIM ASSERTING A CURE CLAIM THAT IS DIFFERENT FROM THE RESPECTIVE CURE AMOUNT ON OR BEFORE ANY BAR DATE SET BY THE COURT FOR THE FILING OF SUCH CLAIMS; AND (ii) FILE WITH THE COURT AND SERVE UPON COUNSEL FOR THE DEBTORS, H. JEFFREY SCHWARTZ, ESQ., BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP, 2300 BP TOWER, 200 PUBLIC SQUARE, CLEVELAND, OHIO 44114, AN OBJECTION TO ITS SCHEDULED CURE AMOUNT ON OR BEFORE OCTOBER 25, 2004. ANY NON-DEBTOR PARTY TO AN ASSIGNED LEASE OR ASSIGNED CONTRACT WHO FAILS TO COMPLY WITH THE FOREGOING REQUIREMENTS SHALL BE FOREVER BARRED FROM (i) OBJECTING TO THE CURE AMOUNT APPLICABLE TO THAT PARTY'S ASSIGNED LEASE OR ASSIGNED CONTRACT AND (ii) ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO THAT PARTY'S ASSIGNED LEASE OR ASSIGNED CONTRACT. If an objection to a scheduled Cure Amount is filed in accordance with this paragraph, the Court will hear that objection at the Sale Hearing.

k. <u>Reservation of Rights: Deadline Extensions</u>. The Debtors shall be deemed to have reserved their rights, after consultation with the Committee, MHR and KeyBank to: (i) cancel the Auction; (ii) extend the Bid Deadline; (iii) impose such other and additional terms and conditions or modify the terms and conditions hereof as the Debtors determine to be in their best interests and (iv) reject all Qualifying Bids if, in the Debtors' reasonable judgment after consultation with the Committee, MHR and KeyBank, no Qualifying Bid is in the best interests of the Debtors' estates.

l. <u>Sale of Assets "As Is"</u>. All of the Assets shall be transferred "as is." THE DEBTORS SHALL BE DEEMED TO HAVE EXPRESSLY DISCLAIMED ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND MAKE NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE NATURE, QUALITY, VALUE OR CONDITION OF ANY ASSET.

3. The form of Sale Hearing Notice annexed to the Motion as <u>Exhibit B</u> is hereby approved and the Debtors are authorized to distribute a copy of the Sale Hearing Notice to (i) all creditors and parties in interest in these chapter 11 cases, (ii) the United States Trustee, (iii)

counsel to the Committee, (iv) counsel to the Agent, (v) counsel to MHR, (vi) all parties that received offering materials from Candlewood and/or the Debtors and (vii) all parties that previously demonstrated an interest in acquiring the Assets. The Debtors shall serve the Sale Hearing Notice on such parties within two business days of the entry of this Order. The Debtors shall also publish a summary of the Sale Hearing Notice one time at least thirty-five (35) days prior to the Bid Deadline in (i) The Wall Street Journal (National Edition) and a (ii) trade publication.

4. Nothing contained in this Order shall impair a creditors' right to credit bid pursuant to 11 U.S.C. § 363 (k).

5. To the extent the terms of this Order conflict with the terms of the APA, the terms of this Order shall govern.

Dated: Wilmington, Delaware
       Sept 15, 2004

CHARLES G. CASE, II
UNITED STATES BANKRUPTCY JUDGE

9

AA 24

D. 301

FILED
2004 SEP 16 AM 10: 24
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
 1
 2                  UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
 3
                                          :
 4   IN RE:                               :     Chapter 11
                                          :
 5   A.B. Dick Company, Inc.,             :
                                          :
 6        Debtor(s).                      :     Bankruptcy #04-12002 (CGC)
     ..........................................................
 7
                              Wilmington, DE
 8                            August 23, 2004
                                 9:30 a.m.
 9
                     TRANSCRIPT OF EVIDENTIARY HEARING
10             BEFORE THE HONORABLE CHARLES G. CASE, II
                     UNITED STATES BANKRUPTCY JUDGE
11

12   APPEARANCES:

13   For the Debtor(s):              John A. Gleason, Esq.
                                     Benesch Friedland Coplan
14                                   & Aronoff, LLP
                                     2300 BP Tower
15                                   200 Public Square
                                     Cleveland, OH 44114
16
                                     John F. Stock, Esq.
17                                   Benesch Friedland Coplan
                                     & Aronoff, LLP
18                                   88 E. Broad St.-Ste. 900
                                     Columbus, OH 43215
19
                                     H. Jeffrey Schwartz, Esq.
20                                   Benesch Friedland Coplan
                                     & Aronoff, LLP
21                                   2300 BP Tower
                                     200 Public Square
22                                   Cleveland, OH 44114

23                                   Frederick B. Rosner, Esq.
                                     Jaspan Schlesinger Hoffman, LLP
24                                   1201 North Orange Street-Ste. 1001
                                     Wilmington, DE 19801
25
```

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191

AA 25