# EXHIBIT 14

B127



**PRESSTEK**
A SMARTER WAY TO PRINT

The Boards of Directors
Paragon Corporate Holdings, Inc.
7400 Caldwell Avenue
Niles, Illinois  60714-3806

The Boards of Directors
A.B. Dick Company
7400 Caldwell Avenue
Niles, Illinois  60714-3806

Mark H. Rachesky, MD
President
MHR Fund Management, LLC
40 West 57th Street, Thirty-Third Floor
New York, New York  10019

April 26, 2004

Gentlemen:

    You will recall that I wrote to you on April 16, 2004 setting forth a specific course of action related to the proposed acquisition of A.B. Dick by Presstek. In that letter I specified that the offer would remain open through the close of business of Friday, April 23, 2004, provided that certain additional criteria be met. Three days past that deadline, none of the criteria set forth in my letter have been met and it is evident that neither MHR, Paragon, nor A.B. Dick are interested in pursuing this potential venture any further.

    Therefore, in accordance with the terms as set out in my letter of April 16, 2004, effective immediately, Presstek hereby withdraws any and all offers to purchase the outstanding shares and/or assets of A.B. Dick.

Sincerely,

Edward J. Marino
President and Chief Executive Officer

cc:    Hal Goldstein, MHR Fund Management, LLC
       Moosa E. Moosa, Presstek
       James F. Scafide, Presstek
       John Brim, Hill Street Capital
       John Egan, McDermott, Will and Emery

P - 26044

55 Executive Drive, Hudson, NH 03051-4903 USA
Tel: (603) 595-7000  Fax: (603) 594-8575
www.presstek.com

**CONFIDENTIAL**

**B128**

# EXHIBIT 15



The Boards of Directors
Paragon Corporate Holdings, Inc.
7400 Caldwell Avenue
Niles, Illinois  60714-3806

The Boards of Directors
A.B. Dick Company
7400 Caldwell Avenue
Niles, Illinois  60714-3806

Mark H. Rachesky, MD
President
MHR Fund Management, LLC
40 West 57th Street, Thirty-Third Floor
New York, New York  10019

April 27, 2004

Gentlemen:

Per our previous correspondence, Presstek and MHR Fund Management, LLC ("MHR") have spent a vast amount of time and resources during the last weeks constructing a fair and balanced agreement.

Through this process, Presstek has developed a best and final offer for the acquisition of A.B. Dick. To assure that both parties have the final documents, I have attached them to this note. It is important for you to understand that Presstek is done negotiating. We will discuss process or answer questions so as to achieve execution of the final documents and closure, but we will not entertain discussions related to modifying the terms of the deal. Our requirements and their timelines are as follows:

1. By the close of business on Thursday 29 April 2004 Presstek requires written agreement of the course outlined in this letter and the attached documents from the principles of Paragon and MHR. If this written agreement is not received, Presstek withdraws any and all offers to purchase the outstanding shares or assets of A.B. Dick.
2. By the close of business on Friday 30 April, Presstek must receive from Silver the final Disclosure Schedules.
3. No later than the close of business Friday 7 May 2004 Presstek requires an executable Stock Purchase Agreement as presented in our attached final documents.
4. We will then proceed to complete signature of the final agreements with all schedules in place in time for a close by 31 May 2004.

P - 26216

55 Executive Drive, Hudson, NH  03051-4903 USA
Tel. (603) 595-7000  Fax: (603) 594-8575
www.presstek.com

**CONFIDENTIAL**

# EXHIBIT 16



**From:** Ed Marino
**Sent:** Tuesday, May 4, 2004 1:06 PM
**To:** Steve Rappaport; Dan Ebenstein; Debbie Samataro; Don Waite; Ed Marino; John Dreyer; Larry Howard; Mike Moffitt; Moosa E. Moosa
**Subject:** FW: Silver Update

Dear Fellow Board Members,

This below note went to the Silver Project Team today. Moosa will work on scheduling a Board Meeting to review and approve the deal, since I am heading to Drupa this afternoon. Thank you for your flexibility in this. We need to be very diligent and not let things slip from here.

We will provide a deal overview, financials and schedule at the upcoming Board Meeting. Thank you for all of you support on this.

Ed

Ed Marino
President and CEO
Presstek, Inc.
55 Executive Drive
Hudson, NH, 03051
Tel: 603-595-7000
Fax: 603-595-2602
email: emarino@presstek.com
———Original Message———
**From:** Ed Marino
**Sent:** Tuesday, May 04, 2004 1:02 PM
**To:** Warren Eckstein; Bill Davison; Cathy Cavanna; Dave Menard; Diane Bourque; Ed Ford; Ed Marino; James Aldridge; Jason Tata; Jim Boger; Jim Scafide; John Brim; John Egan; John Steele; Jonathan Paris; Michael McCarthy; Mitch Hara; Moosa E. Moosa; Victor Mendoza
**Subject:** Silver Update

Dear Fellow Team Members,

The Silver deal is at a very advanced point, after much trial and tribulation. We have agreement from the two major stakeholders around a deal. Many thanks go to all of you who have contributed toward getting us to this point. This deal is complex and has tested us in many ways.

I am heading to the Drupa trade show in Germany until Wednesday evening of next week. My cell phone is the way to reach me, but I may not be as prompt in my response.

As the famous line goes, "It ain't over till it's over", so, we need to be excellent in our follow-through. Moosa and Michael McCarthy are charged with getting the ball across the goal line. This is no time to let off the gas. I will be in daily touch with Moosa and Michael on progress.

Let's bring this one home now!

Ed

Ed Marino
President and CEO
Presstek, Inc.
55 Executive Drive
Hudson, NH, 03051
Tel: 603-595-7000
Fax: 603-595-2602
email: emarino@presstek.com

P - 26979

CONFIDENTIAL

# EXHIBIT 17

From:       Ed Marino
Sent:       Sunday, May 9, 2004 1:56 AM
To:         Steve Rappaport; Dan Ebenstein; Debbie Samataro; Don Waite; Ed Marino; John Dreyer;
            Larry Howard; Mike Moffitt; Moosa E. Moosa

Subject:    Report From Drupa

Dear Fellow Board Members,

Let me give you a quick update on things.

Silver
- The deal has been completed between Presstek, Silver and MHR.
- Unfortunately, now MHR and Silver have issues that they have not resolved. It surrounds fees and other costs attached to closing. While it is not our issue, it is holding up the execution of documents
- We will stay out of this discussion directly, but will try and push the effort along.

Drupa
- The show is a very good one for Presstek both in terms of the response to our products and our sales efforts
- Competitively, the only issue we have faced is that Creo yesterday introduced both a DI plate that they claim is compatible with the QMDI. We have a sample of the material and have tested it. It is a big announcement for them and one that we will have to watch carefully. In this same announcement, they announced a processless CTP plate as well.
- Our new Vector Platesetter that we designed with AB Dick is being very well received and has a number of competitors concerned.

Our team is doing a great job over here and we are very excited about the outcome from this show.

More later.
Ed

Ed Marino
President and CEO
Presstek, Inc.
55 Executive Drive
Hudson, NH, 03051
Tel: 603-595-7000
Fax: 603-595-2602
email: emarino@presstek.com

**CONFIDENTIAL**

P - 27986

# EXHIBIT 18

| From: | Michael McCarthy |
|---|---|
| Sent: | Wednesday, May 19, 2004 6:36 PM |
| To: | Moosa E. Moosa |
| Cc: | Jim Scafide |
| Subject: | input needed |

Moosa, Take a look at this schedule as a discussion point for Ed. We need to slow him down a bit to ensure we get it done right. Jim and I developed the following timeline. Please provide your input to Jim or me. I think Ed should se this and that you need to work him when you are together tomorrow,

**Thursday 5/20:**

- McCarthy and Scafide coordinate with Silver for Brim's phone interviews and site visits to prepare a Fairness Opinion
- Travel arrangements for team
- Coordinate with KPMG and legal people to undertake diligence
- McCarthy to define and coordinate DD schedule with Zaffino
- Final Draft P&S ( excluding disclosure schedules) to Paragon

**Friday 5/21:**

- Integration team reviews roles and responsibilities
- Cary will take MARCOM lead while we are in Chicago
- Brim to do begin Phone interviews with cleared AB Dick execs

**Sunday 5/23**

- DD Team to Chicago for early start on Monday. Plan to be there through late Thursday/ Friday
  - KPMG will also conduct DD in the UK

**Monday 5/24**

- Zaffino clears management team (5/24)
- Due Diligence begins (5/24)
- John Brim in Chicago (5/24-25)

**Thursday 5/27**

- Morning: Brim delivers Fairness Opinion to Board

**Friday 5/28**

- DD wrap up (could be Thursday)
- Board vote (or possibly Tuesday Morning)

**Tuesday 6/1**

- Board Meeting in Morning
- End of day announcement

Note: The final agreement will be provided by Silver when they provide answers and documents to outstanding issues i.e. disclosure schedules, disbursement instructions and other identified issues. Silver can sign anytime. We would sign and announce Tuesday 6/1.

P - 28108

**CONFIDENTIAL**

# EXHIBIT 19

B137

| | |
|---|---|
| **From:** | Jim Scafide |
| **Sent:** | Friday, May 21, 2004 4:56 PM |
| **To:** | 'jfountain@worldnet.att.net'; 'DZagore@ssd.com' |
| **Cc:** | 'FDZaffino@aol.com'; Ed Marino; Moosa E. Moosa; Michael McCarthy |
| **Subject:** | A message from Moosa E. Moosa |

Gentlemen,

Following my conversations today with representatives of Paragon and MHR, I have concluded that we have not made sufficient progress to warrant the commencement of the due diligence process that was scheduled to begin Monday, May 23. Given the failure of advancement of the status of the deal on your side, I am suspending the due diligence activities and will only re-engage the process when the following two conditions are met:

1. Nesco and MHR reach written agreement among themselves as to the details of the proposed transaction; and
2. Nesco and MHR provide written commitment of agreement to the terms of the proposed transaction as are reflected in our most recent version of the agreement that was circulated earlier this week.

Please bear in mind, that Presstek needs to conduct a portion of the updated due diligence and our financial advisors need to complete work on a Fairness Opinion before we can sign the deal. You need to be cognizant of this issues in your planning.  I would like to  mention that we are deeply concerned regarding the unusually lengthy time that this transaction has taken, and the negative effects that this delay may have on our company.

Keep me apprised of any movement that is achieved toward reaching the two conditions. We remain confident of a successful completion.

Thank you,

Moosa E. Moosa

*****************************************************
  This email message and any attachment hereto is subject to attorney-client privilege
and contains confidential information intended only for the person(s) to whom this
message is addressed.  If you have received this message in error, please notify the
sender immediately by telephone or email and destroy the original message without making
a copy. Thank you.


JAMES F. SCAFIDE, ESQ.  (603) 594-8585 ext. 3505
*****************************************************

P - 08078

CONFIDENTIAL

# EXHIBIT 20

| | |
|---|---|
| **From:** | Jim Scafide |
| **Sent:** | Friday, June 4, 2004 4:51 PM |
| **To:** | Zagore, David A. |
| **Subject:** | Available? |

Are you available?

-----Original Message-----
From: Zagore, David A. [mailto:DZagore@ssd.com]
Sent: Friday, June 04, 2004 4:03 PM
To: 'Richard.Pritz@CliffordChance.com'
Cc: hgoldstein@mhrfund.com; John Fountain (jfountain@worldnet.att.net);
FDZaffino@aol.com; jameswert@hotmail.com; Haffke, Christopher W.; Jim
Scafide
Subject: RE: transaction agreement

Richard:

I conveyed your proposal that all expenses plus from the transaction be
scheduled and funded in advance of signing and that $1 million be added to
that estimated expense amount and that all the money be put in an escrow. I
have consulted with Paragon and AB Dick's boards and the proposal has been
unconditionally rejected. There is no money available to prefund expenses
and there is no outside funding source willing to undertake that obligation.

David A. Zagore, Esq.
Partner
Squire, Sanders & Dempsey L.L.P.
4900 Key Tower
127 Public Square
Cleveland, OH 44114-1304
Bus.: 216.479.8610
Fax: 216.479.8780
Cell: 216.374.8730
Home: 440.937.5318
dzagore@ssd.com
www.ssd.com

This e-mail is confidential and is intended only for the named recipient(s)
and may contain information that is privileged, attorney work product or
exempt from disclosure under applicable law. If you have received this
message in error, or are not the named recipient(s), please immediately
notify the sender and delete this e-mail message from your computer. Thank
you.

**CONFIDENTIAL**

P - 30182

**B140**

# EXHIBIT 21

**From:**      Zagore, David A.

**Sent:**      Friday, June 4, 2004 4:03 PM

**To:**        'Richard.Pritz@CliffordChance.com'

**Cc:**        hgoldstein@mhrfund.com; John Fountain (jfountain@worldnet.att.net);
               FDZaffino@aol.com; jameswert@hotmail.com; Haffke, Christopher W.; Jim Scafide

**Subject:**   RE: transaction agreement


Richard:

I conveyed your proposal that all expenses plus from the transaction be
scheduled and funded in advance of signing and that $1 million be added to
that estimated expense amount and that all the money be put in an escrow. I
have consulted with Paragon and AB Dick's boards and the proposal has been
unconditionally rejected. There is no money available to prefund expenses
and there is no outside funding source willing to undertake that obligation.


David A. Zagore, Esq.
Partner
Squire, Sanders & Dempsey L.L.P.
4900 Key Tower
127 Public Square
Cleveland, OH 44114-1304
Bus.: 216.479.8610
Fax: 216.479.8780
Cell: 216.374.8730
Home: 440.937.5318
dzagore@ssd.com
www.ssd.com


This e-mail is confidential and is intended only for the named recipient(s)
and may contain information that is privileged, attorney work product or
exempt from disclosure under applicable law. If you have received this
message in error, or are not the named recipient(s), please immediately
notify the sender and delete this e-mail message from your computer. Thank
you.


CONFIDENTIAL                                                    P - 30179

B142

# EXHIBIT 23


**PRESSTEK**
A SMARTER WAY TO PRINT

June 8, 2004

The Board of Directors
Paragon Corporate Holdings, Inc.
7400 Caldwell Avenue
Niles, Illinois   60714-3806

The Board of Directors
A.B. Dick Company
7400 Caldwell Avenue
Niles, Illinois   60714-3806

Mark H. Rachesky, MD
President
MHR Fund Management, LLC
40 West 57th Street, 33rd Floor
New York, New York   10019

VIA OVERNIGHT DELIVERY AND EMAIL

Gentlemen:

As you are aware, Presstek has spent extensive time and resources during the past year in an
effort to consummate an acquisition of A.B. Dick Company ("ABD").

This process has produced a set of transaction documents which reflect what Presstek believes is
substantial agreement amongst the parties with respect to all material transaction issues. I
believe you are all in receipt of the most recent drafts of these documents.

At a meeting of the Board of Directors of Presstek which occurred today, the Board of Directors
took action to set a deadline 5:00 p.m. on June 16, 2004 for the execution and delivery of the
Stock Purchase Agreement, including all schedules and exhibits thereto as well as the applicable
Ancillary Documents. The Board has further instructed management to discuss process or
answer questions so as to achieve execution of the final documents and closure, but Presstek will
not entertain further discussions related to modifying the terms of the transaction.

In the event that the Stock Purchase Agreement is not executed by all parties at such time, in
accordance with the Board's actions, Presstek's offer will be automatically withdrawn, and we
will devote our time and resources to other ongoing and proposed projects.

P - 30752

55 Executive Drive, Hudson, NH  03051-4903 USA
Tel: (603) 595-7000  Fax: (603) 594-8575
www.presstek.com

CONFIDENTIAL

B144

# EXHIBIT 22

| | |
|---|---|
| **From:** | Zagore, David A. |
| **Sent:** | Monday, June 7, 2004 2:04 PM |
| **To:** | 'Richard.Pritz@CliffordChance.com'; hgoldstein@mhrfund.com |
| **Cc:** | Jim Scafide; 'James Wert'; jfountain@worldnet.att.net; FDZaffino@aol.com |
| **Subject:** | Communications on behalf of Paragon with MHR |

Richard:

Paragon has worked diligently over this past weekend with its vendors and with Presstek to overcome the stated concerns of MHR regarding Paragon's ability to fund its obligations under the Purchase Agreement. In our most recent discussions, the "unfunded" potential liabilities that were raised as an objection to moving forward under the existing agreement with Presstek were (a) the cost of severance and obtaining releases from specified officers and directors, (b) the cost of d&o liability tail insurance, and (c) the transaction costs with investment banks and advisors that exceed $500,000.

In that regard, Presstek has agreed to fund the severance for those officers identified for termination prior to closing (as it has previously indicated it would) and has agreed to remove as a condition precedent the requirement in Section 9.7 that directors and officers execute releases as a condition precedent to closing. Second, d&o tail coverage financing has been arranged from sources other than Paragon and AB Dick. Lastly, Candlewood has agreed to waive its investment banking fee in return for reimbursement of its out of pocket expenses in the amount of $8,000. E&Y's transaction expenses will be approximately $250,000. Squire Sanders has agreed that it will not look to Paragon or AB Dick for any legal fees and expenses that, together with the fees of Candlewood and E&Y, exceed the $500,000 amount set forth in the Transaction Agreement. As a result, there are no longer unfunded expenses of Paragon. In addition, NES' counsel has informed me that NES remains willing to waive any rights it has to receive sales proceeds and that it has agreed to consent as majority shareholder of Paragon to the Presstek transaction.

Presstek has indicated it is prepared to move forward with this transaction on the terms outlined in the last distributed draft. Paragon is also willing to proceed. We urge MHR to immediately consent to the transaction outlined in the purchase agreement. Time is of the essence and Paragon firmly believes that this transaction clearly represents the best opportunity for noteholders to maximize their return from a sale of A.B. Dick. Without your consent, Paragon will have no choice but to proceed with Presstek in a transaction that does not require noteholder consent and that will almost certainly return less value to the MHR and the Majority Noteholders.

If there are specific concerns of MHR that are not addressed above, please let me know as soon as possible.

David A. Zagore, Esq.
Partner
Squire, Sanders & Dempsey L.L.P.
4900 Key Tower
127 Public Square
Cleveland, OH 44114-1304
Bus.: 216.479.8610
Fax: 216.479.8780
Cell: 216.374.8730
Home: 440.937.5318
dzagore@ssd.com
www.ssd.com

This e-mail is confidential and is intended only for the named recipient(s) and may contain information that is privileged, attorney work product or exempt from disclosure under applicable law. If you have received this message in error, or are not the named recipient(s), please immediately notify the sender and delete this e-mail message from your computer. Thank you.

CONFIDENTIAL                                                      P - 30497

**B146**

# EXHIBIT 24

B147

| From: | Richard.Pritz@CliffordChance.com |
|---|---|
| Sent: | Tuesday, June 15, 2004 9:15 PM |
| To: | jgoldsmith@mwe.com; Richard.Pritz@CliffordChance.com |
| Cc: | jparis@mwe.com; Jim Scafide; hgoldstein@mhrfund.com |
| Subject: | Re: Project Silver |

1. I'll send language as soon as possible.

2. If there is any issue, isn't it our problem rather than yours?

3. As in my prior email, "approve" should include an agreement to continue funding.

I'll call as soon as I can.

Richard D. Pritz
Clifford Chance US LLP
+1 212-878-8220

-----Original Message-----
From: jgoldsmith@mwe.com <jgoldsmith@mwe.com>
To: Richard.Pritz@cliffordchance.com <Richard.Pritz@cliffordchance.com>
CC: jparis@mwe.com <jparis@mwe.com>; jscafide@presstek.com
<jscafide@presstek.com>
Sent: Tue Jun 15 20:08:14 2004
Subject: Project Silver

Richard-

Per my voicemail to you earlier, please note the following:

1.  I am unsure of the changes you want in the side letter, as I think the language added last night addresses your concerns.  If you would like us to consider additional changes, please provide a specific markup of the document at your earliest convenience, as we intend to circulate revised drafts later this evening;

2.  Our client is not prepared to delete the Series B language from the Schedule A.  Although I'm certain you understand why, feel free to call me to discuss in greater detail;

3.  We will be revising the Escrow Agreement to reflect that the escrow will be released upon (i) Presstek executing the documents and (ii) the bank approving the transaction.

Please give me a call at your convenience to discuss.

Regards,

Jim     **CONFIDENTIAL**

P - 31996

**B148**

# EXHIBIT 25

| | |
|---|---|
| **From:** | Hal Goldstein |
| **Sent:** | Tuesday, June 15, 2004 9:27 PM |
| **To:** | jgoldsmith@mwe.com; Richard.Pritz@cliffordchance.com |
| **Cc:** | jparis@mwe.com; Jim Scafide |
| **Subject:** | RE: Project Silver |

The agreement was that (a) the parties would sign documents and present them to the bank, and (b) there would be a letter, or some similar document, that would provide that the bank, or some other party, must consent to keep funding till the close (i.e., in excess of $24m, if necessary) or the deal expires w/in 3 – 5 days. In this way PRST would avoid having to announce the deal with the contingency.

As to eliminating the Series B notes language from Schedule 1, please someone explain why PRST would not allow that. i need this so that I can negotiate with Delaware.

Hal Goldstein
MHR Fund Management LLC
40 West 57th Street, 24th Floor
New York, NY 10019
Tel: (212) 262-0005
Fax: (212) 262-9356
email: hgoldstein@mhrfund.com

------Original Message------
From: jgoldsmith@mwe.com [mailto:jgoldsmith@mwe.com]
Sent: Tuesday, June 15, 2004 9:21 PM
To: Richard.Pritz@cliffordchance.com
Cc: hgoldstein@mhrfund.com; jparis@mwe.com; jscafide@presstek.com
Subject: Re: Project Silver

>From my perspective, obtaining the bank's "consent" means they approve of
the transaction contemplated by the Purchase Agreement and the Ancillary
Documents.

What connection does this have with an "agreement to continue funding"?
Are you asking if the "consent" is tantamount to obtaining the bank's
agreement to lead in excess of $24 mil? Can you tell me what you are
getting at?

James H. Goldsmith
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109-1775
(617) 535-4416
(617) 535-3800 (fax)
jgoldsmith@mwe.com

**CONFIDENTIAL**

P - 32008

# EXHIBIT 26

**From:**     Zagore, David A.
**Sent:**     Wednesday, June 16, 2004 2:40 PM
**To:**       'Richard.Pritz@CliffordChance.com'; Jim Scafide
**Subject:**  FW: Receivership Discussions

FYI. Rec'd from Key's counsel.

```
David A. Zagore, Esq.
Partner
Squire, Sanders & Dempsey L.L.P.
4900 Key Tower
127 Public Square
Cleveland, OH 44114-1304
Bus.: 216.479.8610
Fax:  216.479.8780
Cell: 216.374.8730
Home: 440.937.5318
dzagore@ssd.com
www.ssd.com
```

This e-mail is confidential and is intended only for the named recipient(s) and may contain information that is privileged, attorney work product or exempt from disclosure under applicable law. If you have received this message in error, or are not the named recipient (s), please immediately notify the sender and delete this e-mail message from your computer. Thank you.

-----Original Message-----
**From:** Guinn, Guy [mailto:GGuinn@Calfee.com]
**Sent:** Wednesday, June 16, 2004 2:02 PM
**To:** Zagore, David A.
**Cc:** Michael_V_Lugli@KeyBank.com; Lawniczak, James
**Subject:** RE: Receivership Discussions

David:

   To confirm what we discussed earlier today, KeyBank has considered Paragon's request for additional out of formula funding to meet Paragon's additional requirements. At this point in time, it was anticipated that the purchase transaction documentation would have been executed. There also appears to be continuing issues which may produce additional delays.

   As we discussed, KeyBank is currently willing to consider any additional funding only in conjunction with the appointment of a receiver or similar process for A.B. Dick and/or Paragon and A.B. Dick which is acceptable to KeyBank. We are willing to discuss with you and the other persons involved in this transaction how you see this transaction's completion.

   KeyBank is continuing to work toward a receivership or similar process pending such discussions.

                                           Regards,

                                           Guy Guinn

**CONFIDENTIAL**                                           P - 32420

# EXHIBIT 27

B153

Intentionally Blank



## ESCROW AGREEMENT

This Escrow Agreement, dated as of June ___, 2004 (the "Escrow Agreement"), is by and among Presstek, Inc., a Delaware corporation, ("Platinum"), Paragon Corporate Holdings, Inc., a Delaware corporation ("Parent"), A.B. Dick Company, a Delaware corporation and wholly-owned subsidiary of Parent ("Silver"), Silver Acquisitions Corp., a Delaware corporation and wholly owned subsidiary of Platinum ("Purchaser"), N.E.S. Investment Co., a Delaware corporation and the ultimate parent entity of Parent ("Nes") and MHR Capital Partners LP, MHR Institutional Partners LP and MHRM LP (together with MHR Capital Partners LP and MHR Institutional Partners LP, "MHR"). Each of the parties to this Escrow Agreement may be referred to herein as a "Party" or collectively as the "Parties." Capitalized terms used and not otherwise defined herein shall have the meanings ascribed thereto in that certain draft Stock Purchase Agreement by and among Silver, Purchaser, Platinum and Parent (the "Purchase Agreement") as of the date hereof.

WHEREAS, the Purchase Agreement calls for the Purchaser to purchase from Parent all of the issued and outstanding capital stock of Silver (the "Proposed Transaction");

WHEREAS, in addition to the Purchase Agreement, the Parties have negotiated and agreed upon the terms of certain Ancillary Documents, including, without limitation, that certain (i) Tax Matters, Indemnity and Antitrust Filing Agreement (the "Indemnity Agreement"), (ii) Registration Rights Agreement (the "Registration Rights Agreement"), (iii) Letter Agreement between Platinum and MHR (the "Side Letter"), (iv) Transaction Agreement between Parent and MHR (the "Transaction Agreement"), (v) the Letter Agreement between Nes, Parent and MHR (the "NES Agreement") and (vi) a Mutual Release (the "Release");

WHEREAS, to the extent Parent, Silver, Nes and MHR are parties to each of the Purchase Agreement, the Instructions, the Indemnity Agreement, the Transaction Agreement, the NES Agreement, the Release and the Side Letter (collectively, the "Principal Documents"), such Parties have executed such documents;

WHEREAS, the Parties have agreed to have Platinum hold the Principal Documents in escrow for a period of up to ten (10) days from the date hereof (the "Escrow Period") to allow Platinum and Purchaser (i) a ten (10) day period (the "Platinum Escrow Period") to complete certain actions which are conditions precedent to their willingness to execute the Principal Documents and proceed with the Proposed Transaction and (ii) four (4) day period (the "Key Escrow Period") to obtain the consent of Key Corporate Capital, Inc. ("Key") to the Proposed Transaction; and

WHEREAS, the parties hereto have agreed that the escrow provided for hereunder shall in no event be released unless and until Key consents to the transaction on the terms and conditions contained herein; and

WHEREAS, the parties desire to set forth their understandings with regard to the escrow established hereunder.

BST99 1412046 3.049646 0011



ABD/P0079

NOW, THEREFORE, in consideration of the premises and agreements of the parties contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  **Appointment of Agent.** The Parties hereby appoint Platinum as their agent to hold in escrow, and to administer the disposition of, the Principal Documents in accordance with the terms of this Agreement, and Platinum hereby accepts such appointment.

2.  **Establishment of Escrow.** Upon the execution of this Escrow Agreement, MHR and Parent shall deposit the executed Principal Documents, bearing original signatures, with Platinum, and Platinum shall promptly acknowledge to MHR and Parent receipt of the executed Principal Documents so deposited. The Principal Documents shall be herein referred to as the "Escrow Deposit."

3.  **Procedures During Escrow.**

    (a)   From the date hereof through the close of business on June 25, 2004, Platinum and Purchaser shall take the following steps in an effort to proceed towards execution of the Principal Documents:

        (i)    Platinum shall take any and all reasonable actions it deems necessary or appropriate in anticipation of the Proposed Transaction;

        (ii)   Platinum shall instruct its financial advisor to complete its financial diligence process, including without limitation, the execution and delivery of a fairness opinion to Platinum's Board of Directors;

        (iii)  Platinum shall schedule and hold a meeting if its Board of Directors, the agenda for which shall include the consideration of the Proposed Transaction; and

    (b)   From the date hereof through the close of business on June 22, 2004, Parent shall endeavor to obtain Key's consent and agreement to the Proposed Transaction, such consent and agreement to be evidenced by Key's execution of Exhibit A attached hereto.

**Release of the Escrow Deposit.**

    (c)   On or prior to the expiration of the Platinum Escrow Period, if the parties complete the items set forth in Sections 3(a)(i), 3(a)(ii) and 3(a)(iii), Key has consented to the transaction in accordance with Section 4(b), and Platinum's Board of Directors has approved the Proposed Transaction, then Platinum shall promptly so inform MHR and Parent, and Platinum shall execute the Principal Documents to which it is a party (except for the Release) and shall deliver to MHR and Parent originally executed counterpart signature pages of all such documents. Upon the Closing, Platinum shall execute and deliver to MHR, Nes and Parent originally executed counterpart signature pages to the Release.

*60646 0011*

ABD/P007911

(b)    On or prior to the expiration of the Key Escrow Period, if Key shall have consented to the transaction and executed the Consent and Agreement in accordance with Section 3(b) above, then, subject to the completion of 3(e) above, the parties hereby agree that the Escrow Deposit shall be released from any condition relating to obtaining Key's consent.

(c)    Upon the earlier of (i) the failure of the occurrence of the items set forth in Section 4(a) or 4(b) above, (ii) the expiration of the Platinum Escrow Period without Platinum's receipt of such Board approval or (iii) the expiration of the Key Escrow Period without receiving the consent and agreement of Key, Platinum shall, at the request of Nes, Parent and MHR, either (x) destroy all of the executed copies of the Principal Documents constituting the Escrow Deposit, and shall deliver a certificate to each of MHR, Nes and Parent attesting to such destruction of the execution copies of the Principal Documents or (y) return the Escrow Deposit to Parent and MHR, respectively. Upon the occurrence of either of the events set forth in 4(c)(i) or 4(c)(ii), then the agreements, covenants and obligations of the Parties contained in the Principal Documents shall be null and void in their entirety.

5.    **Responsibilities and Liability of Platinum as Escrow Agent**

(a)    **Duties Limited.** Platinum undertakes to perform only such duties as are expressly set forth herein. Platinum's duties shall be determined only with reference to this Agreement and applicable laws and it shall have no implied duties.

(b)    **Liability of Platinum as Escrow Agent.** Except in cases of Platinum's bad faith, willful misconduct or gross negligence, Platinum shall be fully protected (i) in acting in reliance upon any certificate, statement, request, notice, advice, instruction, direction, other agreement or instrument or signature reasonably and in good faith believed by Platinum to be genuine, (ii) in assuming that any person purporting to give Platinum any of the foregoing in accordance with the provisions hereof, or in connection with either this Agreement or Platinum's duties hereunder, has been duly authorized to do so, and (iii) in acting or failing to act in good faith on the advice of any counsel retained by Platinum. Platinum shall not be liable for any mistake of fact or law or any error of judgment, or for any act or omission, except as a result of its bad faith, willful misconduct or gross negligence.

6.    **Notices.** All notices under this Agreement shall be transmitted to the respective parties, shall be in writing and shall be considered to have been duly given or served when personally delivered to any individual party, or on the first (1st) business day after the date of deposit with an overnight courier for next day delivery, postage paid, or on the third (3rd) business day after deposit in the United States Mail, certified or registered, return receipt requested, postage prepaid, or on the date of telecopy, fax or similar telephonic transmission during normal business hours, as evidenced by mechanical confirmation of such telecopy, fax or telephonic transmission; addressed in all cases to the Parties in accordance with the Purchase Agreement. Any notice given hereunder may

BST99 1412046-5.069646.0011

ABD/P007912

be given on behalf of any Party to its counsel or other authorized representative. In all cases Platinum shall be entitled to rely on a copy or a fax transmission of any document with the same legal effect as it were the original of such document.

7.  **Modifications; Waiver.** This Escrow Agreement may not be altered or modified without the express prior written consent of the Parties hereto. No course of conduct shall constitute a waiver of any terms or conditions of this Escrow Agreement, unless such waiver is specified in writing, and then only to the extent so specified. A waiver of any of the terms and conditions of this Escrow Agreement on one occasion shall not constitute a waiver of the other terms of this Escrow Agreement, or of such terms and conditions on any other occasion.

8.  **Section Headings.** The section headings contained in this Escrow Agreement are inserted for purposes of convenience of reference only and shall not affect the meaning or interpretation hereof.

9.  **Governing Law.** This Escrow Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to principles of conflicts of law.

10. **Counterparts.** This Escrow Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

**[end of text]**

ABD/P007913

B158

# EXHIBIT 28

Intentionally Blank

B160


# EXHIBITS

Marked at the

Deposition of

## MOOSA E. MOOSA

Taken on

### OCTOBER 20, 2004



# ESQUIRE™
DEPOSITION SERVICES
A HOBART WEST COMPANY

JOB: #166399A

LINKING TESTIMONY, TRADITION AND TECHNOLOGY
216 EAST 45TH STREET, NEW YORK, NY 10017    212-687-8010

00:20                                                    P.01/02

ESSTEK, INC.    55 Executive Drive
                Hudson, NH 03051
                Phone: 603-595-7000
                Fax:    603-595-2602

Michael Lugli

Moose E. Moose        Fax:

ct: Silver            Fax:

SHOULD RECEIVE    PAGE(S), INCLUDING THIS COVER SHEET.

The contents of this fax are confidential and may be legally ged. Unauthorized use or distribution of this material is strictly ed. Nothing contained in this fax or accompanying documents s an obligation on the part of Presstek or its employees unless such ion is specifically provided for and signed by an authorized official company.



440·442·3111 (JOHN)

DEPOSITION
EXHIBIT
Moos 9  10
10-20-04   tr

KEY01266

B162

N-22-2004 00:20 P.02/02



**PRESSTEK**
A SMARTER WAY TO PRINT

June 22, 2004

CONFIDENTIAL

Key Corporate Capital, Inc.
7400 Coldwell Avenue
Niles, Illinois 60714
Attention: Michael Lugli

Re:    A.B. Dick Company (the "Company")

Dear Sirs:

Reference is made to the proposed transaction (the "Proposed Transaction") involving the purchase by Presstek of the capital stock of the Company from Paragon Corporate Holdings, Inc. ("Paragon"), and to the Credit and Security Agreement ("Credit Agreement") dated as of April 1, 1998, as amended, among Paragon and Key Corporate Capital, Inc. ("Key") and related agreements, including the Subsidiary Guaranty Agreement and Security Agreement of the Company dated as of April 1, 1998, as amended.

As you know, pursuant to the terms of the relevant documents related to the Proposed Transaction, Presstek cannot consider proceeding with the Proposed Transaction unless Key (i) approves the Proposed Transaction and (ii) continues to fund the Company's working capital and operating deficits, as it has in the past. Recently, you have stated Key's unwillingness to provide further funding and have indicated that Key will not approve the Proposed Transaction unless Presstek provides a commitment for the necessary financing for the working capital and operating deficits of the Company through the closing of the Proposed Transaction (the "Interim Period"). Key has further indicated that such a commitment must be provided by today. Presstek has considered this request and hereby informs Key that Presstek is unwilling to provide such financing.

Because Key has indicated that it would not grant approval of the Proposed Transaction unless Presstek provided the commitment to fund the working capital and operating deficits of the Company during the Interim Period, and because Presstek will not provide such a commitment, we conclude that Key has denied approval of the Proposed Transaction.

Sincerely,

Moosa E. Moosa
Vice President-Finance and CFO

cc:    Paragon Corporate Holdings, Inc.
       MHR Fund Management LLC

55 Executive Drive, Hudson, NH 0305
Tel: (603) 595-7000  Fax: (60
www.pre

KEY01267

TOTAL P.02

B163

Intentionally Blank