58.     In *In re White Motor Credit Corp.,*[39] the Bankruptcy Court for the Northern District of Ohio held that a purchaser of assets sold "free and clear" pursuant to section 363(f) of the Bankruptcy Code was not subject to state law successor liability claims pursuant to sections 363(f) and 105 of the Bankruptcy Code.[40] More recently, this Court embraced *White Motor* and its holdings in *In re Trans World Airlines, Inc.*:

> Authorizing the sale of TWA to American free and clear of the EEOC's successor liability claims achieves the purpose of § 363 intended by Congress. "[T]he purpose behind the 'free-and-clear' language is to maximize the value of the asset, and thus enhance the payout made to creditors. Without the 'free-and-clear' language, prospective buyers would be unwilling to pay a fair price for the property subject to sale; instead, the price would have to be discounted, perhaps quite substantially, to account for the liabilities that the buyer would face simply as a result of acquiring the asset."[41]

The *TWA* court continued:

> I also agree with TWA and American that (1) the prospect of successor liability would deter bidders and could create a serious impediment to the ability of debtors to effect going-concern sales under § 363 ... and that (2) bidders faced with prospective successor liability claims would lower their offered purchase price thereby indirectly subverting the priority scheme of the Bankruptcy Code.[42]

---

[39]    75 B.R. 944, 949 (Bankr. N.D. Ohio 1987).

[40]    *Id.* at 949.

[41]    *In re Trans World Airlines, Inc.*, 2001 Bankr. Lexis 723 (Bankr. D. Del. 2001) at *5, citing *In re WBO P'ship*, 189 B.R. 97, 108 (Bankr. E.D. Va. 1995).

[42]    *Id.*, citing *White Motor* and *In re New England Fish Company*, 19 B.R. 323, 328 (Bankr. W.D. Wash. 1982. Other courts have similarly held that where a claim existed prepetition and the claimholder had an opportunity to participate in chapter 11 case, successor liability cannot be imposed upon the purchaser of a debtor's assets. *See, e.g., P.K.R. Convalescent Ctrs, Inc. v. Commonwealth of Virginia, Dep't of Med. Assistance Serv. (In re P.K.R. Convalescent Ctrs, Inc.)*, 189 B.R. 90 (Bankr. E.D. Va. 1995); *Wood v. CLC Corp. (In re CLC Corp.)*, 110 B.R. 335, 339 (Bankr.M.D. Tenn. 1990); *Am. Living Sys. v. Bonapfel (In re All Am. Of Ashburn, Inc.)*, 56 B.R. 186, 189-90 (Bankr. N.D. Ga, 1986), aff'd 805 F.3d 1515 (11th Cir. 1986).

Here, as set forth below, none of the established exceptions to the corporate law rule of no successor liability are implicated. Accordingly, the Assets may be sold free and clear of any claims based on state law successor liability under section 363(f)(1) of the Bankruptcy Code.

**a.    There is no agreement to assume successor liability claims.**

59.    Pursuant to the APA, Silver is buying certain of the Assets and taking assignment of certain executory contracts and unexpired leases. Other than these specific items, there is no express or implied assumption of other liabilities. In fact, the APA includes, among other things, an express exclusion of assumption of liabilities beyond those enumerated in the APA and the various schedules and exhibits thereto.

**b.    The Proposed Sale is Not Fraudulent.**

60.    As set forth above, this Court is required by section 363(m) of the Bankruptcy Code to make a determination with respect to the good faith of the purchaser. This inquiry requires the Court to (i) examine the relationship between the parties to ensure that the transaction is the result of arms' length negotiations (*i.e.*, without fraud or collusion between the parties) and (ii) determine that value was paid for the assets. The factual bases for a "good faith" finding by this Court are set forth above. The same facts demonstrate that this Sale is not fraudulent. This Court's determination with respect to the good faith issue, moreover, would be *res judicata*. As the record demonstrates that the proposed Sale is not fraudulent, it would not come within the ambit of this established exception to the state common law rule of no successor liability.

B238

c.    **The Proposed Sale Does Not Constitute a _De Facto_ Merger.**

61.    A _de facto_ merger occurs where one corporation is absorbed by another, but without compliance with the statutory requirements for a merger.[43]    To find that a _de facto_ merger occurred:

> there must be a continuity of the selling corporation, evidenced by the same management, personnel, assets and physical location; a continuity of stockholders, accomplished by paying for the acquired corporation with shares of stock; a dissolution of the selling corporation, and assumption of liabilities by the purchaser.[44]

In addition, in determining the existence of a _de facto_ merger, courts consider whether shareholders of the predecessor corporation become, at the time of the sale of the assets, shareholders of the successor corporation.[45]

62.    Under the foregoing test, the proposed Sale does not constitute a _de facto_ merger or consolidation.  The proposed Sale involves a purchase of assets for cash, not an acquisition accomplished with shares stock.  The Debtors' prepetition management and postpetition management team will, with respect to many key positions, be replaced or substantially supplemented by the management team to be installed by Silver.  The Debtors' prepetition shareholders are not shareholders of and will not be receiving shares of Silver.  Finally, the Debtors are not being dissolved in connection with the sale but shall continue to exist as corporate entities post-closing for the continued administration of their bankruptcy estates.

---

[43]    _Ladjevardian v. Laidlaw-Coggeshall, Inc._, 431 F.Supp. 834, 838 (S.D.N.Y. 1977).

[44]    _Arnold Graphics Industries, Inc. v. Independent Agent Center, Inc._, 775 F.2d 38, 42 (2nd Cir. 1985).

[45]    See _Diaz v. South Bend Lathe Inc._, 707 F.Supp 97 (E.D.N.Y. 1989), _Arnold Graphics_, 775 F.2d at 42.

B239

d.    **Silver is not a "Mere Continuation" of the Debtors.**

63.    Although the mere continuance exception is similar to the *de facto* merger exception, it focuses on situations in which the purchaser is merely a restructured or reorganized form of the seller.  As succinctly summarized by the District Court in *Shamis v. Ambassador Factors Corp.*:

> "Successor liability attaches to a corporation as a 'mere continuance' only when 'one corporation survives the transaction; the predecessor corporation must be extinguished.'"
> A continuance envisions a "common identity of directors, stockholders and the existence of only one corporation at the completion of the transfer . . . What it accomplishes is something in the nature of a corporate reorganization, rather than a mere sale." It is not simply the business of the alleged predecessor that continues, but the corporate entity itself.[46]

Similarly, in *Welco Indus., Inc. v. Applied Companies*, the Ohio Supreme Court, discussing the mere continuation exception, stated:

> We have held that the basis of this theory is the continuation of the corporate entity, not the business operation, after the transaction.  Such would be the case when "one corporation sells its assets to another corporation with the same people owning both corporations.  Thus, the acquiring corporation is just a new hat for, or reincarnation of, the acquired corporation.  This is actually a reorganization." This type of transaction is executed to escape liabilities of the predecessor corporation.  Because the goal is to escape liability, inadequacy of consideration is one of the indicia of a mere continuation.[47]

Finding that the purchaser was a stranger to and had not been an owner of the predecessor corporation, the *Welco* court went on to hold that the purchaser's continued operation of the predecessor's business utilizing the same physical plant, officers, employees and product line

---

[46]    *Shamis v. Ambassador Factors Corp.*, 34 F.Supp.2d 879, 898 (S.D.N.Y. 1999) (citations omitted).

[47]    *Welco Indus., Inc. v. Applied Companies*, 67 Ohio St.3d 344, 350 (1993) (citations omitted).

B240

was insufficient to hold the purchaser liable for the contractual obligations of the predecessor under the "mere continuation" exception.[48]

64.     Clearly, under the foregoing standards, this transaction would not fall within the ambit of the "mere continuation" exception to the state common law rule of no successor liability. Silver was not involved in the Debtors' prepetition operations. Silver did not own any interest in the Debtors prepetition. Finally, since the Debtors' have received the fair market value of their assets, as established during the bid solicitation process, there is no question regarding the adequacy of consideration.

65.     As discussed above, under state common law, when one corporation transfers its assets to another corporation, the purchaser is generally not liable for the liabilities of the seller. There are four well established exceptions to this no successor liability rule:  (1) express or implied assumption; (2) fraud; (3) a *de facto* consolidation or merger of the companies; and (4) mere continuation.  Since none of these exceptions apply, applicable non-bankruptcy law permits the Sale of the Assets free and clear of successor liability under section 363(f)(1) of the Bankruptcy Code.

**C.     All of the Requirements of Bankruptcy Code Section 365 with respect to the Assumption and Assignment of Executory Contracts and Unexpired Leases are Satisfied.**

66.     Section 365(a) of the Bankruptcy Code provides as follows:

> Except as provided in section 765 and 766 of this title and in subsections (b), (c) and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.[49]

---

[48]     *Id.*

[49]     11 U.S.C. § 365(a).

B241

Section 365 of the Bankruptcy Code authorizes the assumption or rejection of any executory contract or unexpired lease of a debtor except for open contracts of commodity brokers that are covered by Bankruptcy Code sections 765 and 766.

67.    The Bankruptcy Code provides little guidance as to the standards to be applied by the Court in approving an assumption or rejection.  Drawing on law predating the enactment of the Bankruptcy Code, the predominant test is described as the "business judgment" rule or business judgment test.[50]  The business judgment test is the same test applied to judicial review of corporate decisions outside bankruptcy.[51]  This test analyzes the impact that continued performance under the executory contract or unexpired lease will have on the estate.  thus, assumption or rejection of the contract or lease will be approved upon a mere showing that the action will benefit the estate.[52]

68.    In addition to the business judgment test, section 365(b)(1) of the Bankruptcy Code further provides that the debtor may not assume an executory contract or unexpired lease unless, at the time of assumption, the debtor: (a) cures defaults; (b) compensates the non-debtor party to the lease or contract for any actual pecuniary loss resulting from defaults; and (c) provides adequate assurance of future performance.[53]  Section 365(b)(1) of the Bankruptcy Code will be satisfied with respect to the Assigned Contracts and Leases because the APA

---

[50]    *In re Kong*, 162 B.R. 86, 94 (Bankr. E.D.N.Y. 1993); *In re Minges*, 602 F.2d 38 (2nd Cir. 1979); *In re Child World*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992); *In re Stable Mews Assocs.*, 41 B.R. 594 (Bankr. S.D.N.Y. 1984).

[51]    *Johnson v. Fairco Corp.*, 61 B.R. 317 (N.D. Ill. 1986).

[52]    *In re Chestnut Ridge Plaza Assocs., L.P.*, 156 B.R. 477 (Bankr. W.D. Pa. 1993) (test is best interest of the estate); *Bezanson v. Metropolitan Ins. & Annuity Co.*, 952 F.2d 1 (1st Cir. Me. 1991), *reh'g. en banc, denied*, 1992 U.S. App. LEXIS 14625 (1st Cir. Jan. 7, 1992), *cert. denied*, 120 L. Ed. 2d 871, 112 S. Ct. 2994 (U.S. 1992); but see *In re Klein Sleep Products, Inc.*, 78 F.3d 18 (2nd Cir. 1996) (assumption should not permitted until confirmation in chapter 11 reorganization context).

[53]    11 U.S.C § 365(b)(1).

B242

provides for the cure of all defaults existing under the Assigned Contracts and Leases at the time of assumption and, as explained more fully below, Silver will be able to perform in the future under the Assigned Contracts and Leases.

69.    In the present case, the Debtors seek not only to assume the Assigned Contracts and Leases, but also to assign the Assigned Contracts and Leases to Silver. Section 365(f) of the Bankruptcy Code addresses assumption of executory contracts and unexpired leases and provides, in pertinent part:

> (1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection . . . .
>
> (2) The trustee may assign an executory contract or unexpired lease of the debtor only if–
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.[54]

70.    Adequate assurance of future performance is to be determined on a case by case basis to insure that the other party to the contact or lease gets the benefit of the bargain for which he has contracted.[55] A landlord or a party to a contract, however, is not entitled to greater rights than are given by the lease or contract.[56]

---

[54]    11 U.S.C. § 365(f)(1)-(2).

[55]    *Chera v. 991 Blvd. Realty Corp. (In re National Shoes, Inc.)*, 20 B.R. 55,59 (Bankr. S.D.N.Y. 1982).

[56]    *In re Lafayette Radio Electronics Corp.*, 9 B.R. 993 (Bankr. E.D.N.Y. 1981).

#10316.1                                    32

**B243**

71.     Here, the Bid Procedures were designed to produce a sale to a purchaser with sufficient financial wherewithal not only to close the sale, but also to perform all of the Debtors' obligations under each of the Assigned Contracts and Leases.[57]  There are no objections to the proposed assignment of the Assigned Contracts and Leases that dispute Silver's ability to render adequate assurance of future performance.   Accordingly, the proposed assignment of the Assigned Contracts and Leases should be authorized.

**[Remainder of Page Intentionally Left Blank]**

---

[57]    *See In re Bygaph*, 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986) (Congress intended that the words "adequate assurance" be given a practical, pragmatic construction, and is to be determined under the facts of each particular case").

B244

WHEREFORE, the Debtors respectfully request entry of an Order:  (A) authorizing the sale of substantially all of the assets of A.B.Dick and its wholly owned subsidiaries and the assets of IMG, free and clear of all liens, claims and encumbrances, to Silver; (B) authorizing the Debtors to assume and assign to Silver the Assigned Leases and Contracts; and (C) granting such other and further relief as the Court deems just and proper.

Dated: Cleveland, Ohio  
      November 1, 2004

Respectfully submitted,

/s/ H. Jeffrey Schwartz  
H. Jeffrey Schwartz  (OBR #0014307)  
John A. Gleason  (OBR #0039150)  
Michael D. Zaverton  (OBR #0038597)  
BENESCH, FRIEDLANDER,  
COPLAN & ARONOFF LLP  
2300 BP Tower  
200 Public Square  
Cleveland, OH  44114-2378  
Telephone:    (216) 363-4500  
Facsimile:    (216) 363-4588  
jschwartz@bfca.com  
jgleason@bfca.com  
mzaverton@bfca.com

Attorneys for A.B.Dick Company, *et al.*,  
Debtors and Debtors in Possession

and

/s/ Frederick B. Rosner  
Frederick B. Rosner, Esq.  (No. 3995)  
JASPAN SCHLESINGER HOFFMAN LLP  
913 North Market Street, 12th Floor  
Wilmington, DE  19801  
Telephone:    (302) 351-8000/8005  
Facsimile:    (302) 351-8010  
frosner@jshllp-de.com

Local Counsel for A.B.Dick Company, *et al.*,  
Debtors and Debtors in Possession

#10316.1

34

**B245**

# IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELWARE

------------------------------------------------x

In re                                          :        Chapter 11
                                               :
A.B. DICK COMPANY, *et al.*,                   :        Case Nos.  04-12002 (CGC)
                                               :
            Debtors.                           :        Jointly Administered
                                               :
------------------------------------------------x

## CERTIFICATE OF SERVICE

I, Frederick B. Rosner, Esquire, hereby certify that on the 1st $^t$ day of November, 2004, I caused a true and correct copy of the *Debtors Hearing Memorandum in Support of Motion for Order: (A) Authorizing Sale of Substantially all of the Assets of A.B.Dick Company and its Wholly Owned Subsidiaries, Free and Clear of Liens, Claims and Encumbrances; (B) Authorizing Assumption and Assignment of Certain Unexpired Leases and Executory Contracts and (C) Granting Related Relief* to be served upon the parties listed below in the manner so indicated:

**Hand Delivery & Electronic Mail & Facsimile**
Jeffrey Schlerf, Esq.
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(Counsel to the Official Committee)

**Electronic Mail & First Class Mail**
Jeffrey Schwartz, Esq.
Benesch, Friedlander, Coplan & Aronoff LLP
2300 BP Tower, 200 Public Square
Cleveland, OH 44114-2378
(Debtors Counsel)

**Electronic Mail & First Class Mail & Facsimile**
Stephen B. Selbst, Esq.
McDermott Will & Emery
50 Rockefeller Plaza
New York, NY 10020
(Counsel to Presstek)

**Electronic Mail & Facsimile & Facsimile**
David A Zagore, Esq.
Squire Sanders & Dempsey LLP
4900 Key Tower
Cleveland, OH 44114
(Special Corporate Counsel)

#9130.1

**First Class Mail**
Lorenzo Mendizabal
Trumbull Services
4 Griffin Road North
Windsor, CT 06095
(Noticing Agent)

**Hand Delivery & Electronic Mail
& Facsimile**
Francis A. Monaco, Jr., Esq.
Walsh Monzack and Monaco, P.A.
1201 Orange Street, Suite 400
Wilmington, DE 19801
(Delaware Counsel to Presstek)

**First Class Mail & Facsimile**
Joseph H. Baldiga, Esquire
Paul W. Carey, Esquire
Mirick, O'Connell, DeMallie
& Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
(Counsel to C.P. Bourg, Inc.)

**Electronic Mail & First Class Mail
& Facsimile**
Michael Sage, Esq.
Stroock & Stroock & Lavan
180 Maiden Lane
New York, New York 10038
(Counsel to MHR Capital
Partners LP)

**First Class Mail & Facsimile**
Jeffrey Baddeley, Esquire
Baker & Hostetler LLP
3200 National City Center
1900 East Ninth Street
Cleveland, OH 44114-3485
(Counsel to Robert Tomsich)

**Electronic Mail & First Class Mail
& Facsimile**
Robert C. Folland, Esquire
Alan R. Lepene, Esq.
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114-1291
(Counsel to KeyBank, N.A)

**Electronic Mail & First Class Mail
& Facsimile**
Richard Mason, Esq.
Michael M. Schmahl, Esq.
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
(Counsel to the Official Committee)

**Hand Delivery & Facsimile**
David M. Klauder, Esq.
United States Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19899-0035

9386.1                              2

**B247**

*Electronic Mail & First Class Mail*
*& Facsimile*
Marshall Beil, Esq.
McGuireWoods LLP
1345 Avenue of the Americas
Seventh Floor
New York, NY 10105
(Counsel to the Official Committee)

*First Class Mail & Facsimile*
Robert Lapowsky
Stevens & Lee, P.C.
1818 Market Street, 29th Floor
Philadelphia, PA 19103-1702
(Counsel to Mitsubishi)

*Hand Delivery & Facsimile*
Jami B. Nimeroff, Esq.
Buchanan Ingersoll Professional
Corporation
The Nemours Building
1007 North Orange Street
Suite 1110
Wilmington, DE 19801
(Counsel to Keybank)

*First Class Mail & Facsimile*
Tally F. Parker, Jr.
Parker & Marks PC
Suite 209
1333 Corporate Drive
Irving TX 75038
(Counsel to City of Irving)

*First Class Mail & Facsimile*
John J. Monaghan, Esq.
Lynne B. Xerras, Esq.
David G. Sobol, Esq.
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
(Counsel to Global Graphics Software Limited)

*Hand Delivery & Facsimile*
Thomas G. Whalen, Jr., Esq.
Stevens & Lee, P.C.
300 Delaware Avenue
Suite 800
Wilmington, DE 19801

*First Class Mail*
Niraj R. Ganatra, Esq.
International Union, UAW
8000 E. Jefferson Avenue
Detroit, MI 48214
(Counsel to International Union, United Automobile,
Aerospace and Agricultural Implement Workers of
America)

*First Class Mail & Facsimile*
Tony Praino, Esq.
Special Handling Group – MD NC317
IBM Credit LLC
North Castle Drive
Armonk, NY 10504
(Counsel to IBM Credit LLC

9386.1                                   3

**B248**

*First Class Mail*
Bill Angelowitz, Esq.
Daily Insights
225 W. 34ᵗʰ Street
Suite 403
New York, NY 10122

*First Class Mail & Facsimile*
James W. Deatherage, Esq.
Jim Deatherage & Assoc., P.C.
800 West Airport Freeway
Suite 518, LB 6060
Irving, TX 75062
(Counsel for Irving Independent School Dist

*Hand Delivery & Electronic Mai*
*& Facsimile*
Derek C. Abbott, Esq.
Daniel B. Butz, Esq.
Morris Nichols Arsht & Tunnell
1201 North Market Street
Wilmington, DE 19801
(Counsel for MHR Capital Partners LP, MHR
Institutional Partners LP and MHRM LP)

*Electronic Mail & Facsimile*
Sally E. Edison, Esq.
McGuire Woods LLP
Dominion Tower
625 Liberty Avenue, 23ʳᵈ Floor
Pittsburgh, PA 15222-3142

*First Class Mail & Facsimile*
Steve Turner, Esq.
McGinnis, Lochridge & Kilgore, LLP
919 Congress Avenue
Suite 1300
Austin, TX 78701
(Counsel for ProLogis)

*First Class Mail & Facsimile*
Beverly H. Shideler, Esq.
IBM Corporation
Two Lincoln Centre
Oakbrook Terrace, IL 60181

*First Class Mail & Facsimile*
John P. Dillman, Esq.
Linebarger Goggan Blair & Sampson, LLP
P.O. Box 3064
Houston, TX 77253-3064
(Counsel for Harris County, Houston ISD, City of
Houston)

*First Class Mail*
Gary L. Barnhart, Esq.
Special Assistant Attorney General
Missouri Department of Revenue
General Counsel's Office
301 W. High Street, Room 670
P.O. Box 475
Jefferson City, MO 65105-0475

9386.1                                    4

**B249**

*First Class Mail*
David G. Aelvoet, Esq.
Linebarger Goggan Blair
& Sampson LLP
Travis Building
711 Navarro, Suite 300
San Antonio, TX 78205

*First Class Mail & Facsimile*
Michael M. Fay, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York NY 10019-6799

*First Class Mail & Facsimile*
Timothy W. Brink
Lord Bissell & Brook
115 S. Lasalle Street
Chicago, Illinois 60603-3901

*Hand Delivery & Facsimile*
Richard S. Cobb, Esq.
Jamie L. Edmonson, Esq.
Landis Rath & Cobb LLP
919 Market Street
Wilmington DE 19899

*First Class Mail & Facsimile*
Shawn M. Christianson, Esq.
Buchalter, Nemer, Fields & Younger
A Professional Corporation
333 Market Street, 25th Floor
San Francisco, CA 94105-2130

9386.1                          5

B250

*First Class Mail*
Neil Herskowitz, Esq.
Riverside Contracting LLC
P.O. Box 626
Planetarium Station
New York, NY 10024-0540

*First Class Mail & Facsimile*
Elizabeth Weller, Esquire
Linebarger Goggan Blair
& Sampson, LLP
2323 Bryan Street, Suite 1600
Dallas, TX 75201

*First Class Mail*
Madison Capital Management
6143 South Willow Drive
Suite 200
Greenwood Village, CO 80111
Attention: Kera Alhilali

*First Class Mail*
Ms. Mieko Kojima
Iwatsu Electric Co., Ltd.
7-41, Kugayama 1-chome,
Suginami-ku
Tokyo, 168-8501 Japan

*First Class Mail*
Robert E. Chrostowski, SVP
Iwatsu America, Inc.
6 Buell Court
Clinton, CT 06413

*Hand Delivery & Facsimile*
Teresa K.D. Currier, Esquire
Klett, Rooney, Lieber & Schorling
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801

*First Class Mail & Facsimile*
David Eaton, Esquire
Jonathan Friedland, Esquire
Timothy Elliott, Esquire
Alex Karan, Esquire
Kirkland & Ellis LLP
200 E. Randolph Drive
Chicago, IL 60601

*First Class Mail*
Robert H. Rosenbaum, Esquire
M. Evan Meyers, Esquire
Meyers, Rodbell & Rosenbaum, P.A.
Berkshire Building
6801 Kenilworth Avenue, Suite 400
Riverdale, MD 20737-1385

9386.1                                 6

**B251**

*First Class Mail*
Davor Rukavina, Esquire
Munsch Hardt Kopf & Harr, P.C.
4000 Fountain Place
1445 Ross Avenue
Dallas, TX  75202-2790

*First Class Mail*
Attn:  Mark Rowland
811 Jefferson Road, LLC
c/o Moore Corporate Real Estate
180 Canal View Boulevard, Suite 500
Rochester, NY 14623

*First Class Mail*
John L. Bulger, Corporation Counsel
693 East Avenue, Suite 101
Rochester, NY 14607

*First Class Mail*
Kirk B. Burkley, Esquire
Bernstein Law Firm, P.C.
707 Grant Street
Suite 2200 Gulf Tower
Pittsburgh, PA  15219

*First Class Mail & Electronic Mail*
Adam Mantzaris, Esquire
Corporation Counsel
Town Hall
45 South Main Street
Wallingford, CT  06492

*Hand Delivery & Electronic Mail*
Ian Connor Bifferato, Esquire
Bifferato, Gentilotti & Biden
1308 Delaware Avenue
P.O. Box 2165
Wilmington, DE  19899

**B252**

*First Class Mail & Electronic Mail*
John S. Delnero, Esquire
Kevin Y. Pak, Esquire
Bell, Boyd & Lloyd LLC
70 West Madison Street
Suite 3300
Chicago, IL  60602

*First Class Mail & Electronic Mail*
Sergio I. Scuteri, Esquire
211 Benigno Boulevard
Suite 201
Bellmawr, NJ  08031

Dated:  November 1, 2004
Wilmington, Delaware

**JASPAN SCHLESINGER HOFFMAN LLP**

*/s/ Frederick B. Rosner*
Fredrick B. Rosner (No. 3995)
1201 North Orange Street, Suite 1001
Wilmington, DE  19801
Telephone:  (302) 351-8000
Facsimile:  (302) 351-8010

Delaware Counsel for the
Debtors and Debtors in Possession

9386.1                                8

**B253**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------x
                                                :    Chapter 11
In re                                           :
                                                :
A. B. DICK COMPANY, et al.,                     :    Case No. 04-12002 (JLP)
                                                :    (Jointly Administered)
                 Debtors.                       :
------------------------------------------------x
```

**DECLARATION OF GLENN C. POLLACK IN SUPPORT OF DEBTORS' MOTION
FOR ORDER: (A) AUTHORIZING SALE OF SUBSTANTIALLY ALL OF THE
ASSETS OF A.B.DICK COMPANY AND ITS WHOLLY OWNED SUBSIDIARIES,
FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; (B) AUTHORIZING
ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES AND
EXECUTORY CONTRACTS; AND (C) GRANTING RELATED RELIEF**

```
STATE OF DELAWARE                 )
                                  ) ss:
NEW CASTLE COUNTY                 )
```

Glenn C. Pollack, being first duly sworn, deposes and says:

1.    I am Managing Director of Candlewood Partners, LLC ("Candlewood") which
maintains an office at 10 ½ East Washington Street, Chagrin Falls, OH  44022.

2.    This Declaration is submitted in support of the Motion (the "Sale Motion") filed by
A.B.Dick Company ("A.B.Dick") and its affiliated debtors in possession in the captioned chapter
11 cases (the "Debtors") for the entry of an Order:  (A) authorizing the sale of substantially all of
the assets of A.B.Dick and its wholly owned subsidiaries, free and clear of all liens, claims and
encumbrances (the "Sale"); (B) authorizing the Debtors to assume and assign to Silver certain
executory contracts and unexpired leases; and (C) granting related relief.

3.    Candlewood has extensive experience working with financially troubled
companies in complex financial restructurings both out-of-court and in chapter 11 cases.  The
employees of Candlewood have advised debtors, creditors, and equity constituencies in many

reorganizations.  Since 1984, these professionals have been involved in more than 100 restructurings.

4.     Specifically, I have substantial knowledge of the Debtors' financial and business operations in connection with Paragon's September 2003 engagement of Candlewood (the "2003 Engagement"), in which Candlewood was retained to provide advisory services relative to a financial restructuring of certain of the Debtors.  Candlewood provided financial advisory services pursuant to the 2003 Engagement and would have been owed a contingent fee upon the sale of the Debtors.  On June 4, 2004, Candlewood and Paragon executed a Release, Waiver and Termination Agreement (the "Waiver") whereby Candlewood waived any claims it may have had in connection with the 2003 Engagement in return for the payment of $8,000 in previously unbilled expenses associated with the 2003 Engagement.  Accordingly, after execution of the Waiver, Candlewood relinquished any creditor status in these cases.  Subsequently, Candlewood repaid the $8,000 in connection with its retention in these cases.

5.     Candlewood has been employed as financial advisor to the Debtors since June 30, 2004 in connection with it providing advice as to the Debtors' strategic alternatives, negotiating the terms of a Sale, the arrangement of debtor-in-possession financing and otherwise providing services typically provided by financial advisors to distressed companies.

6.     I am familiar with the terms of a certain Asset Purchase Agreement between certain of the Debtors and Silver (the "APA") respecting the sale of substantially all of the Debtors assets to Silver in a proceeding under Bankruptcy Code section 363 (the "Sale").

7.     My colleagues at Candlewood and I have been working actively since July 2004 to assist the Debtors in attempting to procure third party bids for substantially all of the Debtors'

assets (the "Assets") in accordance with bid solicitation and auction procedures approved by Court order (the "Bid Procedures").

8.     After being retained as the Debtors' post-petition financial advisors, Candlewood undertook to market the Assets to potential bidders. In planning these marketing efforts, Candlewood performed research to identify third parties who might be interested in bidding on some or all of the Assets. Such research included efforts to identify direct strategic competitors of A.B.Dick, as well as private equity firms that might be interested in buying such assets. In performing such research, Candlewood consulted materials available to it as an investment banker and also interviewed the Debtors' personnel.

9.     More than 200 potential candidates to purchase the Assets were identified from various sources, including, known strategic and financial buyers. This list included all of the significant "players" in the industry.

10.     On August 9, 2004, Candlewood sent each of these potential candidates an initial "teaser" introduction letter consisting of a short summary of the Debtors' businesses. Candlewood and the Debtors collaborated to identify and prioritize a group of certain potential buyers based on their perceived likelihood of purchasing the Assets. The highest priority candidates, consisting of approximately 29 entities, included those potential candidates who were major competitors and/or suppliers of the Debtors. Approximately 190 other potential buyers were also identified. Shortly thereafter, all potential buyers received direct follow-up telephone calls from Candlewood personnel. In all, more than 200 potential candidates were contacted by telephone.

11.     Of those potential buyers initially solicited with a "teaser" letter, 80 requested, and were sent, confidentiality agreements (a measure required by the Bid Procedures as a

#10314.1                                    3

B256

prerequisite to accessing the Debtors' confidential financial and other data). 64 ofthose candidates returned executed confidentiality agreements and were granted access to the Debtors' "virtual" online data room to conduct due diligence evaluations of the Debtors' businesses and assets.

12.     Ultimately, Candlewood did not receive any bids (or any cash deposits from any bidders) properly qualified under the Bid Procedures, and, as a result, no competing bids were submitted at the auction convened on October 29 (the "Auction").

13.     Candlewood did receive expressions of interest from Comvest Capital ("Comvest") and The Harbour Group ("Harbour"), both in the form of proposals for funding a plan of reorganization (together, the "Plan Proposals"). However, neither of the Plan Proposals contained an offer to purchase the Debtors' assets in an asset sale under Bankruptcy Code section 363, and neither proposal complied with the bidder qualification requirements of the Bid Procedures. In addition, neither Comvest nor Harbour Group submitted a 5% deposit.

14.     At the request of the Debtors, Candlewood undertook a comparative analysis of the terms of the Sale versus the terms of each of the Plan Proposals. Neither of the Plan Proposals presented Qualified Bids to the Debtors' estates to obtain higher and better value than what will be obtained via the Sale.

15.     I believe that all reasonable efforts were undertaken by Candlewood within the parameters of the Bid Procedures and the time constraints of these cases to obtain competing bids for the Assets and that Candlewood used its best efforts to locate potential buyers of the Assets, to furnish them with appropriate materials, and to follow-up with each of the parties to whom Candlewood sent bid packages.

#10314.1                                   4

16.     I believe it is unlikely that any further marketing efforts within the time constraints of these cases would have produced a qualified bid for the purchase of the Assets.

17.     I believe that Candlewood has faithfully executed and fulfilled its obligations under the Bid Procedures.

FURTHER, AFFIANT SAYETH NAUGHT.


/s/Glenn C. Pollack
Glenn C. Pollack


Sworn to and subscribed before me on this 1st day of November, 2004.


/s/Notary Public


#10314.1                          5

B258