7

1  debtors nor debtors' secured creditors will suffer any
2  prejudice from adjourning the auction for a reasonable
3  period of time for negotiation with Comvest and/or
4  Harbor.
5           The MHR entities remind each and every one
6  of you that each board member owes a fiduciary duty to
7  seek and approve a plan or sale that would achieve the
8  greatest value for the debtors' estates and, thus,
9  maximize the value ultimately distributed among the
10 debtors' creditors.
11          A sale to Presstek in no way furthers this
12 goal. And the MHR entities urge you to reconsider your
13 decision to proceed with the auction today.
14          Thank you.
15          MR. SCHWARTZ: Thank you for your statement.
16          For the record, the debtors-in-possession
17 disagree with that statement in general and in each of
18 its particulars, and will not state anything further.
19          At this point, the debtors-in-possession
20 request that Presstek put into the record with
21 specificity the improvements that it is offering the
22 estate with respect to the stalkinghorse bid as defined
23 in the order.
24          MR. SCAFIDE: This is Jim Scafide for

8

1   Presstek. There are three components to the modification
2   of our bid. The first is that a closing be effective as
3   of 11:59 Friday, November 5th. That is to coincide with
4   payroll.
5           The second item is to remove from the estate
6   the responsibility of curing all contracts, with the
7   exception of certain leases that have been provided by
8   the company with a total liability not to exceed
9   $500,000. That is to say that only $500,000 will remain
10  with the estate in those obligations.
11          And the third is, as identified by the
12  debtor-in-possession, the medical trail liabilities for
13  current employees will be assumed by Presstek as well.
14          MS. KOWALCZYK: What's the dollar value on
15  that?
16          MR. SCAFIDE: As listed -- Glenn, what was
17  that document called? What is this document called?
18          MR. POLLACK: Presstek bid analysis.
19          MR. SCAFIDE: The Presstek bid analysis
20  document estimate --
21          MR. SCHWARTZ: Which has been provided to
22  MHR and the committee and Key on Friday, last Friday,
23  October 29th.
24          MR. POLLACK: 1.65 million.

9

1          MR. SCAFIDE: Thank you.
2          MR. SCHWARTZ: We're going to go off the
3  record for one second.
4          (Discussion was held off the record.)
5          MR. SCAFIDE: Apparently there's a fourth
6  item. I misspoke. There's a fourth item. Inclusion of
7  prepaid inventory deposits in full in the calculation of
8  working capital required in the net working capital test
9  included in the APA.
10         MR. SCHWARTZ: Off the record for a second.
11         (Discussion was held off the record.)
12         MR. SCHWARTZ: Are there any other items --
13 I'm asking Mr. Pollack. Any other items that the
14 debtors-in-possession understand to be included in the
15 improvements made by Presstek to the stalkinghorse bid?
16         MR. POLLACK: The only clarifying comment is
17 that the executory contracts are still to be assumed and
18 assigned with Presstek being responsible for the cures,
19 other than the 500,000 Mr. Scafide mentioned.
20         MR. SCAFIDE: There may be some contracts
21 that are not assigned. But that won't affect the
22 liability of the estate.
23         MR. POLLACK: Okay. That's it.
24         MR. SCHWARTZ: So for the record, just --

10

1  for example, with respect to the Oji contract -- what's
2  the full name of that contract?
3          MR. GRAY: Oji, O-J-I.
4          You do understand that the Oji contract --
5  Oji has denied the extension of exclusivity in that
6  contract?
7          MR. SCHWARTZ: And that it's Presstek's sole
8  responsibility any payment thereunder...
9          MR. SCAFIDE: Yes.
10         MR. SCHWARTZ: Let the record reflect
11 Mr. Scafide's acceptance of that.
12         MR. GRAY: We can't assume and assign that.
13         MR. SCHWARTZ: That's understood.
14         MR. GRAY: Then we have the accounting and
15 foreign consent issues for closing. We ought to have
16 that on the record.
17         There was the outstanding issue as to
18 whether the accounting -- the required accounting by
19 Ernst & Young and Troy & Orleans that are required in the
20 APA --
21         MR. SCHWARTZ: The financial review --
22         MR. GRAY: -- for closing financial review
23 of the '03 numbers and the -- I'm sorry. Finalizing the
24 '03 audit and the review of the 9/30/04 numbers as to

11

1  whether or not that can be accomplished by Friday and
2  whether you will close with that not accomplished on
3  Friday.
4          MR. SCHWARTZ: So the question is, are you
5  waiving that requirement under the APA to effect a
6  closing on Friday?
7          MR. SCAFIDE: One moment.
8          MR. POLLACK: Excuse me. While you're
9  considering that, the other issue is that all of the
10 foreign -- it's unlikely that all of the foreign
11 consents --
12         MR. SCAFIDE: We think we worked through
13 that.
14         MR. POLLACK: Okay.
15         MR. SCHWARTZ: Off the record.
16         (Discussion was held off the record.)
17         MR. SCAFIDE: Could you restate the
18 question?
19         MR. SCHWARTZ: The question is with regard
20 to the financial review required under the APA, is
21 Presstek waiving that in connection with a November 5th
22 or thereabouts closing?
23         MR. SCAFIDE: We're willing to make this a
24 post closing condition provided we're given adequate

12

1  assurances that it will be provided within a reasonable
2  amount of time.
3      MR. MOOSA: We had a discussion with the CFO
4  at the debtor company, and it seems to me that it should
5  not be a problem in terms of getting the financial --
6      A VOICE: Gentlemen, the folks in Delaware,
7  if you guys don't talk directly into the bridge, those of
8  us on the call can't hear.
9      MR. MOOSA: Our discussion with the CFO at
10 A.B. Dick indicates that they're likely to get these
11 financials in place by Friday. If it's not, then we
12 would revert to --
13     MR. SCHWARTZ: So that for purposes of the
14 auction, is it correct to state that Presstek is willing
15 to waive the condition that the financial review be
16 completed in a satisfactory manner on or about November
17 5th provided that on or about November 5th it receives
18 reasonable assurances that such a review will be
19 completed in a timely manner?
20     MR. SCAFIDE: Reasonable amount of time,
21 yes.
22     MR. GRAY: Just to be clear, the '04 review
23 and the completion of the '04 audit?
24     MR. MOOSA: Correct.

13

```
1                MR. HERDEN:  '03 audit.
2                MR. SCHWARTZ:  Thank you.
3                Mr. Pollack, any further...
4                MR. POLLACK:  Foreign consents.
5                MR. GRAY:  Or any consents.  Because we
6    might not have --
7                MR. SCAFIDE:  Yeah, I think we'll use the
8    same mechanism.  To the extent that they're non-material,
9    we'll certainly waive them.  We have to go through the
10   contracts and make a list.  We're doing that currently.
11   But I don't expect --
12               MR. POLLACK:  So could you possibly repeat
13   the same language and apply it to this?
14               MR. SCAFIDE:  To the extent that they're not
15   provided on or about November 5th, we would waive them,
16   provided that on or about November 5th we're provided
17   reasonable assurances that they'll be provided within a
18   reasonable amount of time.
19               MR. SCHWARTZ:  Well put.  Thank you.
20               MR. POLLACK:  Thank you.
21               MR. SCHWARTZ:  Does the committee wish to
22   make a statement at this time?
23               MR. RICCIARDI:  The committee has a question
24   at this time.  You said that the contracts which you
```

14

1 would be responsible for the cure of, that you would make
2 a decision about those contracts. And you would not
3 assume them all, but you would pay the cure costs above
4 500,000 on the ones you did assume. For how long are you
5 going to have to make that decision? Because
6 obviously --
7          MR. SCAFIDE: Tomorrow.
8          MR. RICCIARDI: Okay.
9          MR. SCAFIDE: By the close of business
10 tomorrow we'll have the list.
11          A VOICE: Whoever is speaking, you're
12 cutting out.
13          MR. SCAFIDE: By the close of business
14 tomorrow.
15          MR. SCHWARTZ: Jim, is that --
16          MR. RICCIARDI: Yes, because I wanted to
17 make sure we weren't going to have --
18          MR. SCHWARTZ: I understand. I want to make
19 sure the committee has a full and fair opportunity to ask
20 questions.
21          Mr. Folland, on behalf of KeyBank, do you
22 have any questions?
23          MR. FOLLAND: I do not have any questions at
24 this time. Thank you, gentlemen.

1      MS. KOWALCZYK:  No questions.
2      MR. SCHWARTZ:  Ms. Kowalczyk has no
3   questions.
4      Anybody on the phone have questions for
5   Presstek?
6      Any party in interest have questions for
7   Presstek?
8      MR. GALE:  This is Greg Gale.  In speaking
9   with Jim Goldsmith and John Egan earlier today, it was
10  mentioned to me that Presstek may require a transition
11  services agreement.  This is the first time that at least
12  I had heard the transition services agreement.  And I was
13  wondering if Presstek could comment on what they need?
14  And I want to make sure that there's no financial
15  commitment that is required of the estate after close.
16     MR. EGAN:  Greg, this is John Egan.  I
17  believe that's actually in the APA.
18     MR. SCHWARTZ:  So to the extent that a
19  transition services agreement is required, it is as
20  provided for in the APA and Presstek stands on that and
21  does not modify or amend that in any respect.
22     MR. SCAFIDE:  That is correct.
23     MR. SCHWARTZ:  At this time, then, I would
24  ask does any party wish to, likewise, modify its

16

1  indication of interest, expression of interest or the
2  like?
3           And I'm referring directly to the
4  representatives of Comvest and if there's a
5  representative of Harbor on the phone. I'm also
6  directing that to the MHR entities' representative.
7           Since you're in the room, Ms. Kowalczyk,
8  would you care to comment?
9           MS. KOWALCZYK: I think the statement I gave
10 at the beginning of the auction sets forth our position
11 adequately.
12          MR. SCHWARTZ: So you're resting on that?
13          MS. KOWALCZYK: Yes.
14          MR. SCHWARTZ: Thank you.
15          Mr. Kadish, do you have any modification,
16 improvement on the indication of interest provided by
17 Comvest to the debtors-in-possession?
18          MR. KADISH: I think for this moment we have
19 no change in our position. I'll let Carl speak behind me
20 if he disagrees. But I would hold open our expression of
21 interest notwithstanding the announcements made today.
22          Carl.
23          MR. KLEIDMAN: I think that's correct. You
24 know, I'd like to go on the record we are still very

17

1   interested in presenting a bid to the company. We stand
2   ready and committed to move forward as expeditiously as
3   we can within the time frame that we had laid out, and to
4   be in a position to solidify our bid by the end of next
5   week.
6           MR. SCHWARTZ: On behalf of the
7   debtors-in-possession, we thank you for that statements.
8           Any other party wishing to make -- I don't
9   know -- a statement on improving the bid or otherwise?
10          Is there a representative from Harbor on the
11  phone?
12          Hearing none --
13          MR. EGAN: Excuse me. This is John Egan.
14          Jim Scafide?
15          MR. SCAFIDE: Yes.
16          MR. EGAN: On the question of transition
17  services, I believe most of the stuff relating to office
18  space and leases is covered by the APA. I think, as an
19  element of closing early on Friday, the one other aspect
20  was, if needed, I think we wanted to pursue getting
21  payroll and accounting services, but we would pay the
22  estate for those services at cost; is that correct?
23          MR. SCAFIDE: That's correct.
24          MR. SCHWARTZ: Thank you for that

18

1   clarification.
2           MR. SCAFIDE:  Just for purposes of
3   clarification, in addition to that, there may be other
4   personnel-related services that would also be paid to the
5   estate at cost.  We don't expect the estate to assume any
6   costs, any liabilities associated with the transition
7   services agreement.
8           MR. SCHWARTZ:  So, please, correct me if I'm
9   misstating this, but Presstek in its improvements to the
10  stalkinghorse bid is not imposing, does not purport to
11  impose any financial obligations on the
12  debtors-in-possession or their estates; is that correct?
13          MR. SCAFIDE:  That's correct.
14          MR. SCHWARTZ:  Thank you.
15          On behalf of the debtors-in-possession, I
16  hereby declare the Presstek bid as improved on the record
17  to constitute the prevailing bid as defined in paragraph
18  Romanette four on page 6 of the order -- the order being
19  a defined term of the order under which I convened this
20  auction.  And I hereby designate on behalf of
21  debtors-in-possession Presstek to be the prevailing
22  bidder.
23          And I state for the record that the
24  debtors-in-possession will proceed with the sale hearing

19

1   at 2:00 p.m. tomorrow as contemplated under the order.
2   And I hereby declare the auction proceedings to be
3   closed. Thank you for your attendance.
4           (Proceedings concluded at 5:18 p.m.)
5
6              - - - - -
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

B296

20

State of Delaware    )
                     )
County of New Castle )

CERTIFICATE

I, Patricia L. Shelton, Notary Public, do hereby certify that the foregoing record, pages 2 to 19, inclusive, is a true and accurate transcript of my stenographic notes taken on Monday, November 1, 2004, in the above-captioned matter.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 2nd day of November, 2004, at Wilmington.

Patricia L. Shelton
Certification No. 104-RPR
(Expires January 31, 2005)

# EXHIBIT "1"

**A.B.DICK SCHEDULE G-Executory Contracts**
**CAPITAL LEASES**
**CURE AMOUNTS AS OF SEPTEMBER 26, 2004**

| Vendor Number | Name | Lease Number | Address | City | State | Zip | Cure Amount |
|---|---|---|---|---|---|---|---|
| MS2107 | Newcourt Leasing | 683278 707874 | 21146 Network Place | Chicago | IL | 60673 | $29,436.00 |
| 0365255 | CitiCapital | 0119266-000 | P.O. Box 8500-9805 | Philadelphia | PA | 19178 | $10,245.00 |
| 1089 | IBM Corporation | 577249 | 91272 Collections Center Dr. | Chicago | IL | 60697 | $17,211.00 |
| H220 | Hewlett-Packard | 36654A 33357A | P.O. Box 403265 | Atlanta | GA | 30381 | $6,461.00 |
| 0622000 | OFC Capital | 0205063 0209013 0308023 | P.O. Box 530101, Dept. GA00010 | Atlanta | GA | 30353 | $35,796 |
| MS152 | Insight Global Finance | 180282-6 180282-5 | 21146 Network Place | Chicago | IL | 60673 | $39,360 |
| O207 | OFSI | 200-0591815-001 | Department AT 40302 | Atlanta | GA | 31192 | $4,830.00 |
| | | | | | | | $143,339.00 |

See Ride

## Real Estate Leases

| Location | Address | Lease Expiration Date | Cure Amount as of 9/25/04 |
|---|---|---|---|
| **Dist Ctrs:** | | | |
| IL | 201 Oakton<br>Des Plaines | 2/28/2005 | $ 74,203.00 |
| TX* | 2749 W. Airport Freeway<br>Irving | 3/31/2007 | $ - |
| PA | 1549 Bobali Dr.<br>Harrisburg | 12/31/2006 | $ 7,925.00 |
| CO | 2500 W. Eighth Ave.<br>Denver | 2/28/2005 | $ 6,734.00 |
| CA* | 4057 W. Shaw Ave., #110<br>Fresno 93722 | 7/31/2007 | $ - |
| **Field Service:** | | | |
| CA* | 2121 W. Crescent Ave.<br>Suite F<br>Anaheim 92801 | 11/30/2005 | $ - |
| CT | 329 Main St.<br>Unit 108<br>Yalesville 06492 | 12/31/2005 | $ 875.00 |
| HI | 98-029 Hekaha St.<br>Aiea 69701 | 12/31/2004 | $ 1,230.00 |
| MO | 914 S. Highway Dr.<br>Fenton 63026 | 12/31/2004 | $ 5,958.00 |
| IA | 2600 72nd St.<br>Des Moines 50322 | Month-to-Month | $ 561.00 |
| **IMG:** | | | |
| OH | 190 N. Union St., #300<br>Akron 44304 | 1/15/2006 | $ 2,859.00 |
| **Field Sales:** | | | |
| GA | 9810-A Medlock Bridge Rd.<br>Suite 205<br>Duluth 30097 (Southern Reg.) | 3/8/2004 | $ 1,100.00 |
| Total real estate leases cure amount | | | $ 101,245.00 |

* July 2004 rent checked cleared account before Chapter 11 filing

B300

A.B. Dick Company
Operating Leases – Machinery and Equipment

| Vendor | Item or Department | Lease # | Address1 | Address2 | City | ST | ZIP | pre | post |
|---|---|---|---|---|---|---|---|---|---|
| Assoc. Material Handling | Des Plaines | 556181119 | | 550 Kehoe Blvd. | Carol Stream | IL | 60188-1835 | 3069 | 1455 |
| Chicagoland Mat. Handling | Des Plaines | 435670812 | 1800 W. Hawthorne Lane | Suite M | West Chicago | IL | 60185 | 880 | 880 |
| Chicagoland Mat. Handling | Des Plaines | 435670613 | 1800 W. Hawthorne Lane | Suite M | West Chicago | IL | 60185 | 880 | 880 |
| Chicagoland Mat. Handling | Des Plaines | B19710528 | 1800 W. Hawthorne Lane | Suite M | West Chicago | IL | 60185 | 880 | 880 |
| Chicagoland Mat. Handling | Des Plaines | B19670903 | 1800 W. Hawthorne Lane | Suite M | West Chicago | IL | 60185 | 880 | |
| Chicagoland Mat. Handling | Des Plaines | B19670904 | 1800 W. Hawthorne Lane | Suite M | West Chicago | IL | 60185 | 880 | |
| Chicagoland Mat. Handling | Des Plaines | B19670905 | 1800 W. Hawthorne Lane | Suite M | West Chicago | IL | 60185 | 417 | 647 |
| Chicagoland Mat. Handling | Dallas | 439612548 | 1800 W. Hawthorne Lane | Suite M | West Chicago | IL | 60185 | | |
| Citicorp Leasing Inc | Des Plaines | 499010 | | P.O.Box 8500-9805 | Philadelphia | PA | 19178-8805 | 1112 | 1112 |
| Citicorp Leasing Inc | Des Plaines | 491166 | | P.O. Box 8500-9805 | Philadelphia | PA | 19178-8805 | 1094 | 1878 |
| Citicorp Vendor Finance | 2 Canon IR2200's | 3039371 | | P O BOX 7247-0322 | Philadelphia | PA | 19170-0322 | 834 | 4J44 |
| Citicorp Vendor Finance | Canon IR5000/IR3300 | 3039074 | | P O BOX 7247-0322 | Philadelphia | PA | 19170-0322 | 1088 | 6962 |
| Citicorp Vendor Finance | C-5 Canon IR3300's | 3039070 | | P O BOX 7247-0322 | Philadelphia | PA | 19170-0322 | 4476 | 3702 |
| Citicorp Vendor Finance | 2 Canon IR60's | 3039073 | | P O BOX 7247-0322 | Philadelphia | PA | 19170-0322 | 1651 | 2827 |
| Citicorp Vendor Finance | 2 Canon IR500's | 3039072 | | P O BOX 7247-0322 | Philadelphia | PA | 19170-0322 | 1669 | 370 |
| Citicorp Vendor Finance | Ricoh Copier at IMG | 3227551 | | P O BOX 7247-0322 | Philadelphia | PA | 19170-0322 | 578 | 3021 |
| Citicorp Vendor Finance | Panasonic Faxes | 037-1706285-000 | | P O BOX 371992 | Pittsburgh | PA | 15250-7992 | 0 | 451 |
| Fleet Capital Leasing | Harrisburg | 9047715 | | | | PA | 17055 | 82 | 451 |
| Forklifts Inc. | Harrisburg | ext. of 9047715 fr Mey | | | | | | 42 | |
| Fencodyn-Postable Inc. | Hawaii | 285143 | | P.O. Box 4272 | | FL | 60188 | | |
| Hewlett Packard Financial | Computers- IMG - CCGS | 500125133 | | P.O. Box 402035 | Atlanta | GA | 30353-0101 | 3828 | 8617 |
| Insight Global Finance | Computers and Equipment | 180282 | | 21716 NETWORK PLAC | Chicago | IL | 60673-1211 | 7356 | 6624 |
| Insight Global Finance | Computers and Equipment | 180282 | | 21716 NETWORK PLAC | Chicago | IL | 60673-1211 | 4312 | 2764 |
| Insight Global Finance | Computers and Equipment | 180282 | | 21716 NETWORK PLAC | Chicago | IL | 60673-1211 | 1392 | 8269 |
| Insight Global Finance | Marketing | 0052405-001 | | 21716 NETWORK PLAC | Chicago | IL | 60673-1211 | 3788 | 735 |
| Marlin Leasing | Hitachi Kids Imaging | 0107-843 | | P.O. Box 1350450280 | Philadelphia | PA | 19101-3804 | 378 | 4760 |
| OFC Capital | Computers? | 0205582 | | 576 Colonial Park Drive | Roswell | GA | 30075 | | 4660 |
| OFC Capital | Rampage Systems | 0010017 | | 576 Colonial Park Drive | Roswell | GA | 30353-0101 | | 27490 |
| OFC Capital | US Office Solutions | 02020021 | c/o Alte Financial | P O BOX 530101 | Atlanta | GA | 30353-0101 | | 780 |
| PBCC | Mail Room Equipmt | B19222E2 | DEPT GA0010 | P O BOX 856460 | LOUISVILLE | KY | 40285-6460 | 1243 | |
| PBCC | Mail Room Equipmt | 51922B2 | | P O BOX 856460 | LOUISVILLE | KY | 40285-6460 | 1242 | |
| PBCC | Anaheim, CA. | 5310754 | | P O BOX 856460 | LOUISVILLE | KY | 40285-6460 | 2685 | 447 |
| PBCC | Mailing – East Sales | 4069826 | | P O BOX 856460 | LOUISVILLE | KY | 40285-6460 | 182 | 304 |
| PBCC | Mailing – IMG - | D384B9B | | P O BOX 856460 | LOUISVILLE | KY | 40285-6460 | 260 | 270 |
| Pitney Bowes Inc. | Mailing – Eastern Service | 1539C186096 renew each quarter | | P O BOX 856460 | LOUISVILLE | KY | 40285-6460 | 298 | 0 |
| | | | | | | | | 58 | |

## RIDER TO EXHIBIT 1

In addition to the Cure Amounts set forth in Exhibit 1 attached hereto, the Debtors, subject to the aggregate cap of $500,000 set forth herein, shall pay all post-petition amounts due (such amounts to be determined after giving effect to any credits under the Assumed Leases and any right of setoff of the Debtors) under the Assumed Leases as of the closing of the Sale, with Presstek and/or Silver responsible to pay all such amounts in excess of the aforementioned cap of $500,000; provided, however, that liability for rent under the Assumed Leases shall be pro rated between the Debtors and Presstek and/or Silver based on the actual date of the closing of the Sale.

B302