

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              :      Chapter 11
                                    :
A.B. Dick Company, Inc.,            :
                                    :
        Debtor(s).                  :      Bankruptcy #04-12002 (JLP)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Wilmington, DE
November 2, 2004
2:00 p.m.

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE JOHN L. PETERSON
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor(s):          Frederick B. Rosner, Esq.
                            Jaspan Schlesinger Hoffman, LLP
                            1201 North Orange Street-Ste. 1001
                            Wilmington, DE 19801

                            H. Jeffrey Schwartz, Esq.
                            Benesch Friedlander Coplan
                            & Aronoff, LLP
                            2300 BP Tower
                            200 Public Square
                            Cleveland, OH 44114

                            John F. Stock, Esq.
                            Benesch Friedlander Coplan
                            & Aronoff, LLP
                            88 E. Broad St.-Ste. 900
                            Columbus, OH 43215

                            Mark A. Phillips, Esq.
                            Benesch Friedlander Coplan
                            & Aronoff, LLP
                            2300 BP Tower
                            200 Public Square
                            Cleveland, OH 44114

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191



B303

2

| | | |
|---|---|---|
| 1 | For The Official Committee: | James P. Ricciardi, Esq. |
| | of Unsecured Creditors | McGuire Woods, LLP |
| | | 77 West Wacker Drive-Ste. 4100 |
| 2 | | Chicago, IL 60601 |
| 3 | | James Joseph, Esq. |
| | | McGuire Woods, LLP |
| 4 | | Dominion Tower |
| | | 625 Liberty Ave.-23rd Fl. |
| 5 | | Pittsburgh, PA 15222 |
| 6 | | Ronald W. Crouch, Esq. |
| | | McGuire Woods, LLP |
| 7 | | Dominion Tower |
| | | 625 Liberty Ave.-23rd Fl. |
| 8 | | Pittsburgh, PA 15222 |
| 9 | | Jeffrey Schlerf, Esq. |
| 10 | | The Bayard Firm |
| | | 222 Delaware Ave.-Ste. 900 |
| 11 | | Wilmington, DE 19801 |
| 12 | For MHR Entities: | Megan N. Harper, Esq. |
| | | Landis Rath & Cobb, LLP |
| 13 | | 919 Market Street |
| | | Wilmington, DE 19899 |
| 14 | | David S. Rosner, Esq. |
| 15 | | Kasowitz Benson Torres |
| | | & Friedman, LLP |
| 16 | | 1633 Broadway |
| | | New York, NY 10019 |
| 17 | | Michael M. Fay, Esq. |
| 18 | | Kasowitz Benson Torres |
| | | & Friedman, LLP |
| 19 | | 1633 Broadway |
| | | New York, NY 10019 |
| 20 | For Key Bank: | Margaret M. Manning, Esq. |
| 21 | | Buchanan Ingersoll, PC |
| | | The Nemours Building |
| 22 | | 1007 North Orange Street-Ste. 1110 |
| | | Wilmington, DE 19801 |
| 23 | | |
| 24 | | |
| 25 | | |

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

3

```
 1                              Robert Folland, Esq.
                                Thompson Hine, LLP
 2                              3900 Key Center
                                127 Public Square
 3                              Cleveland, OH 44114

 4                              Alan R. Lepene, Esq.
                                Thompson Hine, LLP,
 5                              3900 Key Center
                                127 Public Square
 6                              Cleveland, OH 44114

 7   For Presstek, Inc.:        Stephen B. Selbst, Esq.
                                McDermott Will & Emery
 8                              50 Rockefeller Plaza
                                New York, NY 10020
 9
                                Gary O. Ravert, Esq.
10                              McDermott Will & Emery
                                50 Rockefeller Plaza
11                              New York, NY 10020

12                              Francis A. Monaco, Jr., Esq.
                                Monzack & Monaco, PA
13                              400 Commerce Center
                                Twelfth & Orange Streets
14                              Wilmington, DE 19899

15   For Mitsubishi:            Thomas G. Whalen, Jr., Esq.
                                Stevens & Lee, PC
16                              300 Delaware Ave.-Ste. 800
                                Wilmington, DE 19801

17                              Robert Lapowsky, Esq.
                                Stevens & Lee, PC
18                              1818 Market Street-29th Fl.
                                Philadelphia, PA 19103
19
20   For Data Card:             Karen McKinley, Esq.
                                Richards Layton & Finger
21                              One Rodney Square
                                Wilmington, DE 19899
22
     For Citicapital:           John Weaver, Esq.
23                              Farr Burke Gambacorta
                                & Wright, PC
24                              211 Benigno Blvd.
                                Bellmawr, NJ 08099
25
```

B305

4



```
 1                                    Sergio Scuteri, Esq.
                                      Farr Burke Gambacorta
 2                                    & Wright, PC
                                      211 Benigno Blvd.
 3                                    Bellmawr, NJ 08099

 4    For Brown Gibbons:             Jeffrey C. Wisler, Esq.
                                      Connolly Bove Lodge
 5                                    & Hutz, LLP
                                      1007 N. Orange St.
 6                                    Wilmington, DE 19899

 7    For Squire Sanders:            Philip Trainer, Jr., Esq.
                                      Ashby & Geddes
 8                                    222 Delaware Ave.-17th Fl.
                                      Wilmington, DE 19899

 9                                    Victoria W. Counihan, Esq.
10    For Comvest:                   Greenberg Traurig
                                      The Brandywine Bldg.
11                                    1000 West Street-Ste. 1540
                                      Wilmington, DE 19801

12                                    Allen G. Kadish, Esq.
13                                    Greenberg Traurig
                                      Metlife Bldg.
14                                    200 Park Ave.
                                      New York, NY 10166
15
      For N.E.S. Investment:         David Stratton, Esq.
16                                    Pepper Hamilton, LLP
                                      Hercules Plaza
17                                    1313 Market st.-Ste. 5100
                                      Wilmington, DE 19899
18
      For Individual 3rd Party:      Ray Lemisch, Esq.
19    Defendants                     Adelman Lavine Gold
                                      & Levin, PC
20                                    1900 Two Penn Center
                                      Philadelphia, PA 19102
21
      For ESCO Graphics, Inc,:       Christopher D. Loizides, Esq.
22                                    Loizides & Associates
                                      1225 King Street
23                                    Wilmington, DE 19801

24

25
```

B306



5

| | | |
|---|---|---|
| 1 | For Acting U.S. Trustee:<br>(Roberta A. DeAngelis) | David Klauder, Esq.<br>U.S. Trustee's Office |
| 2 | | 844 King Street-Ste. 2313<br>Lock Box 35 |
| 3 | | Wilmington, DE 19801 |
| 4 | Audio Operator: | Brandon J. McCarthy |
| 5 | Transcribing Firm: | Writer's Cramp, Inc.<br>6 Norton Rd. |
| 6 | | Monmouth Jct., NJ 08852<br>732-329-0191 |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

B307

6

```
              Index                                    Further
                     Direct  Cross  Redirect  Recross  Redirect

Witnesses For The
 Debtor:

  Mr. Gray
   (by Mr. Stock)        30              107
   (by Mr. D. Rosner)           54
   (by Mr. Crouch)              97
   (by Mr. Selbst)             106

  Mr. Polleck
   (by Mr. Phillips)    110
```

| EXHIBITS: | | Marked | Received |
|---|---|---|---|
| C-1 | Waterfall analysis | 99 | |
| MHR-A | Candlewood analysis | 71 | |
| MHR-B | Stock Purchase Agreement | 87 | |
| D-1 | Paragon forecast, August 2004 | 33 | 35 |
| D-2 | Paragon financial performance | 38 | |
| D-3 | Bid Procedures Order | 40 | |
| D-4 | D-I-P Order | 41 | |
| D-5 | Asset Purchase Agreement | 44 | |
| D-6 | Letter of interest | 48 | |
| D-7 | Letter of interest | 50 | |

B308

7

THE CLERK:  All rise.  The United States Bankruptcy
Court for the District of Delaware is now in session, the
Honorable John L. Peterson presiding.

THE COURT:  You may be seated.  Thank you.

MR. F. ROSNER:  Good afternoon, Your Honor.  My name
is Fred Rosner.  I'm with the law firm Jaspan Schlesinger
Hoffman here in Wilmington, Delaware, Delaware counsel to the
Debtors.  First I'd like to start the agenda by welcoming Your
Honor to Wilmington.  As you can see, I've arranged for the
entire Bankruptcy Committee -- community to come out and meet
you.  So --

THE COURT:  I wonder if we should pass around the
voting, get them out to vote.

(Laughter)

THE COURT:  Has everyone signed the appearances
schedule?  Anyone else?  {We don't have anybody on the phone?}

UNIDENTIFIED SPEAKER:  Yes.

THE COURT:  Do we?

MR. F. ROSNER:  While Mr. Loizides is signing in I'd
like to first confirm that Your Honor has received the
voluminous second amended agenda for today's hearing.  The
centerpiece will be the sale hearing, and I'm going to speak to
that in a moment, but let me just confirm that Your Honor has
received the three binders and the second amended agenda.

THE COURT:  Right.  I've got that and then the latest

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

B309

8

1  filing was the motion of Presstek for an order granting

2  authority.  That's the last filing I got.

3         MR. F. ROSNER:  That's correct, Your Honor, that's

4  correct.  And I thought it might be appropriate before we head

5  into the second amended agenda for me to make some

6  introductions, first with those persons who are in the

7  Courtroom, and then with those persons who are participating by

8  telephone.  Let me move ahead with that, Your Honor.  Let me

9  introduce my co-counsel from the Benesch Friedlander firm in

10  Ohio, first identifying Mr. Jeffrey Schwartz.

11         THE COURT:  How are you?

12         MR. SCHWARTZ:  Good afternoon, Your Honor.

13         MR. F. ROSNER:  Mr. Mark Phillips.

14         MR. PHILLIPS:  Good afternoon, Your Honor.

15         MR. F. ROSNER:  Mr. John Stock, Mr. John Gleason.

16         MR. GLEASON:  Good afternoon, Your Honor.

17         MR. F. ROSNER:  Your Honor, also on behalf of the

18  Debtors are certain crisis managers.  They are the recovery

19  group, also known as TRG, and they were retained at the outset

20  of the case, and today with me in the Courtroom is Mr. Steven

21  Gray, who's the Chief Structuring Officer of the Debtors.  Also

22  Mr. John Calabrise with TRG as well, Assistant Chief

23  Restructuring Officer.  Also for part of the Debtors'

24  professional team from Candlewood Partners for the Debtors'

25  financial advisors in this case, Mr. Glen Polleck, and Ms.

B310

1  Lynn Carpenter.  Now, Your Honor, also from the Debtors we have

2  Mr. Jeffrey Herden, who's the corporate secretary of A.B. Dick,

3  not yet in attendance, and Mr. Gregory Knipp, who's the Chief

4  Financial Officer of the Debtors.  I thought now I would cede

5  the podium and let others introduce parties who will be

6  participating in today's hearing in the Courtroom.

7          THE COURT:  All right.

8          MR. RICIARDI:  Your Honor, James Ricciardi of McGuire

9  Woods on behalf of the Creditors Committee, and together with

10  me, James Joseph of our Pittsburgh office, and Jeffrey Schlerff

11  the Bayard Firm.

12          THE COURT:  Okay.

13          MR. LEPENE:  Good afternoon, Your Honor, Alan Lepene

14  with the law firm of Thompson Hine.  With me is Robert Folland

15  of Thompson Hine, and we are here on behalf of Key Bank.

16          MR. D. ROSNER:  Good afternoon, Your Honor, David

17  Rosner, I'm here with my partner, Michael Fay, Kasowitz Benson

18  Torres & Friedman on behalf of the MHR entities, and we're also

19  here with our co-counsel, Megan Harper of the Landis Rath &

20  Cobb firm, which is Delaware counsel.  Megan's right over

21  there.

22          MR. MONACO:  Good afternoon, Your Honor.  For the

23  record Frank Monaco for Presstek.  Your Honor, I'd like to

24  introduce my co-counsel, Stphen Slebst of McDermott Will &

25  Emory.  He has previously been admitted pro hac vice, and also

10

1   two other attorneys from his firm, Gary Ravert and Larry

2   Slattery, and I would like to move their admission pro hac

3   vice. They're both members in good standing of the bar in the

4   state of New York, and I will be following up with written

5   papers today.

6           THE COURT: All right.

7       MR. MONACO: Thank you.

8       MR. LAPOWKY: Good afternoon, Your Honor, Robert

9   Lapowsky from Stevens & Lee representing Mitsubishi Imaging,

10  and with me today is Bob Whalen from our Wilmington office.

11      MR. F. ROSNER: Your Honor, Fred Rosner returning to

12  the podium. Maybe the persons who are participating

13  telephonically can identify themselves and who they represent.

14      MR. FIRESTONE: Your Honor, my name is David

15  Firestone, and I am participating because my 91-year-old mother

16  is one of the 39 beneficiaries of a retiree health insurance

17  policy through A.B. Dick.

18          THE COURT: All right.

19      MR. F. ROSNER: Anybody else participating

20  telephonically?

21          THE COURT: Anyone else on the phone?

22      MR. CLYDEMAN: Yes, this is Carl Clydeman from

23  Comvest Investment Partners.

24      MR. F. ROSNER: Your Honor, in respect of

25  Mr. Firestone's participation, he is more than welcome to stay

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

B312

11

1   on the line and listen in, but I'll note for the record that

2   the motion that he may be interested in has been withdrawn by

3   the Debtors without prejudice, and that's the Motion to

4   Terminate Certain Retiree Benefits pursuant to section 1114,

5   and there were --

6         THE COURT:  Do you hear that, Mr. Firestone?

7         MR. FIRESTONE:  Yes.  Your Honor, the only reason

8   that I asked to participate, I know the motion has been

9   withdrawn, but at the October 5th hearing there was a

10  discussion in which Judge Case indicated the possibility that

11  perhaps something might be able to be worked out so that this

12  small number of very elderly retirees would have something

13  other than a termination of their benefits, and I think this

14  hearing, the November 2nd hearing, was said to be something

15  where the status of any such possible arrangement, negotiations

16  or whatever would be discussed, and that's why I asked for

17  (indiscern.).

18        THE COURT:  All right.

19        MR. F. ROSNER:  Well, Your Honor, those motions have

20  been withdrawn without prejudice and the focus now is on the

21  sale hearing, so the Debtors do not intend to present any kind

22  of status report on that, but certainly Mr. Firestone will be

23  fully in the loop when and if we take up that motion.  We're

24  not going forward on it today.  That's been withdrawn.

25        THE COURT:  What's going to be the status of those

B313

12

1  health plans then?

2      MR. F. ROSNER:  I think we need to first proceed

3  through the Sale Motion and let the dust settle a little bit,

4  and then we will address those issues with the other Key

5  Creditor constituencies that have interest in the cash.

6      THE COURT:  All right.  Let's go through the sale.

7      MR. F. ROSNER:  All right, Your Honor.  That would

8  then, just for the record, items #3 and 10 are both withdrawn

9  and are not going forward today, and those were both section

10  1114 Motions.  Your Honor, a brief indulgence.  I've been

11  asked, one of the items on the agenda, it's item #8, and we had

12  indicated that it was gonna be a status conference in the

13  adversary, but the parties have agreed not to go forward with

14  the status conference at this time, and so there's some

15  attorney's who'd like to perhaps be excused, if we could just

16  put that off, and then we'll reinstitute it after we get input

17  from the parties to the allegation.

18      THE COURT:  All right.

19      MR. F. ROSNER:  I'll invite anybody who wants to make

20  a statement with respect to item #8, but I think that's the

21  status, that it's not going forward today.

22      ALL:  (No verbal response).

23      MR. F. ROSNER:  Hearing nothing, shall we then, Your

24  Honor, proceed to the Sale Motion?

25      THE COURT:  Yes.

B314

13

1   MR. F. ROSNER:  I'll cede the podium to my colleague,
2   Mr. John Stock.
3   THE COURT:  I guess that's where the most interest is
4   isn't it?
5   MR. F. ROSNER:  I think so, Your Honor, I think so.
6   Thank you.  You know what, Your Honor, I apologize.  I was
7   premature in ceding the podium.  Let me do something that will
8   be in the nature of an introduction to the Sale Motion.  Your
9   Honor, on September 15th of this year Judge Case signed an
10  amended Bid Procedure Order that authorized the sale, and that
11  amended order provided the following deadlines that qualifying,
12  competing bids were to be submitted no later than October 27th,
13  2004, and the auction would be conducted on October 29th, 2004,
14  subject to any continuances that the Debtors may indicate.
15  Your Honor, we did not receive any qualifying bids in response
16  to the solicitation made for such bids.  The auction was, as an
17  accommodation to some, adjourned from October 29th, but was
18  conducted on November 1 in Wilmington, Delaware at my office.
19  The auction was opened, and at that time Presstek, or its
20  designee, made certain improvements to its bid.  What I'd like
21  to do is recite those improvements for the record, and
22  certainly invite the other interested parties to chime in with
23  necessary clarifications.  Perhaps, Your Honor, Mr. Selbst,
24  who's the primary counsel to Presstek, could join me at the
25  podium and make them as we go along.  Your Honor, the first bid

B315

14

1   improvement is that the sale closing will occur no layer than

2   November 5th, this Friday.  The second is that Presstek will

3   assume the responsibility of paying all cure amounts necessary

4   in connection with the assumption and assignment of executory

5   contracts, except for an aggregate amount of $500 thousand in

6   cure costs that relate to certain unexpired leases, and the

7   identity of those leases will be provided by Presstek today.

8   Your Honor, Presstek further will assume responsibility for all

9   medical (indiscern.) liabilities for current employees.  Let me

10  identify what I mean by current employees.  Those are employees

11  that were employed at the Debtors as of the petition date and

12  all subsequent hires.  Your Honor, Presstek also improved its

13  bid by including the pre-paid inventory deposits in full in the

14  calculation of working capital required to meet the net working

15  capital test, which is included as part of the Presstek Asset

16  Purchase Agreement.  Presstek will be solely responsible if it

17  wishes to take over what we'll call the Oji contract, that's

18  O-J-I, and that is a contract between the Debtor and a Japanese

19  supplier of paper, and that will be Presstek's responsibility.

20  Presstek further will assume responsibility for paying

21  outstanding sales commissions in an amount up to $425 thousand.

22  There were some changes to certain of the conditions precedent

23  to proceeding with the Asset Purchase Agreement, and let me

24  explain.  It will now be a condition subsequent for the year

25  2003 audit to be completed and the year 2004 financial review

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

B316

1  of the Debtors to be completed.  So those will be post-closing

2  conditions provided that those reviews and audits will be

3  conducted within a reasonable period of time.  Your Honor, the

4  consent required by the foreign subsidiaries will be made a

5  post-closing condition, and again, those will be provided

6  within a reasonable period of time.  Your Honor, if the sale's

7  approved it's agreed that no more than $3.2 million of sale

8  proceeds will be allocated to the Canadian -- A.B. Dick Canada,

9  the Canadian subsidiary entity.  Your Honor, in addition, the

10  Debtors will provide reasonable access to Presstek to their

11  business records following the closing so that Presstek can,

12  you know, operate the company in a seamless manner and continue

13  on with the Debtor's business without interruption, and we will

14  work out with Presstek sort of a prorated -- between now and

15  the closing if the sale is approved, a prorated payment of the

16  lease payments that are due and owed so the costs will be

17  covered between now and the closing.  So, based on the

18  improvements to the Presstek bid the auction was conducted.  As

19  I mentioned, there were no other qualifying bids.  The bid was

20  accepted by the Debtor, and the auction was closed.  And let me

21  cede the podium now to Mr. Selbst or other parties who wish to

22  chime in on the bid improvements, I'll call them.

23       MR. SELBST:  Your Honor, Stephen Selbst for

24  Presstek.  I just have two clarifications.  I think Mr. Rosner

25  inadvertently misspoke.  The understanding with respect to the

16

1  Debtor's business records, those records will be transferred to

2  Presstek if it's the winning Buyer, but what we have agreed

3  with the Debtors and the Committee is that we will provide the

4  Debtors and the Committee access to those records if they need

5  them for purposes of prosecuting the Estate causes of action or

6  other purposes, and I think Mr. Rosner may have misstated that.

7  And secondly, I think there may have been a slight

8  misunderstanding about the real estate cures.  My understanding

9  is the agreement that was reached between Presstek and the

10 Debtors was that in the event that those real estate cures, the

11 cost of those cures exceed $500 thousand that is the Debtor's

12 responsibility and not Presstek's, on these specified leases.

13      MR. F. ROSNER:  Your Honor, Fred Rosner again.  I'll

14 confirm those clarifying remarks, and you'll hear in the course

15 of the testimony that the improved Presstek bid resulted in

16 substantial additional value flowing to the Estates.  With

17 that, Your Honor, I'll cede the podium to my colleague,

18 Mr. John Stock.

19      MR. STOCK:  Good afternoon, Your Honor.  John Stock

20 from Benesch Friedlander.  I will be handling in part the

21 Debtor's Sale Motion this afternoon.  From my office as well,

22 Mr. Mark Phillips will be handling the latter part of the

23 motion.  We intend to have two witnesses today.  Your Honor,

24 the first witness is the Chief Restructuring Officer, Steven

25 Gray.  The Debtor's -- the second witness will be Mr. Glen

B318

1    Polleck, the Financial Advisor to the Debtor.

2            THE COURT:  You may proceed.

3            MR. STOCK:  Thank you, Your Honor.  Your Honor, this

4    motion comes before you filed July 22 of this year.  It's a

5    motion for an order authorizing the sale of substantially all

6    of the assets of A.B. Dick and its subsidiaries.  Those would

7    be the domestic assets.  They will include substantial assets

8    of the Canadian subsidiary.  In addition, the stock of a

9    British subsidiary.  Both the Canadian and the British

10   subsidiaries are not Debtors in these cases.  The motion is to

11   sell those assets free and clear of liens, claims, and

12   encumbrances.  In addition we seek authority to assume and

13   assign certain unexpired leases and executory contracts.  Mr.

14   Gleason of our office, should issues arise regarding the status

15   of executory contracts, will address that issue.  And finally,

16   granting related relief, primarily, waiver of the 10-day stays

17   of bankruptcy rules 6004(g), 6006(d).  I am happy and more than

18   a little relieved to report that today's motion is supported

19   not only by the Debtors but by the Creditors Committee, who was

20   a substantial and formidable opponent during the bid procedures

21   hearing.  It is supported as well by Key Bank, the Senior

22   Secured Lender, provided operating capital, and is owed, I

23   believe, approximately $23 million or thereabouts.  And it is

24   supported by both Presstek and Key Bank as the D-I-P Lenders,

25   which is an important piece of the calculus that we're about

1  here today, Your Honor.  The sale is pursuant to an Asset

2  Purchase Agreement, a stalking horse bid process that was

3  approved by Judge Case in this case after hearing on August 23.

4  There were contentious objections and evidentiary hearing that

5  took the better part of a day and took us into, I believe,

6  about 7:30 in the evening, vigorous cross examination of our

7  witnesses, and arguments of counsel, and the Court authorized a

8  sale procedure for us to use the Presstek $40 million stalking

9  horse bid as the vehicle to market the assets.  The market has

10  spoken, Your Honor.  Those assets have been marketed

11  vigorously, as you will hear today from Mr. Polleck, and the

12  market says that the $40 million bid, now with improvements, is

13  the best there is.  You will hear lots of opinions today from

14  counsel from all corners, possibly, opinions regarding value,

15  what should be done, what should not be done.  There's only one

16  market determination, and we have that market determination.

17  The $40 million bid as improved is what the market has

18  determined, not opinion, what the market has determined is the

19  value of these assets.  As the Court specifically found in its

20  August 23 Sales Procedure Order, the Court finds, paragraph

21  3, "Approval of the bidding procedures as requested in the

22  motion and as modified herein is in the best interests of the

23  Debtor's Estates because the bidding procedures will facilitate

24  orderly marketing and bidding for the assets, and will thereby

25  maximize the value of the assets and recoveries to the Debtor's

19

1   Creditors." That finding has been made in this case. The bid
2   procedure with the $40 million Presstek stalking horse was
3   fully vetted by Judge Case, was fully litigated, and the case
4   -- the Judge specifically found that the procedure, if
5   implemented, would maximize the value of the assets recoveries
6   to the Debtor's Creditors. And it has done so, Your Honor.
7   The market has spoken. You will hear that the marketing
8   process was fully implemented. Mr. Polleck and his colleagues
9   at Candlewood approached 219 strategic and financial potential
10  Buyers to receive teasers, written teasers, and then follow-up
11  calls to every one of them. Over 60 Confidentiality Agreements
12  were executed. There were 5 actively interested parties.
13  Discussions were engaged in, meetings were had, and by bid
14  deadline we had one qualified bid and two conditional
15  indeterminate, not determined, not definite, letters of
16  interest that were not higher or better, and did not provide
17  for purchases of the assets of the Debtors. The maximum value
18  to be obtained for these assets is the Presstek deal as
19  improved. The market has spoken, and that's critical. United
20  States Supreme Court has told us in the Lasalle case, 1999, the
21  market determines value, highest and best value, and the Court
22  said in reviewing the challenge to a distribution of rights
23  under the Absolute Priority Rule, "Under a plan granting an
24  exclusive right making no provision for competing bids or
25  competing plans any determination that the price was top dollar

B321

1  would necessarily be made by a Judge in Bankruptcy Court,
2  whereas the best way to determine value is exposure to the
3  market." This is a point of some significance since it was,
4  after all, one of the Code's innovations to narrow the
5  occasions for Courts to make valuation judgments. Your Honor,
6  there is no need today, and we're not going to ask the Court to
7  accept some interested party's opinion as to value. We're
8  going to ask the Court to accept the market's determination of
9  value. These assets, pursuant to Judge Case's directions, have
10  been fully marketed, the bid procedure has been implemented,
11  and the market has spoken, and we have the full support of the
12  Creditors Committee, the Senior Secured Creditors, and we have
13  only one, what I would call substantively objecting party, and
14  I will address that party toward the end of my remarks. Your
15  Honor, it is imperative that the Presstek deal, for now
16  something substantially over $40 million, be approved today.
17  Your Honor unfortunately, hasn't had the opportunity to be in
18  this case prior to today and hear the history of how this
19  company got to be in bankruptcy. You will hear some of that
20  today from the Chief Restructuring Officer, Mr. Gray. At the
21  sales procedure hearing on October -- August 23, excuse me,
22  Greg Knipp, K-N-I-P-P, the CFO of the company, told the Court
23  how this company reached financial crisis and needed to go into
24  bankruptcy immediately because it could not pay its operating
25  expenses. It was overdrawn by close to $3 million on its

21

1  lending facility and asset-base lending facility from Key Bank,

2  and when Key Bank said there is no more money, the Debtor had

3  no available alternatives to make its $2.6 million monthly

4  payroll.  Accordingly, in the D-I-P Financing Order entered by

5  this Court on page 7 the Court specifically found that, "A

6  critical need exists for the Debtors to continue to borrow

7  funds in order to continue the operation of their business

8  pending the proposed sale.  Without such funds the Debtors will

9  not be able to pay their payroll and other direct operating

10 expenses and obtain goods and services needed to carry on their

11 businesses during this sensitive period prior to the proposed

12 sale in a manner that will avoid irreparable harm to the

13 Debtor's Estates, Creditors, customers, and employees."  As the

14 Debtors have operated in bankruptcy they're still operating

15 under water.  They have drawn down over $4.8 million in the

16 D-I-P funding to finance their operations, Your Honor.  The

17 D-I-P financing matures on November 15th.  These Debtors cannot

18 operate and pay bankruptcy expenses as they continue to mount

19 without D-I-P financing.  They've lost approximately $1.9

20 million in July, $1.6 million in August, and a little over 670

21 thousand in September.  These companies cannot operate and fund

22 this bankruptcy from cash collateral.  Presstek wants to close

23 this deal by Friday.  It provides millions of dollars in

24 additional value to the Debtors, and it saves the Debtors

25 millions of dollars of additional expense.  If the deal does

*Writer's Cramp, Ina.*
*Certified Court Transcribers*
*732-329-0191*

1   not close by Friday the 5th and is extended out to November 15

2   the Debtors incur millions of additional expenses that must be

3   paid in the interim.  If the D-I-P financing matures and the

4   sale is not consummated and that financing is not replaced, and

5   we have no deal to do so as we speak, other than the Presstek

6   deal to sell the assets, which is in the best interest of the

7   Estate, we are looking at a piecemeal liquidation potentially,

8   with a substantially lower value in the range of $11 to $20

9   million, as opposed to over $40 million for the going concern

10  value in the Presstek deal.  In short, we have the risk of

11  administrative insolvency.  Your Honor, Mr. Rosner has

12  described to you the current state of the deal with Presstek.

13  I'd like to briefly address the two alternative expressions of

14  interest, if you will.  If first from Comvest Investment

15  Partners.  That is comprised, Your Honor -- and excuse me a

16  moment while I pick it up -- that is comprised, Your Honor, of

17  an October 26, 2004, letter identifying itself as

18  an "indication of interest" subject to diligence, negotiation,

19  and refinement.  It's not a binding bid.  We did not get a

20  valid binding bid.  It proposes replacement D-I-P financing

21  upon approval of the Court with respect to terms.  Again,

22  subjective and conditional.  It proposes that a confirmable

23  plan would be put together, a process that would take months.

24  It proposes using Key Bank or another lender as the primary

25  Secured Lender to provide operating funds.  Key Bank will not

1  continue to lend, and no other lender is committed.  The

2  Debtors are already over-leveraged.  They're not putting any of

3  their own new money into it other than to suggest a replacement

4  of the D-I-P, for which they'd get a $50 thousand monthly fee,

5  a commitment fee for the D-I-P, which is at an undetermined

6  amount, a $500 thousand break-up fee, a commitment that the

7  Debtors and the Committee could not continue to market the

8  assets of the Debtors, negotiate better deals with Presstek or

9  other bidders, and in the letter as submitted, a release of

10 Presstek whom they charge primary objection anyway.  Your

11 Honor, with respect to the other letter of interest, it's from

12 Harbor Partners, and it is nothing more than simply a letter

13 expressing some interest.  In delving behind it we find no

14 commitment at this point on the financing.  It's just an

15 expression of interest.  The business judgment which applies to

16 this case of both management, Mr. Gray, and the professional,

17 Mr. Polleck, both his business judgment and his professional

18 judgment, is that the $40 million-plus Presstek deal is vetted

19 in the market as determined by the market to be the highest and

20 best value, is in fact, the highest and best value, and it is

21 in the interest of the Estates to accept that deal and to close

22 that deal with approval from the Court.  Quickly, Your Honor, I

23 will run through the four prongs of the applicable business

24 judgment rule to be applied to this sale.  One, can the Debtors

25 articulate a rational business reason?  And they certainly

B325

1  have, Your Honor.  They've put these assets to the test in the

2  market.  The $40-plus million Presstek deal has been determined

3  by the market, again, not merely opinion, has been determined

4  by the market to be the highest and best value.  Second, is the

5  notice of the sale adequate?  The sale, proposed sale, has been

6  published in the Wall Street Journal and a trade journal

7  pursuant to a notice approved by the Court.  It's been noticed

8  to all Creditors and parties-in-interest, and those

9  demonstrating interest during the marketing.  Number three, is

10  the price fair and reasonable?  Again, we go back to what has

11  the market determined?  Not what is the opinion of the Debtors,

12  or what is the opinion of MHR.  What has the market determined?

13  The market's determined the 40 million-plus deal, cash-in-hand

14  by Friday is the best deal.  Finally, the good faith of the

15  Purchaser, and this is the issue on which MHR really presses

16  its objection, and Your Honor, MHR is the only one standing

17  making an objection today.  We had some objections of record

18  from parties to contracts that were to be assumed or assigned.

19  Those objections were in connection with the handling of their

20  contract.  They were not objections standing alone from those

21  or in principle against the sale.  The good faith of the

22  Purchaser, Your Honor.  We believe under the applicable law we

23  must establish two things.  One, there's been arm's length

24  negotiation of this transaction.  Mr. Polleck, at the sale

25  proceedings -- sale procedures hearing, testified about the

25

1  arm's length negotiations of the original Asset Purchase
2  Agreement.  Since then, with the input from the Committee and
3  other interested parties there have been additional
4  negotiations to improve the original Presstek stalking horse
5  bid and is now well over $40 million.  Second, is there
6  transactional fairness?  And the Court need go no further than
7  Judge Case's August 23 decision about this sale process to
8  conclude that there is transactional fairness, and Your Honor,
9  I would like to -- again, you have not had the opportunity to
10 be present during that hearing, to highlight for the Court
11 Judge Case's findings regarding the transactional fairness of
12 the sale procedure he approved, and he stated, "With regard to
13 the other open issue, which is the question of bid protections,
14 well, the whole overall question of bid procedures, there was a
15 substantial number of modifications made also to that" -- he's
16 referring to the Asset Purchase Agreement -- "the most
17 significant of which, in my view, are the lengthening of the
18 time that the assets will be marketed and the extension until
19 October 27th of the bid due date.  October 29th is the auction
20 date and November 15th is the closing.  Again, I think that
21 this company was operated on a very -- this procedure was
22 compacted, and I do think that that significantly improves the
23 possibility of having an increased return to the Debtor where
24 in the absence of any other viable bids by any other entity, at
25 least I think it provides an adequate period of time for the