78

1    MR. STOCK: -- to the status of that? Federal Cobra

2 Rights is what I hear Mr. Schwartz saying.

3    THE COURT: What is it?

4    MR. STOCK: Federal Cobra Rights. Can you address

5 that, Jeffrey?

6    MR. SCHWARTZ: Good morning, Your Honor, Jeffrey

7 Schwartz of Benesch Friedland on behalf of the Debtors-In-

8 Possession. We had filed, to answer your question directly,

9 the APA does not contain a provision assuming retiree welfare

10 benefit plan obligations of the Estate. We had previously

11 filed a motion to terminate that welfare benefit plan. The

12 amount in controversy was relatively not substantial so when

13 that gentleman who phoned in earlier raised an objection at

14 first we're just gonna carry the motion, and then we decided to

15 just withdraw it, and then see what the outcome of the sale

16 process was, and then based on the sales proceeds and so forth

17 revisit that. So, to answer Your Honor's question directly and

18 clearly, this sale does not contain an assumption of any

19 retiree benefit plan of the obligations of the Estate

20    THE COURT: Okay.

21    MR. SCHWARTZ: Thank you. Your Honor

22    MR. STOCK: I have no further comments, Your Honor,

23 thank you.

24    THE COURT: All right. Anyone else?

25    MS. MCKINLEY: Briefly, Your Honor. My name is Karen

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

79

1  McKinley from Richards Layton & Finger on behalf of Data Card
2  Corporation.  Data Card Corporation filed an objection to the
3  sale to protect its rights in an Escrow Agreement -- I'm sorry,
4  an escrow which was entered in pursuant to an agreement between
5  Data Card and Multigraphics, which was one of the Debtors.  If
6  the Debtors will represent on the record that the sale will
7  have no effect to the escrow we can withdraw our objection.
8          MR. GLEASON:  Yes, again, Your Honor, John Gleason on
9  behalf of the Debtors.  I spoke with someone representing Data
10 Card as well as the State of Ohio, who had also filed a similar
11 objection, and we did agree to say for the record that the
12 sale, if approved by Your Honor, will not affect the escrow --
13         THE COURT:  Does that have to do with that
14 environmental escrow claim?
15         MR. GLEASON:  Yes, and it is not affecting that
16 escrow.
17         THE COURT:  All right.
18         MS. MCKINLEY:  Thank you, Your Honor.
19         THE COURT:  Final speech.
20         MR. RICCIARDI:  Your Honor, may we request a brief
21 recess?
22         THE COURT:  I want to see a proposed Order.  I'm
23 going to be leaving here early tomorrow morning.
24         MR. SCHWARTZ:  Yes, Your Honor, we have a draft
25 Order.

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

80

1    THE COURT:  I'm going to -- you better put a
2  provision in there that I believe that the language stated on
3  page 8 of this auction and the representation made by the Buyer
4  relative to the responsibility of curing all contracts will be
5  capped at $500 thousand, and anything over that amount will be
6  the obligation of the Buyer.  And number two, the litigation,
7  proposed litigation against Presstek for a violation, or what
8  they allege to be a cause of action for violating the Stock
9  Purchase Agreement, will be assigned to MHR.
10    MR. RICCIARDI:  Your Honor, you're talking about the
11  Estate's --
12    THE COURT:  Nobody else wants it --
13    MR. RICCIARDI:  -- claims?
14    THE COURT:  -- and nobody else says it's got any
15  value.
16    UNIDENTIFIED SPEAKER:  Your Honor, if I --
17    THE COURT:  That will be in lieu of your claim.
18    UNIDENTIFIED SPEAKER:  Your Honor we also have not --
19    MR. D. ROSNER:  In lieu of our objection, correct,
20  Your Honor?
21    THE COURT:  In lieu of your claim.  You have a claim
22  of 18 million, you're the largest Creditor, I'm giving you the
23  (indiscern.) then you won't have a claim against the Estate.
24    MR. D. ROSNER:  We'll look at the language, Your
25  Honor, thank you.

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

B510

81

1       THE COURT:  Pardon me?

2       MR. D. ROSNER:  We'll look at the language, thank

3   you, Your Honor.

4       THE COURT:  All right.

5       MR. RICCIARDI:  Your Honor, we haven't seen any

6   proposed Order.

7       THE COURT:  You have what?

8       MR. RICCIARDI:  We have not seen any proposed Order.

9       THE COURT:  I haven't either.

10      MR. RICCIARDI:  Okay.

11      THE COURT:  Why don't you -- you want to get together

12   and get an order?  Do you have a proposed Order?

13      MR. SELBST:  Your Honor, may I ask one question for

14   clarification?

15      THE COURT:  Sure.

16      MR. SELBST:  The agreement -- the Asset Purchase

17   Agreement currently provides for a release of the Estate's

18   claim against Presstek of all Estate claims.  Are you saying

19   that you are not prepared to approve that, Your Honor?

20      THE COURT:  No.

21      MR. SELBST:  Okay.  Your Honor, Presstek is not

22   prepared to go forward with that claim.

23      THE COURT:  Why not?

24      MR. SELBST:  Because --

25      THE COURT:  You said you'd defend it.

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191

82

```
1          MR. SELBST:   We would defend any -- we would defend
2    a claim against MHR.  We don't believe -- we bargained for a
3    release of the Estate claim.  We think MHR may have a claim
4    which they identified as a claim under the Stock Purchase
5    Agreement, but it is absolutely part of the bargain for
6    consideration that we have a release from the Estate, and
7    without it Presstek is not prepared to proceed, Your Honor.
8          THE COURT:  So they have a third-party beneficiary
9    case against you.
10         MR. SELBST:   They claim they do.
11         THE COURT:  Well, that's not release, is it?
12         MR. SELBST:   Pardon me?
13         THE COURT:  That's not subject to release.
14         MR. SELBST:   That's not subject to release, I agree
15   with that, Your Honor.
16         MR. D. ROSNER:  However, Your Honor, if I may speak
17   to that.
18         THE COURT:  Yes.
19         MR. D. ROSNER:  That's a $3½ million claim.  Our
20   third-party beneficiary claim is limited to one provision of
21   the contract.  We do not have third-party beneficiary contract.
22   It's my understanding (indiscern.) contract.  That's the claim
23   that we've been talking about today.
24         THE COURT:  What page are you on?
25         MR. SELBST:   Your Honor, I believe it's section --
```

83

1     MR. D. ROSNER:  Section 1317.

2     MR. SELBST:  -- 1317, yes.  We agree about one thing.

3     MR. D. ROSNER:  Read it a few times.  It's the claim

4  that Mr. Phillips describes as remote.

5     THE COURT:  What page is it?

6     MR. D. ROSNER:  Fifty-four, Your Honor.

7     (Recess)

8     THE COURT:  Now where are we?

9     MR. D. ROSNER:  We're okay with what the Court had

10 indicated.  MHR.

11     THE COURT:  All right.  Let me consider that.

12     MR. D. ROSNER:  Thank you, Your Honor.

13     THE COURT:  Are you all going to get together and

14 give me an order by noon?

15     MR. SELBST:  Yes, we will, Your Honor.

16     THE COURT:  We have some other matters, don't we?  We

17 have some other matters on this agenda?

18     MR. F. ROSNER:  Very briefly, Your Honor, Fred

19 Rosner, Jaspan Schlesinger Hoffman, rejoining the record.  The

20 outstanding -- there are two other motions, I think, which are

21 items #4 on the agenda --

22     THE COURT:  Wait until I get there.

23     MR. F. ROSNER:  -- which is a motion -- actually, I

24 think we received no objection on item #4 --

25     THE COURT:  That's for extending the time for

*Writer's Cramp, Ina.*
*Certified Court Transcribers*
*752-329-0191*

B513

84

1  removing actions to the Courts?

2       MR. F. ROSNER:  Yeah, that's just a routine, and

3  we'll just submit an Order on that in due course.  Item #5 is

4  the proposed retention of Ernst & Young to complete the year

5  2003 financial review.  We received two limited objections.

6  Both those objections are resolved as follows:  Ernst & Young,

7  of course, will be submitting a fee application --

8       THE COURT:  You're withdrawing that, aren't you?

9       MR. F. ROSNER:  No, no, we'd like to go forward.

10 There were two objections, but they were resolved.

11      THE COURT:  Right.  They claim there's a pre-petition

12 interest by this firm.

13      MR. F. ROSNER:  Ernst & Young has agreed to waive

14 that to allow them to go forward to complete the year 2003 --

15      THE COURT:  I've been through that ball game before.

16      MR. F. ROSNER:  Your Honor, the retention of Ernst &

17 Young is condition to --

18      THE COURT:  They're either disinterested or they're

19 not.  You have one big fight going on right now where we did

20 this and they were going to waive it and it came up to bite us

21 and now it's up in the Circuit Court review to stop the whole

22 thing.

23      MR. F. ROSNER:  Well, the Office of United States

24 Trustee has agreed to --

25      THE COURT:  Are they a pre-petition Creditor?

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

B514

85

1    MR. F. ROSNER:  They've waive that claim, so they are

2  not.  They're not, they're owned nothing by reason of the

3  waiver, so they're disinterested, and it is a condition to the

4  Asset Purchase Agreement.

5    THE COURT:  All right.  Let's hear the U.S. Trustee's

6  response.

7    MR. KLAUDER:  Your Honor, David Klauder for the

8  United States Trustee's office.  Our response dealt with two

9  issues.  We take the position that the waiver of the

10  pre-petition claim is appropriate, and they meet the

11  requirements of 327 and the disinterested requirement.  We --

12  our two issues dealt with the reasonableness of the hourly

13  rates that were proposed --

14    THE COURT:  The 675 or something like that?

15    MR. KLAUDER:  Yeah, and the proposal went all the way

16  up to possibly $1000 an hour.  We wanted to preserve the rights

17  to object to the reasonableness of the rates themselves come

18  fee application time that that to make sure that the application

19  will be subject to 330.  I spoke to an attorney for Ernst &

20  Young and they have agreed to that that the rates are not gonna

21  be ruled per se reasonable today, and that we can address that

22  issue if need be at fee application time.

23    THE COURT:  What are they building in their pre-

24  petition claim under the big rate?

25    MR. KLAUDER:  I'm not sure where the rates are coming

*Writer's Cramp, Ina.*
*Certified Court Transcribers*
732-329-0191

B515

86

1  from, but it's definitely a concern to our office.  But that

2  issue will be reserved to the time when we know what they have

3  done and the rates that they are charging.  The second issue

4  dealt with a connection with Key Bank, the pre-petition lender.

5  Again, I spoke with Ernst & Young.  They have assured me that

6  that is unrelated to the Debtors and that there is no --

7  essentially the team that will be working -- the team from

8  Ernst & Young that will be working on the Debtor's project is

9  completely separate from the team that is working on the Key

10  Bank project and that a supplemental affidavit will be filed in

11  the coming days that addresses those concerns.  So with that,

12  we feel that our response has been --

13          THE COURT:  Where are they going to build the Chinese

14  wall?

15          MR. KLAUDER:  I'm sorry?

16          THE COURT:  Where are they going to build the Chinese

17  wall?  In what office?

18          MR. KLAUDER:  Well, I mean, we did talk about the

19  possibility of an ethical wall.  We did not -- our office felt

20  that was not necessarily needed based on the disclosures that

21  were made to us, but we'll certainly yield to Your Honor on

22  that.

23          THE COURT:  All right.

24          MR. KLAUDER:  So with that our response has been

25  resolved.

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191

B516

87

1    THE COURT:  All right.

2    MR. KLAUDER:  Thank you.

3    MR. JOSEPH:  Your Honor, James Joseph of the

4 Committee.  Very briefly, the Committee shared the same

5 concerns with respect to the hourly rates.  Tying into that

6 issue, the application was initially filed seeking retention on

7 terms where their compensation would be approved and subject to

8 a section 328(a) review.  It's our understanding that, in fact,

9 it's subject to section 330, and I think that that's absolutely

10 necessary given the rate issue that the Committee and the U.S.

11 Trustee have raised.  And it's our understanding that, in fact,

12 the Debtors do agree that Ernst & Young's compensation will be

13 reviewed under section 330 and not section 328(a).

14    THE COURT:  I think you submitted to me an Order

15 relative to #4.  It's probably in this maize of papers

16 somewhere.  I may have left it in Chambers.

17    MR. F. ROSNER:  Your Honor, there's -- unless the

18 Court has further questions, conclude the presentation on the

19 Ernst & Young, and there's a bunch of clean-up Orders, and

20 there's one other motion.  So what I would propose to do is get

21 through the last motion and then hand up Forms of Order to Your

22 Honor for the open agenda items.

23    THE COURT:  Okay.

24    MR. F. ROSNER:  The last motion then, Your Honor, is

25 the motion by the Debtors to execute a certain shareholder

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191

B517

1   resolution in connection with the A.B. Dick subsidiary in

2   Canada, A.B. Dick Company of Canada.  That entity is governed

3   by a certain Canadian Business Corporation Act and there's a

4   requirement that entity be solvent at closing otherwise it

5   would expose the directors to liability.  So, A.B. Dick asked

6   permission to execute a shareholder consent which actually

7   would, you know, allow us to close, to make a long story short,

8   and I don't think we have any opposition to that.  Also the

9   fact that as part of the bid enhancements there's gonna be a

10  certain amount of the sale proceeds are allocated to that

11  particular entity to address that problem presented, otherwise

12  presented by the Canadian Business Corporation Act.  We would

13  like to submit an Order on that as well.  The other items, Your

14  Honor, that I'd like to address very briefly are sort of in the

15  nature of housekeeping.  When we were last before Judge Case he

16  approved a Form of Order that would allow the payment of a Key

17  Executive Retention Program.  We've had dialogue with Committee

18  and we now have a consensual Form of Order, an Order that at

19  least reflects Judge Case's ruling, if there's no objection to

20  that from the Committee.  So I would refer to that as the KERP

21  Order.  I'd like to hand that up as well.  There also was a

22  motion some time ago in connection with one of the adversary

23  proceedings, a Motion to Quash certain subpoenas, and that's

24  been resolved through a stipulated Protective Order.  We

25  submitted that.  I think in the transition it might have got

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191

89

1  lost in the shuffle.  I do have that Form of Order as well.
2  So, shall I approach with those Orders, or does the Court have
3  questions about it?
4          THE COURT:  I don't have -- they may be in the
5  binder, but I know I saw an Order relative to operations of the
6  shareholders.  I'll have to go look.
7          MR. F. ROSNER:  Well, I have --
8          THE COURT:  Have you got some orders there?
9          MR. F. ROSNER:  I do, but I don't want to have, you
10  know, the same orders --
11          THE COURT:  Why don't you get them to me when you --
12  by noon or some time today.
13          MR. F. ROSNER:  I have them presently with me.
14          THE COURT:  All right.  Pass them up then.  I'll
15  look.
16          MR. F.ROSNER:  Your Honor, I'm gonna hand up --
17          MR. JOSEPH:  Your Honor, just very briefly again,
18  James Joseph of McGuire Woods for the Committee.  With respect
19  to the -- what Mr. Rosner has called the KERP Order, I do want
20  to be clear, and I believe that the Certification of Counsel
21  that was submitted with that Order on Monday clarifies that the
22  Committee agrees that that Form of Order reflects Judge Case's
23  ruling.  That does not mean the Committee consents to the
24  relief.  The Committee, in fact, objected, and the Judge made a
25  ruling over the Committee's objection, but we are merely

B519

1  agreeing that the Form of Order reflects his ruling and nothing

2  more.  Secondly, there's a matter, before we start handing up

3  Forms of Order, previously the Committee had filed an

4  application to retain Executive Sounding Board as its financial

5  advisors.  With the hearings the past couple days I haven't had

6  a chance to check the docket, but I do know that, I believe it

7  was last week, we submitted a Certification of No Objection.

8  The objection deadline had passed, and we would -- I think we

9  submitted that with the Form Of Order, and we request that that

10 be entered as well.

11         MR. F. ROSNER:  Your Honor, I do have an Order

12 Authorizing the Extension of Time to Remove Actions.  I do have

13 a form of the Stipulated Protective Order, which obviously is

14 consensual relief.  I do have a Form of Order with respect to

15 the Ernst & Young retention, and I've deleted the references to

16 328, will be subject to 327, and I do have the Form of Order,

17 Your Honor, authorizing the severance program for the

18 employees.

19         THE COURT:  All right.  Submit them up here now and

20 I'll sign them.

21         MR. F. ROSNER:  Thank you, Your Honor.

22         MR. LOIZIDES:  Your Honor, Chris Loizides again for

23 Esko Graphics.  There was also another thing on the agenda, our

24 Motion to Compel Assumption or Rejection, and that motion has

25 been resolved in conjunction with the resolution of our

B520

objection to the sale, and we have the stipulation. I need to get a couple signatures on that, along with an Order approving that that we'd like to hand up.

(Pause in proceedings)

THE COURT: On the Order for Ernst & Young I've added the -- I've authorized their employment subject to any objection as to the reasonableness of the E&Y hourly rate.

MR. F. ROSNER: Thank you, Your Honor, that's fine.

THE COURT: As to the Order under 281452 for removal, that date will be extended to February 11th.

MR. F. ROSNER: January 11th?

THE COURT: Pursuant to the order.

MR. F. ROSNER: Thank you, Your Honor.

(Pause in proceedings)

MR. F. ROSNER: Your Honor, one last -- Your Honor, Your Honor, can I set some omnibus dates or should I just contact Chambers for those? Further hears dates, we would set, you know, would Your Honor be back in Delaware, for example --

THE COURT: That first week in December.

MR. F.ROSNER: First week in December.

THE COURT: First week in February.

MR. F. ROSNER: I'll contact Chambers and get dates for omnibus hearings. Thank you, Your Honor.

THE COURT: Unless you want to come and watch tennis.

MR. F.ROSNER: I'd love to.

92

1        UNIDENTIFIED SPEAKER:  I do.

2        MR. F. ROSNER:  I'd love to.

3    (Recess)

4        THE CLERK:  All rise.

5        THE COURT:  Please be seated.  I have two Orders.

6    One was submitted by the Debtor, and the other by MHR.  I've

7    read both Orders.  Have the respective parties had an

8    opportunity to read the Debtor's Order?

9        UNIDENTIFIED SPEAKER:  No.

10        THE COURT:  You haven't?

11        MR. JOSEPH:  The Committee has, Your Honor.

12        THE COURT:  The Committee has, and how does the

13    Committee feel?

14        MR. JOSEPH:  The Committee does not believe that

15    paragraphs R, on page 7 --

16        THE COURT:  What page?  What page?

17        MR. JOSEPH:  Page 7.  Paragraph R, and then --

18        MR. F. ROSNER:  I apologize.  I think that --

19        THE COURT:  Have you distributed this Order to

20    anybody?

21        MR. JOSEPH:  No, they haven't.  I should say quickly,

22    we appreciate you are indulgence, Your Honor.  Paragraph R, and

23    there's a corresponding paragraph 6 on page 9, the part -- a

24    large part of the issue outstanding remains based on the

25    uncertainty between the parties as to exactly what Your Honor

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

93

1    intended with respect not only to the half million dollar cure
2    cap, but whether in fact Your Honor agreed with the Committee's
3    view that Presstek had in fact committed to assume, if not owe,
4    a substantial number of what we would call the vendor contacts,
5    and this --
6              THE COURT:  I read the -- I left it in Chambers, but
7    that said all contracts.
8              MR. JOSEPH:  Excuse me, Your Honor?
9              THE COURT:  That's right, you're right.
10             MR. JOSEPH:  So with that we believe that paragraphs
11   R -- paragraph R on page 7 and paragraph 6 on page 9 do not
12   accurately reflect the Presstek committed bid at the auction
13   and need to be revised accordingly.  With respect to the MHR
14   Order, I've not had a chance to review it, but in concept I've
15   discussed it with counsel to MHR.  The Committee does not
16   oppose the provisions that MHR has added, but believe that
17   paragraphs -- I think that contains the same paragraphs R and
18   6, and those should be revised in that Order, if that's the one
19   Your Honor is inclined to accept.
20             THE COURT:  Well, that Order's the same as this
21   except that they rewrite paragraph 13.17 --
22             MR. JOSEPH:  Exactly, exactly.
23             THE COURT:  I -- after mulling this over I went back
24   and read the agreement, the APA, and it's very specific about
25   the releases from the beginning of the world to the end of the

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191

B523

94

1  world, and when I said, well, you take the claim, I shouldn't
2  have said that because I didn't have any knowledge of the
3  release clause. So irrespective of that, that matter is off
4  the table.

5          MR. JOSEPH: So with respect then --

6          THE COURT: But now where do we stand on this cap for
7  the contracts and 500,000? If you don't want to live by the
8  agreement you may, at the auction, and that's what I'm going to
9  do. I'm going to make you live to it, if you don't want to,
10 appeal it, but that's the word your representative made as far
11 as I'm concerned. It's very specific.

12         MR. SELBST: Your Honor, respectfully, my client
13 believes that they were reserving the right to designate other
14 contracts to be assumed and not to be assumed, and respectfully
15 if Your Honor is saying that he will only condition the sale
16 upon the assumption of all contracts Presstek's not prepared to
17 proceed.

18         THE COURT: Well, you rewrite this Order to include
19 the specific language that was said at the auction hearing on
20 page 9, and I'll sign that Order. If you don't want to go
21 along with it then I think you're going to entice some very
22 serious litigation.

23         MR. SELBST: I understand Your Honor, very clearly.

24         THE COURT: I'm going to have to reject your proposed
25 Order relative to the assumption of the contract, and you can

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

B524

95

1  -- then that leaves you with just the right to appeal, I guess.

2  MR. D. ROSNER:  Right.  Then that means we're not

3  obviously withdrawing our objections to --

4  THE COURT:  No, you're objecting to this deal in the

5  record, and you're not withdrawing any objection.

6  MR. D. ROSNER:  Right.  And also we're not

7  withdrawing our claim for 18.3 million.

8  THE COURT:  You're not withdrawing your claim.

9  MR. D. ROSNER:  Thank you, Your Honor.

10  MR. SCHLERF:  Your Honor, Jeffrey Schlerf for the

11  Bayard Firm.  Our firm -- for the Committee.  Our firm and I

12  personally handled negotiations regarding the

13  Debtor-In-Possession financing in the Final Order.  Your Honor,

14  somebody referenced the fact that the Committee has filed a

15  complaint against the Key Bank as the Pre-Petition Secured

16  Lender challenging, primarily challenging the perfection of its

17  liens against some of its pre-petition collateral, and I'm not

18  asking for Your Honor to do anything with respect to that

19  lawsuit, it was just filed two days ago, other than the fact

20  that it really highlights two points that apply to the sale and

21  in particular what happens at closing.  Number one -- and

22  there're two points that I was planning on putting in the

23  Order, but with the rush and everything here we are.  One is

24  that the application of the proceeds is subject to the final

25  Debtor-In-Possession Order in Court, including paragraph 24,

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
*732-329-0191*

B525

96

1 which provides that, "If the Committee on a timely basis," and
2 we did on a timely basis, "file a challenge to the liens of Key
3 Bank then the amount that otherwise would go towards their
4 pre-petition collateral is set aside in escrow in an
5 interest-bearing account until that lawsuit is resolved." So I
6 wanted to Order to make clear that that in fact applies to the
7 application of the proceeds. Number two, Your Honor, there's
8 an issue regarding allocation of the proceeds, because what the
9 Committee does not want to have is have the Debtor and the
10 Purchaser agree between now and the closing or after the
11 closing to allocate value to some collateral and not to others
12 because to the extent that impacts the collateral that we're
13 challenging and saying the bank does not have a prior perfected
14 lien we don't want less value to go to those assets than
15 others. So our suggestion was gonna be in the Order, Your
16 Honor, to say that any allocation of the proceeds of the sale
17 to the extent it related to pre-petition collateral that that
18 allocation would be subject to order of the Court, or as
19 otherwise agreed between the Debtor, the Committee, and the
20 Buyer.
21        MR. FOLLAND: Your Honor, this is Rob Folland on
22 behalf of Key Bank. I absolutely have no problem agreeing with
23 the terms of the D-I-P Order. Obviously they are what they
24 are. I'm surprised the Committee has not discussed these
25 points with me prior to this very late hour. However, with

*Writer's Cramp, Inc.*
Certified Court Transcribers
732-329-0191

B526

97

1  respect to changing the allocation which is specifically
2  provided for in the APA, I would say the APA speaks for its,
3  and I do not believe there should be provisions put into the --
4  into this Order that would reserve allocation.  The Debtor and
5  Presstek are free to allocate however they want.
6        MR. SCHLERF:  Your Honor, just to explain.  We're
7  bringing this up now because we were not aware, really, there
8  was a real Order to present to Your Honor until about 11
9  o'clock this morning, so this is one of many issues that we
10 thought of over the last two hours, weren't meaning to sandbag
11 Key Bank or anybody else.
12        THE COURT:  Okay.
13        MR. SELBST:   Your Honor, respectfully, we're
14 troubled by this suggestion by the Committee for a couple of
15 reasons.  Number one, as Your Honor may be aware there are
16 Canadian assets that are being purchased here.  Unless there's
17 a sufficient allocation to the Canadian assets there's a risk
18 that the Canadian entity would be insolvent with the result
19 that my client would have success reliability for a certain of
20 those liabilities.  Secondly, as between the Buyer and the
21 Seller, there are tax issues involved in the allocations to
22 assets.  The contract is quite clear that the Debtor and the
23 Buyer can allocate under the APA, and while I agreed with the
24 Committee that we wouldn't allocate more than $3.2 million to
25 the Canadian assets other than that I don't think the Committee

*Writer's Cramp, Inc.*
Certified Court Transcribers
732-329-0191

B527

98

1  respectfully has a right to intervene in the allocation

2  negotiation.

3          THE COURT:  Is that correct?

4          MR. SCHLERF:  We did have an agreement on the

5  proceeds of the Canadian subsidiary, Your Honor.  We're not

6  saying the Committee should dictate what the allocation should

7  be.  What we're saying is, proposing is, that there be a

8  three-way discussion involving the Committee, and if we have a

9  disagreement we would put the issues before Your Honor.  That's

10  all we're suggesting.

11          THE COURT:  Okay.  Then I'm going to have to

12  follow --

13          UNIDENTIFIED SPEAKER:  I want to say that's

14  inconsistent with the APA.

15          THE COURT:  -- the APA.  If it's in the APA that will

16  govern.  If there's a dispute down the line then we'll hear it.

17          MR. JOSEPH:  I think the issue would simply be

18  whether the allocation proposed would be legitimately for

19  tax --

20          THE COURT:  Yes.

21          MR. JOSEPH:  -- purposes versus some issue based on

22  the adversary.

23          THE COURT:  You want to put this other language in?

24          MR. F. ROSNER:  We actually sent somebody back to the

25  office to make that change.

Writer's Cramp, Inc.
Certified Court Transcribers
732-929-0191

B528

99

```
1           THE COURT:  Okay.  Well, bring it to me -- I've got a

2  hearing at 2, and so --

3           MR. F. ROSNER:  You want to do it --

4           THE COURT:  Anytime before 5 o'clock.  Is that all

5  right?

6           UNIDENTIFIED SPEAKER:  That's fine.

7           THE COURT:  You know what I want?  I want the

8  specific language that was stated at the auction in this

9  agreement.

10          MR. SCHWARTZ:  Verbatim.

11          UNIDENTIFIED SPEAKER:  Understood, Your Honor.

12          THE COURT:  Verbatim.

13          UNIDENTIFIED SPEAKER:  Yes, Sir.

14          THE COURT:  And I'll sign that Order and you can get

15 on with the sale and money and whatever else you have to do.

16          UNIDENTIFIED SPEAKER:  Thank you.

17          THE COURT:  All right.

18          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

19     (Court adjourned)

20

21                     CERTIFICATION
   I certify that the foregoing is a correct transcript from the
22 electronic sound recording of the proceedings in the above-
   entitled matter.
23

24  _____          11-24-04
    Signature of Transcriber                Date
25
```

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191

B529