```
                  UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF DELAWARE

IN RE:                            :     Chapter  11
                                  :
A.B. Dick Company, Inc.,          :
                                  :
        Debtor(s).                :     Bankruptcy #04-12002 (CGC)
..................................

                         Wilmington, DE
                         August 23, 2004
                           9:30 a.m.

              TRANSCRIPT OF EVIDENTIARY HEARING
         BEFORE THE HONORABLE CHARLES G. CASE, II
                UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor(s):          John A. Gleason, Esq.
                            Benesch Friedland Coplan
                            & Aronoff, LLP
                            2300 BP Tower
                            200 Public Square
                            Cleveland, OH 44114

                            John F. Stock, Esq.
                            Benesch Friedland Coplan
                            & Aronoff, LLP
                            88 E. Broad St.-Ste. 900
                            Columbus, OH 43215

                            H. Jeffrey Schwartz, Esq.
                            Benesch Friedland Coplan
                            & Aronoff, LLP
                            2300 BP Tower
                            200 Public Square
                            Cleveland, OH 44114

                            Frederick B. Rosner, Esq.
                            Jaspan Schlesinger Hoffman, LLP
                            1201 North Orange Street-Ste. 1001
                            Wilmington, DE 19801
```

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191

| | | |
|---|---|---|
| 1 | For The Official Committee<br>of Unsecured Creditors | Richard Mason, Esq.<br>McGuire Woods, LLP<br>77 West Wacker Drive-Ste. 4100<br>Chicago, IL 60601 |
| | | James P. Ricciardi, Esq.<br>McGuire Woods, LLP<br>77 West Wacker Drive-Ste. 4100<br>Chicago, IL 60601 |
| | (Via telephone) | Shawn R. Fox, Esq.<br>McGuire Woods, LLP<br>7th Fl.<br>1345 Avenue of the Americas<br>New York, NY 10105 |
| | | Jeffrey Schlerf, Esq.<br>The Bayard Firm<br>222 Delaware Ave.-Ste. 900<br>Wilmington, DE 19801 |
| | For MHR Capital Partners: | Eric M. Kay, Esq.<br>Stroock Stroock & Lavan, LLP<br>180 Maiden Lane<br>New York, NY 10038 |
| | | Anna Taruschio, Esq.<br>Stroock Stroock & Lavan, LLP<br>180 Maiden Lane<br>New York, NY 10038 |
| | (Via telephone) | Megan N. Harper, Esq.<br>Landis Rath & Cobb, LLP<br>919 Market Street<br>Wilmington, DE 19899 |
| | For Key Bank, NA: | Robert Folland, Esq.<br>Thompson Hine, LLP<br>3900 Key Center<br>127 Public Square<br>Cleveland, OH 44114 |
| | | Alan R. Lepene, Esq.<br>Thompson Hine, LLP,<br>3900 Key Center<br>127 Public Square<br>Cleveland, OH 44114 |

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191

```
 1                                   Jami B. Nimeroff, Esq.
                                     Buchanan Ingersoll, PC
 2    (Via telephone)                1835 Market Street-14th Fl.
                                     Philadelphia, PA 19103
 3
                                     David E. Wilks, Esq.
 4                                   Buchanan Ingersoll, PC
      (Via telephone)                The Nemours Building
 5                                   1007 North Orange Street-Ste. 1110
                                     Wilmington, DE 19801
 6
      For Presstek, Inc.:            Stephen B. Selbst, Esq.
 7                                   McDermott Will & Emery
                                     50 Rockefeller Plaza
 8                                   New York, NY 10020

 9                                   Gary Ravert, Esq.
      (Via telephone)                McDermott Will & Emery
10                                   50 Rockefeller Plaza
                                     New York, NY 10020
11
                                     Francis A. Monaco, Jr., Esq.
12                                   Monzack & Monaco, PA
      (Via telephone)                400 Commerce Center
13                                   Twelfth & Orange Streets
                                     Wilmington, DE 19899
14
                                     James Scafide, Esq.
15                                   In-House Counsel
                                     Presstek, Inc.
16                                   55 Executive Drive
                                     Hudson, NH 03051
17
      For Mitsubishi:                Thomas G. Whalen, Jr., Esq.
18                                   Stevens & Lee, PC
      (Via telephone)                300 Delaware Ave.-Ste. 800
19                                   Wilmington, DE 19801

20                                   Robert Laposwky, Esq.
                                     Stevens & Lee, PC
21    (Via telephone)                1818 Market Street-29th Fl.
                                     Philadelphia, PA 19103
22
      For Acting U.S. Trustee:       David Klauder, Esq.
23    (Roberta A. DeAngelis)         U.S. Trustee's Office
                                     844 King Street-Ste. 2313
24                                   Lock Box 35
                                     Wilmington, DE 19801
25
```

*Writer's Cramp, Inc.*
Certified Court Transcribers
732-329-0191

4

```
 1                                  Joseph J. McMahon, Jr., Esq.
                                    U.S. Trustee's Office
 2                                  844 King Street-Ste. 2313
                                    Lock Box 35
 3                                  Wilmington, DE 19801

 4    Audio Operator:               Brandon J. McCarthy

 5    Transcribing Firm:            Writer's Cramp, Inc.
                                    6 Norton Rd.
 6                                  Monmouth Jct., NJ 08852
                                    732-329-0191
 7
      Proceedings recorded by electronic sound recording, transcript
 8    produced by transcription service.

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191

5

## Index

|  | Direct | Cross | Redirect | Recross | Further Redirect |
|---|---|---|---|---|---|
| **Witnesses For Creditors' Committee:** | | | | | |
| Mr. Carlston | | | | | |
| (by Mr. Mason) | 219 | | 235 | | |
| (by Mr. Gleason) | | 229 | | | |
| (by Mr. Selbst) | | 233 | | | |
| (by Mr. Lepene) | | 234 | | | |
| | | | | | |
| **Witnesses For The Debtor:** | | | | | |
| Mr. Knipp | | | | | |
| (by Mr. Stock) | 45 | | 108 | | |
| (by Mr. Mason) | | 83 | | | |
| (by Mr. Selbst) | | 106 | | | |
| (by Mr. Lepene) | | 107 | | | |
| | | | | | |
| Mr. Pollack | | | | | |
| (by Mr. Gleason) | 114 | | 205 | | |
| (by Mr. Mason) | | 166 | | 214 | |
| | | | | | |
| Mr. Pollack (cont'd) | | | | | |
| (by Mr. Mason) | | 195 | | | |
| (by Mr. Selbst) | | 200 | | | |
| (by Mr. Lepene) | | 203 | | | |
| | | | | | |
| <u>Voire Dire</u> | | | | | |
| Mr. Pollack | | | | | |
| (by Mr. Gleason) | 111 | | | | |

| EXHIBITS: | | Marked | Received |
|---|---|---|---|
| D-1 | August 2004 Forecast | * | 211 |
| D-2 | Asset Purchase Agreement | * | 211 |
| C-A | April 27, 2004 Letter | * | 218 |
| C-B | Stock Purchase Agreement | * | 218 |

*Writer's Cramp, Inc.*
Certified Court Transcribers
732-929-0191

```
 1   C-C      Document from Books & Records        *    218
     C-D      Signature - Stock Purchase Agreement *    218
 2
 3   SUMMATION BY:

 4      Mr. Gleason          244
        Mr. Selbst           250
 5      Mr. Lepene           257
        Mr. Ricciardi        259
 6      Mr. Kay              269

 7

 8
     THE COURT:  Finding     272
 9

10
     *  Marked at previous hearing
11
```

```
 1        THE CLERK:  04-12002, AB Dick.
 2     (Pause in proceedings)
 3        THE COURT:  All right.  Good morning.
 4     (Pause in proceedings)
 5        THE COURT:  All right then, let's proceed.
 6        MR. GLEASON:  Thank you, good morning, Your Honor.
 7  John Gleason, Benesch, Friedland, Coplan & Aronoff on behalf of
 8  the Debtors.  The first matter on the amended notice of agenda
 9  for this morning is a motion that the Debtors have filed to
10  reject a certain unexpired -- or certain unexpired leases of
11  non-residential real property.  This matter is going to be,
12  pursuant to Your Honor, adjourned until the September 13th date
13  that we have.  And at that time we will ask -- assuming we are
14  out of that facility, ask for a retroactive rejection to August
15  31st so that we can avoid the September rent.
16        THE COURT:  All right.  Has the Landlord been involved
17  in those discussions?
18        MR. GLEASON:  We have advised the Landlord.  And I
19  understand that we are discussing that with them now.
20        THE COURT:  Is the Landlord aware of your request that
21  the matter be adjourned?  Is there anybody here on behalf of
22  the Landlord?
23        MR. ROSNER:  Your Honor, Fred Rosner, Jaspan
24  Schlesinger.  We served out that motion by Federal Express.
25  And we also served the agenda on the Landlord.  We're not
```

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191

1  asking for any relief today. This is just a status conference.
2  We're trying to vacate that premise by the end of the month.
3  If we're successful in that effort, we come back on the 13th,
4  report to the Court, and then ask that the Order authorizing
5  the rejection be retroactive to the date we vacated. And again
6  the idea is to not incur charges going into September.
7        THE COURT: I understand that. All right, thank you.
8  The way counsel had presented it, it sounded as if it was being
9  continued on the understanding that the retroactive nature of
10 the rejection would be approved at that time. And I'm not
11 making any substantive decision with regard to that at this
12 hearing today.
13       MR. GLEASON: I understand, Your Honor.
14       MR. MASON: Good morning, Judge Case. For the record,
15 my name is Richard J. Mason. I'm with McGuire Woods, and we
16 represent -- or we are proposed counsel to the Creditor's
17 Committee.
18       THE COURT: We've never gotten an Order signed for
19 you, Mr. Mason? Or is that still subject to dispute at this
20 point?
21       MR. MASON: Judge, I don't believe it's subject to
22 dispute. It's just that I think that we have presented the
23 only motion in this case that has not been termed an emergency
24 motion, and therefore, it has been scheduled for the middle of
25 September. And so we are still proposed counsel, but subject

1   to that limitation.  The Committee has not been consulted on
2   this motion.  We may have some technical objections to it
3   concerning who is actually the tenant under this lease.  And
4   we're just gonna reserve our rights.  And we have no problems
5   with this being put over to September 13th.  We will attempt to
6   work out something with the Debtor.  If not, we may want to
7   file at least a limited objection on this motion.
8           MR. ROSNER:  Fred Rosner again.  We will notice that
9   the hearing is going to be continued to the 13th, and we'll
10  have a new objection deadline to give the Committee an
11  opportunity to weigh in.
12          THE COURT:  All right, thank you.  The matter will be
13  continued to September 13th on the terms and conditions stated
14  on the record.
15          MR. GLEASON:  Thank you, Your Honor.  The last two
16  matters on the agenda are the Debtor's motion for entry of a
17  final Order approving Debtor-In-Possession financing, and the
18  Debtor's motion for Order approving bidding procedures.  These
19  matters have been adjourned on several occasions.  And although
20  the parties have made progress with respect to an overall
21  agreement, there are still a few open issues.  As indicated by
22  Your Honor at the last hearing, we are prepared to introduce
23  evidence today to establish the need for the requested relief,
24  as well as the fact that the requested relief is fair,
25  reasonable, and adequate given the circumstances of these

1  cases.  I would first like to advise the Court of the
2  significant modifications the Debtors believe we have
3  successfully negotiated with respect to these matters.  Rather
4  than file a reply, Your Honor, the Debtors were successful in
5  negotiating with both Key and Presstek.  There were
6  negotiations -- I won't go into them -- with all of the other
7  parties.  Again pursuant to Your Honor's admonishment at the
8  last hearing, I think all parties were involved in the
9  discussions.  The Debtors with Presstek and Key we believe have
10 been successful in getting three major modifications that we
11 believe address the objecting parties' concerns, as well as the
12 overriding concerns held by the Debtors in these cases.
13     The Debtors were able first to negotiate an extended
14 marketing process with bids now being due October 27th, and a
15 sale hearing being held, subject to Your Honor's calendar, the
16 first week of November.  Second, we have firmed up the Asset
17 Purchase Agreement by revising the definition of "inventory"
18 for purposes of the working capital test.  Presstek and Key
19 have agreed to include up to $2.5 million of pre-paid inventory
20 in this definition, as long as that inventory is received by
21 November 30th.  That ties into the Mitsubishi agreement that we
22 spoke about at the last hearing, Your Honor.  The Debtors
23 believe this modification will enable them to comply with the
24 terms of the Asset Purchase Agreement.
25     Finally, we also negotiated a modification to the Debtor-

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191

1  In-Possession financing package so that pre-paid inventory
2  constitutes inventory included in the borrowing base. Again,
3  the Debtors are confident this will enable them to satisfy the
4  reasonable representations and warranties that are contained in
5  the Asset Purchase Agreement. I should note also that the
6  parties have agreed to extend the term of the D-I-P, or the
7  maturity date of the D-I-P through November 15th, which we
8  believe is more than sufficient to get us through the marketing
9  process. With -- this is a backdrop, Your Honor. Again, the
10 Debtors believing that they have addressed the three major
11 issues that the Debtors also had concern with at the time these
12 documents were negotiated, but didn't have a whole lot of
13 leverage to deal with them. The Debtors also made
14 modifications to the proposed bid procedures. They have been
15 circulated. And although --
16         THE COURT: Let me just ask a question --
17         MR. GLEASON: Sure.
18         THE COURT: -- counsel. I heard an indication on the
19 line that there may have been somebody who joined the
20 conference. Is there anybody new on the telephone? Is there
21 anybody on the telephone?
22         UNIDENTIFIED SPEAKER: Yes. Yes, Your Honor.
23         THE COURT: Okay. Well I heard the sound that we
24 often hear when it's time to -- to indicate that somebody had
25 joined. Is there anybody who just joined the conference? If

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191

1  so, please speak up.  All right, well maybe we lost somebody
2  instead of joining somebody.  Okay, sorry, counsel, go ahead.
3        MR. GLEASON:  Thank you, Your Honor.  Although the
4  final document has not yet been agreed to by the Committee or
5  MHR, the Debtors have negotiated a revised Form of Order with
6  Presstek that we believe addresses the legitimate concerns
7  raised by various parties, that will enable the Debtors to
8  fully market their assets.  Should I continue or --
9        THE COURT:  Did we just have somebody join the
10 teleconference?  Is there anybody new on the telephone?  All
11 right, go ahead, Mr. Gleason.
12       MR. GLEASON:  Again, we believe we've addressed the
13 legitimate concerns raised by the various parties, which will
14 enable the Debtors to fully market their assets while at the
15 same time preserve the going concern value of the Debtors'
16 businesses.  I have a copy of a proposed Form of Order which we
17 have blacklined to the one that was submitted to the Court with
18 the motion, if I may approach.
19       THE COURT:  All right.  Well I think I have the
20 blackline of the D-I-P Order.
21       MR. GLEASON:  Right.  And I have a blackline of the
22 Bid Procedures Order.
23       THE COURT:  Okay.
24       MR. GLEASON:  May I approach?  I believe all the
25 parties have one.  If anybody needs an extra copy, I do have

1  some, and I will leave them. It's the one -- for the parties
2  in the Courtroom -- the one that we circulated this morning.
3  If I may, Your Honor, just go through the provisions and the
4  changes that have been made. A lot of them are self-
5  explanatory, so I will just hit the substantive ones. In
6  paragraph 4 of the revised bid procedures, Presstek has agreed
7  that they will guarantee the obligations of Silber pursuant to
8  the Asset Purchase Agreement. That was one of the issues that
9  was raised by some of the parties. In various paragraphs
10 throughout the bid procedures, the first place in paragraph 5,
11 the Debtors have agreed that with respect to many if not most
12 of the decisions concerning the bids and whether they're a
13 qualifying bid, and any other decisions that need to be made
14 with respect to the bid procedures, that they will do that
15 after consultation with the Committee, MHR, and Key Bank. That
16 is kind of an overriding change throughout the document.
17       In paragraph 2(B)(i) it is -- the bid procedures have been
18 revised to show that the bids would be due October 27th. We
19 then change the terms of the Asset Purchase Agreement that
20 other parties need to submit, so that it is not substantially
21 in the form of the Asset Purchase Agreement that was negotiated
22 pre-petition, but just that it is no less favorable than
23 negotiated pre-petition. We have reduced the initial minimum
24 overbid amount by $200,000. We have changed the deposit
25 amounts so that all bidders, including Silber and any of the

14

1  bidders that submit a bid, their deposits are the same 5%.
2  Previously other bidders had to place a 10% deposit. On page 5
3  of the blackline, Your Honor, in paragraph C, again this has
4  the provision that we will provide information, as well as all
5  of the bids, to the Committee, MHR, Key Bank, and other
6  qualifying bidders. The one change I would indicate, after
7  discussions here this morning, the Debtors have agreed to take
8  out the words "upon request" in both places in that paragraph.
9  We had had that in there so that people would request, and then
10 we would be able to keep track. But we have agreed that we
11 will just provide that information to all of those parties.
12       The next major modification again ties to the time frame
13 in paragraph D. We will conduct the auction on October 29th.
14 I would indicate for the Court that as of now we do have it
15 being held at our offices in Cleveland. We will in
16 consultation with the parties -- after we see where the bids
17 are coming from and the Court's calendar when we may be able to
18 have a sale hearing, that location may change. And I think the
19 Order contemplates that. Let's see. Just going to -- the
20 other -- we had indicated a bidding increment increase of not
21 less than $200,000, which was one of the issues raised by some
22 of the parties. With respect to paragraph E, which begins on
23 page 6 but then continues on page 7, Presstek has agreed that
24 their termination fee, as well as their expense reimbursement
25 fee, only lasts for a period of six months, so that if the

1  Debtors do not go forward with Presstek or Silber, and then
2  close a transaction either pursuant to another sale or pursuant
3  to a Plan of Reorganization let's say seven months down the
4  line, these bid protections would not be payable to Presstek.
5  The sale hearing date has been changed also, Your Honor,
6  although we have left that bracketed as, of course, subject to
7  Your Honor's calendar.
8      I think the -- well, two more substantive issues there.
9  One is that with respect to the cure amounts, the Debtors have
10 agreed that we -- Silber is requesting some additional
11 information.  We will provide that information as soon as
12 possible.  And Silber has agreed that within 15 days of that
13 time, they will provide us the list of executory contracts and
14 leases that they would like the Debtors to assume and assign.
15 We will submit that list prior to October 1st, which we believe
16 will give all parties enough time to look at the list and look
17 at the Debtors' cure amount.  And then that is an issue that
18 would be decided or would be before the Court at the sale
19 hearing.  We've also agreed to publish notice of the hearing at
20 least 45 days prior to the bid deadline in the Wall Street
21 Journal and a trade publication.  And finally, although not on
22 here, another issue that was raised this morning that the
23 Debtors will change, is that to the extent the Bid Procedures
24 Order conflicts with the terms of the Asset Purchase Agreement,
25 we will have a provision that the Bid Procedures Order governs.

1   So we believe the Debtors have made significant progress
2   with respect to the Bid Procedures Order. And we've addressed
3   the overriding concerns that the Debtors had. With respect to
4   the proposed final D-I-P Order, Your Honor, the Debtors and
5   other parties -- again, all parties have been involved in
6   discussions. We've had depositions, and there's been a lot of
7   work done within the last week. And in addition to the
8   business terms that I described earlier, the change in the
9   definition of collateral and inventory, which we believe will
10  enable the Debtors to satisfy the reps and warranties in the
11  Asset Purchase Agreement, there were various modifications made
12  to the D-I-P Order. And although I believe the Committee and
13  MHR may continue to take issue with certain provisions, the
14  Debtors believe these provisions are reasonable under the
15  circumstances, are consistent with applicable bankruptcy and
16  non-bankruptcy law, and are balanced by the limitations and
17  protections afforded the Debtors and other Parties-In-Interest.
18  Again, as has been the Debtors' main goal since the beginning,
19  before this case was filed, the Debtors' overriding concern is
20  to obtain reasonable post-petition financing in order to
21  maintain the going concern value of their business. As we
22  believe the evidence this morning or this afternoon will
23  demonstrate, we have accomplished this goal. With respect to
24  the individual items in the D-I-P Order, I would, if the Court
25  would like, turn the podium over to counsel for the Post-

1   Petition Lenders to address those. And then as I indicated, we
2   are prepared to introduce testimony and other evidence to
3   support our motions.
4            THE COURT: All right. Are we're gonna counsel for
5   the -- and then we can hear from you kind of in an omnibus way,
6   Mr. Mason. How does that sound?
7            MR. MASON: Thank you, Judge.
8            MR. LEPENE: Good morning, Your Honor, Alan Lepene
9   with the law firm of Thompson Hine on behalf of Key Bank. Your
10  Honor, we have engaged in extensive discussions with the
11  objecting parties, and with counsel for Presstek, our co-D-I-P
12  Lender. And I believe we have reached an agreement in
13  principle with respect to all of the points that were in
14  contention. We have drafted a revised Order, but we have not
15  reached final agreement on the language, although I expect that
16  that will occur hopefully this morning or early this afternoon
17  so that we would be in a position to present an agreed Order to
18  the Court. I can review, and then would ask others to
19  supplement to the extent that I have left anything out or mis-
20  state anything, the basic points that were in issue as raised
21  by the objecting parties, and how those have been resolved.
22  And I will be brief with respect to that.
23           THE COURT: All right. Before we go into that, sorry
24  to keep interrupting. I want to ask the people on the
25  telephone, can you hear me? This is Judge Case.

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191

1    UNIDENTIFIED SPEAKER:  Yes, Judge, I can.
2    UNIDENTIFIED SPEAKER:  Yes.
3    THE COURT:  Is Mr. Metu Cobiashi on the phone?
4    MR. COBIASHI:  Yes, Cobiashi is here.
5    THE COURT:  All right, thank you, Mr. Cobiashi.  We
6  were trying to make sure you made it on the telephone.  All
7  right, go ahead, counsel.
8    MR. LEPENE:  Okay, thank you, Your Honor.  And right
9  now I am looking at the supplemental objection that was filed
10 by MHR, which lists about 10 basic objections that they had.  I
11 will just take these in order, and then review some of the
12 additional objections that the Committee had raised.  The first
13 point that had been raised by MHR related to the adequate
14 protection provisions, and the provision in the proposed Order
15 for post-petition interest payments, replacement liens, and
16 payments to professionals.  And issues were being raised as to
17 whether the full panoply of those rights should be given to Key
18 Bank in its capacity as Pre-Petition Lender.  We have agreed to
19 those provisions, including the payment of post-petition
20 interest, replacement liens, and payments to professionals.
21 The payments to professionals will be subject to a review
22 process that will be memorialized in the Order, relative to the
23 ability to raise issues regarding the reasonableness of fees,
24 and ultimately if objections are raised, to put those issues
25 before the Court for decision.

19

1   THE COURT: Now, when you say "we have agreed," who is
2   we?
3   MR. LEPENE: I believe all of the objecting parties.
4   And that would be MHR and the Committee.
5   THE COURT: All right. Just want to make sure I'm
6   clear here.
7   MR. SCHLERF: Your Honor, Jeffrey Schlerf for the
8   Committee, good morning. Your Honor, I spoke to David Kaluder
9   of the U.S. Trustee's Office shortly before the hearing, and
10  explained what I thought was a resolution with Key Bank. And
11  he was comfortable with the compromises we made. And I
12  understand that he's not pressing his objection.
13  THE COURT: All right.
14  MR. LAPOWSKY: Judge?
15  THE COURT: Mr. Kaluder, are you on the phone?
16  MR. LAPOWSKY: This is Bob Lapowsky. I just want to
17  make sure that -- Mitsubishi had also filed a limited
18  objection.
19  THE COURT: I'm sorry. Excuse me, I'm sorry. Whoever
20  is speaking is very hard to hear. I'm sorry. So speak up much
21  more clearly and loudly.
22  MR. LAPOWSKY: Judge, this is Bob Lapowsky. Can you
23  hear me now?
24  THE COURT: Yes.
25  MR. LAPOWSKY: I'm from Stevens & Lee, and we

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191

represent Mitsubishi. We had filed a limited objection to the D-I-P Motion, raising only the issue of protecting our set-off rights. And there was a provision put in the Interim Order that covered our objection. But I'm listening to counsel recite that they filed objections. And I didn't hear him make reference to Mitsubishi. I'm hoping that it's because we intend to roll that provision --

THE COURT: Well --

MR. LAPOWSKY: -- forward. But I just want to make sure that there is another objection out there, and it's from Mitsubishi. I also have some -- have one comment on something that Mr. Gleason said, but I can save that until later.

THE COURT: All right, thank you. So Item #A on page 3 of the MHR objection, you're indicating, Mr. Lepene, has been resolved by an agreement that those payments can be made with the payments to professionals subject to reasonableness review. Is that correct?

MR. LEPENE: That is our understanding of the agreement, Your Honor.

THE COURT: All right, let's go on to the next one then.

MR. LEPENE: Okay. The next one related to the position that the objecting parties took that the post-petition credit agreement improperly provided that it would be a termination event under the D-I-P credit agreement if Key